# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | CRIMINAL NO. 16-CR-10343-ADB |
| v. | ) ) ) | LEAVE TO FILE GRANTED |
| MICHAEL L. BABICH, et al., | ) ) ) ) ) |  |

## GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS INDICTMENT

ANDREW E. LELLING
United States Attorney

K. NATHANIEL YEAGER
DAVID J. D'ADDIO
MARK T. QUINLIVAN
Assistant U.S. Attorneys

John Joseph Moakley U.S. Courthouse
One Courthouse Way, Suite 9200
Boston, Massachusetts 02210
(617) 748-3100
nathaniel.yeager@usdoj.gov
david.daddio@usdoj.gov
mark.quinlivan@usdoj.gov

**PRELIMINARY STATEMENT**

The government is mindful of the concerns raised by the Court during the hearing on July 17, 2018, and wishes to inform the Court of its intention to supersede the indictment and streamline the case, including by, among other things, reducing the number of counts. The government will do so over the next few weeks after obtaining necessary approvals and, because the case will be narrowed, the trial date should not be affected.

The Court also invited the parties at the hearing on July 17, 2018, and in its electronic order of the following day, to submit a supplemental brief addressing the issues raised during the hearing. The government appreciates the opportunity to further explain its views regarding the important issues that were raised during the hearing. Although some of these issues may be mooted by the superseding indictment that will be filed, the government nonetheless addresses them to underscore why the First Superseding Indictment ("Indictment") sufficiently pleads the crimes charged, and for the sake of completeness.

A.     **A RICO Enterprise Does Not Need a "Rim" Because the Statutory Enterprise Replaced the "Wheel" and "Chain" Limitations on Conspiratorial Liability, a Proposition Adopted by the First Circuit in *Turkette* and *Tashjian*.**

Defendants have argued that Count One of the Indictment must be dismissed because it does not allege that the RICO enterprise have a "rim," as it otherwise would have an impermissible "hub and spoke" character. During the hearing, the Court indicated its preliminary agreement that the enterprise alleged in the Indictment must have a rim. As the government argued in its response memorandum and at the hearing, that proposition fails under the reasoning of *United States v. Elliott*, 571 F.2d 880, 902-03 (5th Cir. 1978), which the First Circuit adopted in its decisions in *United States v. Turkette*, 656 F.2d 5, 8 (1st Cir. 1981), and *United States v. Tashjian*, 660 F.2d 829, 834 (1st Cir. 1981).

1.      In *Elliott*, the defendants were convicted of RICO conspiracy, amongst other charges, and, relying on *Kotteakos v. United States*, 328 U.S. 750 (1946), all but one defendant argued on appeal that while the indictment alleged but one conspiracy, the government's evidence at trial proved the existence of several conspiracies, resulting in a variance which substantially prejudiced their rights and required reversal.  571 F.2d at 900.  The Fifth Circuit found no merit to the claim because RICO displaced the "wheel" limitation upon which the defendants relied:

> Prior to the enactment of the RICO statute, this argument would have been more persuasive.  However, as we explain below, RICO has displaced many of the legal precepts traditionally applied to concerted criminal activity.  Its effect in this case is to free the government from the strictures of the multiple conspiracy doctrine and to allow the joint trial of many persons accused of diversified crimes.

*Id.*  In explaining this conclusion, the Fifth Circuit reviewed the "wheel conspiracy" rationale of *Kotteakos* and "chain conspiracy" rationale of *Blumenthal v. United States*, 332 U.S. 539 (1947), and stated that if those rationales were applicable to the case before it, "we doubt that a single conspiracy could be demonstrated" because, among other things, "the activities allegedly embraced by the illegal agreement in this case are simply too diverse to be tied together on the theory that participation in one activity necessarily implied awareness of others," and, even assuming there was a common objective to raise revenue through criminal activity, there was no evidence that each defendant knew that other defendants were engaged in criminal activity." *Id.* at 900-02.

The Fifth Circuit nonetheless held beginning on page 902 of its decision—in a subheading captioned "B.  RICO to the Rescue: The Enterprise Conspiracy"—that "we are convinced that, through RICO, Congress intended to authorize the single prosecution of a multi-faceted, diversified conspiracy by replacing the inadequate 'wheel' and 'chain' rationales with a new

statutory concept: the enterprise." *Id.* at 902.  As the court noted, under traditional conspiracy principles, mass prosecutions in organized crime cases were inhibited because a single agreement or "common objective" could "not be inferred from the commission of highly diverse crimes by apparently unrelated individuals."  *Id.*  "RICO helps to eliminate this problem by creating a substantive offense which ties together these diverse parties and crimes," the court explained, as "the object of a RICO conspiracy is to violate a substantive RICO provision here, to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity and not merely to commit each of the predicate crimes necessary to demonstrate a pattern of racketeering activity." *Id.*  Consequently, the court held:

> Under the statute, it is irrelevant that each defendant participated in the enterprise's affairs through different, even unrelated crimes, so long as we may reasonably infer that each crime was intended to further the enterprise's affairs.  To find a single conspiracy, we still must look for agreement on an overall objective.  What Congress did was to define that objective through the substantive provisions of the Act.

*Id.* at 902-03 (internal footnote omitted).

Thus, and as the Fifth Circuit held in rejecting a claim analogous to that raised by Defendants here, "the "reliance on cases distinguishing single and multiple conspiracies under the 'wheel' and 'chain' notions of conspiracy, is misplaced, since RICO replaces the conceptual devices of 'wheels' and 'chains' with the 'enterprise.'" *United States v. Stratton*, 649 F.2d 1066, 1074 n.10 (5th Cir. 1981) (citing *Elliott*, 571 F.2d at 902).  Several courts of appeals have adopted *Elliott*'s rationale in this regard in criminal RICO cases.  *See United States v. Gonzalez*, 921 F.2d 1530, 1540 (11th Cir. 1991); *United States v. Friedman*, 854 F.2d 535, 562-63 (2d Cir. 1988); *United States v. Tille*, 729 F.2d 615, 619 & n.1 (9th Cir. 1984); *see also United States v. Gallo*, 668 F. Supp. 736, 747 (E.D.N.Y. 1987) (Weinstein, C.J.) ("With the enactment of RICO, Congress

supplemented traditional 'chain' and 'wheel' theories with a new conspiratorial concept—the enterprise.").

**2.**	The First Circuit likewise adopted this rationale from *Elliot*s in *Turkette* and *Tashjian*.  In *Turkette*, which was on remand after the Supreme Court held that a RICO enterprise encompasses both legitimate and illegitimate enterprises, *see United States v. Turkette*, 452 U.S. 576 (1981), one defendant, John Vargas, argued that a RICO conspiracy count that had been dismissed by the district court at the close of the government's case had been brought against him without a reasonable evidentiary foundation, and joinder of that count with the count of substantive mail fraud on which he was convicted was improper under Fed. R. Crim. P. 8(b).  656 F.2d at 7-8.  The First Circuit found no merit to Vargas's claim that the government had acted in bad faith:

> RICO permits the Government to cast a wider net than it could under traditional conspiracy principles.  *See United States v. Elliott*, 571 F.2d at 902.  Thus, the breadth of Count Nine does not, in itself, evidence bad faith on the part of the Government.  Nor does the Government's failure to prove that Vargas was a conspirator show bad faith. * * * We do not think that the district court's granting defendant's motion for a judgment of acquittal on the conspiracy charge at the end of the Government's case demonstrates bad faith.  Finally, Vargas has not introduced any independent evidence of bad faith. * * * Based on our review of the evidence, we cannot say, without more, that the Government acted in bad faith.  The RICO conspiracy count supplies the bond necessary to join Vargas with the other defendants because all are charged with participating "in the same series of acts or transactions constituting an offense or offenses." Fed. R. Crim. P. 8(b).  It follows that there was no Rule 8(b) violation.

*Id.* at 8.

In *Tashjian*, two defendants—who had been acquitted by a jury of RICO conspiracy (Count One) but convicted on other counts—agued on appeal that joinder of Count One with the counts of conviction was error under Fed. R. Crim. P. 8(b).  660 F.3d at 833.  After noting that the Supreme

4

Court's decision in *Turkette* had resolved the defendants' challenge to RICO's scope, the First Circuit found no merit to the defendants' claim of improper joinder:

> With the problem of RICO's scope resolved adversely to the appellants, we see no reason to question the validity of the joinder under Rule 8(b). Count One embraced all of the acts and transactions upon which the other twenty-one counts were based, thus providing the link necessary for joinder of those counts. Neither the appellants' brief nor our review of the record reveals any evidence that the Government acted in bad faith in bringing Count One. The breadth of the alleged conspiracy does not in itself evidence an impermissible prosecutorial objective, but rather simply reflects the fact that RICO enables the Government to cast a wider net than was possible under traditional conspiracy principles. *See United States v. Elliott*, 571 F.2d 880, 902-03 (5th Cir.), *cert. denied*, 439 U.S. 953, 99 S. Ct. 349, 58 L.Ed.2d 344 (1978). Nor does the jury's acquittal of Tashjian and Campbell on Count One undermine the district court's implicit conclusion that there was a sufficient factual basis to Count One to permit joinder of the twenty-two counts.

656 F.2d at 833-34 (internal citations other than *Elliott* omitted).

Two points are manifest from *Turkette* and *Tashjian*. First, the proposition that RICO allows the government to cast a "wider net" than traditional conspiracy principles was essential to the results reached in both cases, as those statements explained why the breadth of the charged conspiracies did not, in itself, support the defendants' claim of bad faith. That proposition consequently is part of the First Circuit's holdings in those cases. *See Arcam Pharm. Corp. v. Faría*, 513 F.3d 1, 3 (1st Cir. 2007) ("We have held that 'when a statement in a judicial decision is essential to the result reached in the case, it becomes part of the court's holding.' The result, along with those portions of the opinion necessary to the result, are binding, whereas dicta is not.") (quoting *Rossiter v. Potter*, 357 F.3d 26, 31 (1st Cir. 2004)); *see also Seminole Tribe v. Florida*, 517 U.S. 44, 66-67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound.").

Second, the *Turkette* and *Tashjian* courts not only cited a single case—*Elliott*—in support of the proposition that RICO allows the government to cast a "wider net" than traditional conspiracy principles, but cited to those pages in *Elliott* in which the Fifth Circuit held that because the statutory RICO enterprise replaced the "wheel" and "chain" limitations on conspiratorial liability, the defendants' challenges to their RICO conspiracy convictions failed even though they would have succeeded under pre-RICO conspiracy principles. *See Turkette*, 656 F.2d at 8 (citing *Elliott*, 571 F.2d at 902); *Tashjian*, 660 F.2d at 833 (citing *Elliott*, 571 F.2d at 902-03). That necessarily means that the First Circuit endorsed this rationale, as there is no other way in which *Elliott* can be read as supporting the proposition that RICO allows the government to cast a "wider net" than traditional conspiracy principles. This conclusion finds additional support in the First Circuit's subsequent statement, in holding that USSG §1B1.2(d) did not apply to RICO conspiracies, that "[i]n enacting RICO, Congress intended that a series of agreements that under pre-RICO law would constitute multiple conspiracies could under RICO be tried as a single enterprise conspiracy if the defendants have agreed to commit a substantive RICO offense." *United States v. Carrozza*, 4 F.3d 70, 79 (1st Cir. 1993) (internal quotation omitted).

Defendants' claim that Count One of the Indictment alleges an impermissible "hub and spoke" enterprise consequently lacks merit under *Elliott*, *Turkette*, and *Tashjian*. Indeed, under Defendants' theory, Congress would have replaced the "wheel" and "limitations" on conspiratorial liability by enacting the statutory RICO enterprise and, at the same time, subjected that enterprise element to those very same limitations. To merely state that proposition is to essentially reject it, as, if this were the case, RICO no longer would allow the government to cast a "wider net" than traditional conspiratorial principles, as *Turkette* and *Tashjian* hold. And while Defendants rely on civil RICO cases from this district and elsewhere in support of the proposition that the RICO

6

enterprise element must have a rim, it is *Turkette* and *Tashjian* that are binding on this Court.  *See, e.g.*, *Eulitt v. Maine*, 386 F.3d 344, 349 (1st Cir. 2004) ("Until a court of appeals revokes a binding precedent, a district court within the circuit is hard put to ignore that precedent unless it has unmistakably been cast into disrepute by supervening authority."); *Lavery v. Restoration Hardware, Inc.*, No. 17-cv-10856-DJC, 2018 WL 1524398, at *4 (D. Mass. March 28, 2018) ("Until the First Circuit revisits its view articulated in [*Hampers v. W.R. Grace & Co., Inc.*, 202 F.3d 44, 51 (1st Cir. 2000)], however, this Court is bound to follow it.").

    **3.**    In its reply memorandum and at the hearing, Defendants cited *Ryan v. Clemente*, 901 F.2d 177 (1st Cir. 1990), for the proposition that "[r]equring that members of an enterprise have a 'common purpose' limits the potentially boundless scope of the word 'enterprise,'" and that *Elliott* "is not to the contrary; it holds that defendants who participate in different crimes can still be associates of one enterprise 'so long as we may reasonably infer that each crime was intended to further the enterprise's affairs.'" *Id.* at 180 (quoting *Elliott*, 571 F.2d at 902-03).  This mixes apples and oranges.  The government has never contested that the association-in-fact enterprise alleged in the First Superseding Indictment must have a "common purpose," as required by *Boyle v. United States*, 556 U.S. 938 (2009).  To the contrary, and as explained in the government's response memorandum, Count One alleges that Defendants and the other members of the enterprise had the "common purpose" of seeking to profit through the illicit sale of Subsys by "bribing practitioners and pharmacies, subverting the reporting requirements of the DEA, [and] providing false and misleading information, including false diagnoses and medical history to insurers."  (FSI ¶¶13, 18, 242-43).  *All* members of the association-in-fact enterprise, in other words, are alleged to have the "common purpose" of seeking to profit through the illicit sale of Subsys, although different members of the enterprise sought to accomplish that purpose in

different ways. *See Stratton*, 649 F.2d at 1074 ("Under RICO, it is irrelevant whether 'each defendant participated in the enterprise's affairs through different, unrelated crimes, so long as we may reasonably infer that each crime was intended to further the enterprise's affairs.'") (quoting *Elliott*, 571 F.2d at 902); *see also Friedland*, 854 F.2d at 562 (quoting this language from *Stratton* with approval).

What the government has argued is that the RICO enterprise element, including the "common purpose" structural feature of association-in-fact enterprises, does not require a rim, as any such interpretation would be inconsistent with *Elliott*, *Turkette*, and *Tashjian*, and would destroy the rationale of those cases that RICO allows the government to cast a "wider net" than was possible under traditional conspiracy principles. This is why Defendants' reliance on a number of civil RICO cases —including *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 374-75 (3d Cir. 2010)—is misplaced. Indeed, as two commentators have stated in noting the "irony" of the Third Circuit's decision applying the "hub and spoke" analysis to the enterprise alleged in that case in the wake of *Boyle v. United States*, 556 U.S. 938 (2009), "the Supreme Court's reaffirmation in *Boyle* of the breadth of RICO's enterprise element with respect to association-in-fact enterprises does not suggest that the Supreme Court had in mind the reintroduction of wheel and chain conspiracy limitations upon RICO's enterprise element." David B. Smith and Terrance G. Reed, *Civil RICO* ¶7.02(7)(b)(ii), at 7-30.20(15) (April 2018).

**4.** Finally, and for the reasons set forth in the government's response memorandum, even assuming *arguendo* that the enterprise element is subject to the "hub and spoke" limitation, Defendants' motion to dismiss Count One should be denied because the Indictment sufficiently alleges the existence of a common goal, evidence of interdependence among the participants, and the degree to which the roles of the members of the enterprise overlap.

**B.  The Pattern of Racketeering Activity is Pled in the *Glecier* Format.**

During the hearing, Defendants also briefly asserted that the pattern of racketeering activity was not sufficiently pled, which is incorrect for the reasons set forth in the government's response memorandum. The pattern of racketeering activity in this case was pled in a so-called *Glecier* format, under which an indictment is sufficient despite the fact that it does not list specific predicate acts in which defendant(s) are involved so long as the indictment alleges that defendants(s) knowingly joined a conspiracy, the objective of which was to operate the enterprise through a pattern of racketeering activity consisting of multiple acts of a specified crime or crimes. *See United States v. Glecier*, 923 F.2d 496, 500-01 (1991); *see also United States v. Applins*, 637 F.3d 59, 81 (2d Cir. 2011) (because a RICO conspiracy charge "need not specify the predicate or racketeering acts that the defendants agreed would be committed, it is sufficient to allege and prove that the defendants agreed to the commission of multiple violations of a specific statutory provision that qualifies as RICO racketeering activity") (internal citation omitted).

**C.  Wire and Mail Fraud Conspiracy Does Not Require an Overt Act.**

During the hearing, Defendants briefly alluded to the absence of an overt act alleged in Counts Two and Three, which charge them with mail fraud conspiracy and wire fraud conspiracy, in violation of 18 U.S.C. §1349. There is no such requirement. Section 1349 provides:

> Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

18 U.S.C. §1349. Section 1349 does not by its terms provide that an overt act is required for a conspiracy conviction, and the Supreme Court has stated that where the text of a statute "does not expressly make the commission of an overt act an element of the conspiracy offense, the Government need not prove an overt act to obtain a conviction." *Whitfield v. United States*, 543

9

U.S. 209, 214 (2005).  Courts therefore have held that a conviction under §1349 does not require proof of an overt act.  *See, e.g.*, *United States v. Roy*, 783 F.3d 418, 420-21 (2d Cir. 2015) (per curiam); *United States v. Rogers*, 769 F.3d 372, 380-82 (6th Cir. 2014); *United States v. Eason*, 579 F. App'x 807, 810 n.3 (11th Cir. 2014) (unpublished) (per curiam); *United States v. Pascacio-Rodriguez*, 749 F.3d 353, 363-64 & 364 n.49 (5th Cir. 2014); *United States v. Chinasa*, 489 F. App'x 682, 685–86 (4th Cir. 2012) (unpublished) (per curiam); *United States v. Fishman*, 645 F.3d 1175, 1186 (10th Cir.2011).

### D.     Citations to Cases Cited During Argument

During argument, and with respect to the question of a physician's duty to provide honest services to his or her patients, the government cited *United States v. Nayak*, 769 F.3d 978 (7th Cir. 2014), and *United States v. Greenspan*, No. 16-cr-114 (WHW), 2016 WL 4402822 (D.N.J. Aug. 16, 2016).

Date:   July 24, 2018                                         Respectfully submitted,

                                                              ANDREW E. LELLING
                                                              United States Attorney

                                              By:     */s/ Mark T. Quinlivan*
                                                      K. NATHANIEL YEAGER
                                                      DAVID J. D'ADDIO
                                                      MARK T. QUINLIVAN
                                                      Assistant U.S. Attorneys

                                                      John Joseph Moakley U.S. Courthouse
                                                      One Courthouse Way, Suite 9200
                                                      Boston, Massachusetts 02210
                                                      (617) 748-3100
                                                      nathaniel.yeager@usdoj.gov
                                                      david.daddio@usdoj.gov
                                                      mark.quinlivan@usdoj.gov

**CERTIFICATE OF SERVICE**

    I, Mark T. Quinlivan, hereby certify that the foregoing document filed through the ECF system will be sent electronically to counsel for the defendants.

By: */s/ Mark T. Quinlivan*  
MARK T. QUINLIVAN
