UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | No.: 16-CR-10343-ADB |
| | ) | |
| | ) | |
| | ) | **FILED UNDER SEAL** |
| | ) | |
| MICHAEL L. BABICH, et al. | ) | |

**MOTION FOR RECONSIDERATION OF COURT'S ORDER GRANTING IN PART
DEFENDANTS' MOTION FOR DISCOVERY**

The United States respectfully moves this Court to: (1) reconsider its ruling that the Government waived its opposition to producing Brady, Giglio, and Rule 16 materials in possession of ten federal agencies; (2) deny Defendants' specific requests for DEA communications regarding wholesaler caps, and for DEA and FDA communications regarding the legitimacy of off-label use of rapid-onset opioids; and (3) either deny the Defendants' motion pertaining to other agency materials as moot, based on the scope of the government's inquiry and production of agency materials, or otherwise limit the scope of the order to agency materials and information in the possession of the prosecution team in this case.

The government recognizes its duty to seek exculpatory and impeachment information in the possession, custody, or control of any member of the prosecution team, regardless of where that information resides. The government has and will continue to exercise its discovery obligations with diligence and care. Indeed, the government has gone well beyond what it believes its obligations are under the law. Nonetheless, there is no support for an order that potentially holds the government responsible for inquiring of thousands of agency employees

across the nation who played no role in this investigation, to search for documents that the Defendants contend could constitute potentially exculpatory information.[1]

I.    Procedural Background

On May 21, 2018, defendants John Kapoor, Michael Babich, Alec Burlakoff, Michael Gurry, Richard Simon, Sunrise Lee, and Joseph Rowan (collectively, the "Defendants") filed a "Motion For An Order Requiring the Government to Produce Exculpatory Material in the Possession of Sister USAOs and Federal Agencies" (Dkt. No. 311), and an accompanying memorandum of law in support of the motion (Dkt. No. 312) (collectively, "Defendants' Motion"). Specifically, the Defendants sought production of all exculpatory and impeachment material in the possession of six "sister USAOs" and ten federal agencies that the Defendants contend were part of the prosecution team.[2] Defendants also made six specific requests constituting what they believe is Brady and/or Giglio material, including DEA and FDA communications. (Dkt. No. 312 at 8). On June 11, 2018, the Government filed under seal its opposition to Defendants' Motion. A redacted version of the filing was added to the public docket on June 29, 2018. (Dkt. No. 340). On July 3, 2018, Defendants filed a reply

---

[1] Rule 2(b) of the Local Rules for Magistrate Judges in the United States District Court for the District of Massachusetts allows for objections to a magistrate judge's order to be filed within 14 days of the order, unless a different time is prescribed by the magistrate judge or district judge, and states that the district judge assigned to the case will consider such objections. The government has filed this motion for reconsideration in the magistrate court session within that 14-day window. Should the Court deny the government's motion, the government respectfully seeks leave to file its objection for consideration by the district judge in this case.

[2] Those agencies were: FBI, HHS-OIG, FDA Office of Criminal Investigations; the Defense Criminal Investigative Service; the Drug Enforcement Administration; the Department of Labor, Employee Benefits Security Administration; the Office of Personnel Management; the U.S. Postal Inspection Service; the U.S. Postal Service Office of the Inspector General; and the Department of Veterans Affairs. (Dkt. 380 at 2). The six "sister USAOs" were: the District of Connecticut, the Eastern District of Michigan, the Southern District of Alabama, the Southern District of New York, the District of Rhode Island, and the District of New Hampshire. Id.

memorandum. (Dkt. No. 341-1). The Court heard argument on July 17, 2018, and issued a sealed written order on August 3, 2018. (Dkt. No. 380).

Based on the government's discovery productions, the Court denied Defendants' Motion as moot as to the six "sister USAOs," but found that the Government had waived any argument opposing Defendants' requests for materials in the possession of the above-mentioned ten federal agencies because the government did not adequately address the issue in its written opposition or in its oral argument. (Dkt. No. 380 at 11 (citing Redondo-Borges v. United States Dep't of Housing and Urban Dev., 421 F.3d 1, 6 (1st Cir. 2005))). The Court ordered the government to produce all Brady and Rule 16 materials and information in the possession of the ten federal agencies at issue, including materials responsive to defendant's six specific requests, within 45 days. (Dkt. 380 at 12).

II.   Argument

The government acknowledges that it should have better developed its positions regarding: (1) whether certain agency materials requested by Defendants were in the possession of members of the prosecution team; and (2) whether the documents and information requested were material to the charged offenses. But the government does not agree that its arguments on these issues were waived.

A.   Written Opposition

In its opposition, the government focused on defining the scope of the prosecution team in this investigation. This is the appropriate framework for assessing the government's discovery obligations and is the framework this Court adopted in its Order. *See* Dkt. No. 380 at 8.

The government described the members of the prosecution team, as well as their responsibilities:

3

> [d]uring the course of its investigation, the District of Massachusetts relied upon the efforts of 18 federal agents, one intelligence analyst, and one forensic accountant, from ten different federal agencies (the "Boston team"). While a few members of the Boston team have been assigned to the investigation from its inception, most of the investigators have participated in only a portion of the Boston team's efforts. As members of the Boston team, the assigned investigators have:   (1) gathered evidence, (2) reviewed large tranches of documents, (3) interviewed witnesses, and (4) participated in team meetings, at which strategy and tasks were discussed and assigned.

(Dkt. No. 340 at 2).  The Government then discussed caselaw defining the prosecution team, and

quoted United States v. Meregildo, 920 F. Supp. 2d 434, 441 (S.D.N.Y. 2013), in which the

district court found:

> [t]he prosecution team may also include individuals who are not strategic decision-makers. ... Those may include testifying police officers and federal agents who submit to the direction of the prosecutor and aid in the Government's investigation. ... *But the prosecution team does not include federal agents, prosecutors, or parole officers who are not involved in the investigation. ...* And, even when agents are involved in the investigation, they are not always so integral to the prosecution team that imputation is proper ....

(Dkt. 340 at 4) (emphasis added).  This is how the government attempted to articulate its

obligations to search agency files—i.e., to seek from all of members of the prosecution team any

exculpatory information in their possession, custody, or control, regardless of where that

information resided.    Thus, although the government did not expressly address agency

documents beyond those in the possession, custody, or control of the 18 agents of the

prosecution team, the government's position that such agency documents were not discoverable

was incorporated into its definition of the prosecution team, as supported by the caselaw cited in

its memorandum.

The Government also objected to most of the Defendants' six specific requests for

documents.    (Dkt. 340 at 6).   Two of these requests sought agency documents and

communications generally involving the policy-making and regulatory functions of DEA and

FDA, not their criminal investigative functions. Specifically, the Defendants sought: (1) "DEA

communications acknowledging that a physician's or a pharmacy's order of an opioid product is not 'suspicious' merely because it exceeds some arbitrary monthly cap that the wholesaler has chosen to impose"; and (2) "DEA or FDA communications acknowledging that the off-label use of immediate release fentanyl products, such as Subsys, is medically and scientifically legitimate." (Dkt. No. 312 at 8). The government argued that these documents were not in the possession of the prosecution team and were not relevant or material to the charged offenses. (Dkt No. 340 at 6-7).

      B.    Oral Argument

    At the hearing on Defendants' Motion, the Government objected to the Defendants' broad assertion that the Government has a duty to conduct a nationwide search of the entire agency of each agent assigned to the prosecution team:

> THE COURT: So I think it's actually on Page 6 of your brief. You listed them out.
>
> MR. YEAGER: Yeah. Right. So to one, "Any denial made to any federal agent or federal prosecutor involved in the federal investigation of INSYS," you know, with regard to the six—so the caselaw that we cite talks about it's not any federal agent. It's federal agents on the prosecution team and I would limit it to that. But any federal agent on the prosecution team—
>
> THE COURT: No. So the question here is that your brief did not oppose their request with respect to agencies. So I thought we were talking about the request to the agencies with respect to these six items, some of which you say are material.
>
> MR. YEAGER: So I thought we had opposed it with regard to agencies, but I don't believe the Government should be required to be responsible for the entire DEA agency, or all the other agencies with regard to this investigation, what might be out there on other cases. No, your Honor, I don't.

(Dkt. No. 369 at 34-38).

    The government believes that when taken together, these arguments, while not sufficiently developed, were not so vague as to be waived. In any event, unlike Redondo-Borges

and other cases that involve an incomplete *appellate* record (see, e.g., United States v. Zanino, 895 F.2d 1, 17 (1st Cir. 1990)), this Court is not left to attempt to piece together the government's arguments from a limited, closed record. Cf. Fed. R. App. P. 4(a) (defining the record on appeal). Given the current posture of this proceeding, the government therefore respectfully requests that the Court accept the supplemental argument below regarding this issue before reaching a conclusion that would result in an unwarranted expansion of the requirements of Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), and Rule 16. See, e.g., Rivera-Gomez v. Castro, 843 F. 2d 631, 634-35 (1988) (acknowledging that, despite litigants' failure to spell out arguments squarely and distinctly, the District Court should have accepted follow-up memoranda).

C.    The Court's Order Creates an Unwarranted Expansion of the Government's Discovery Obligations.

A blanket holding that a prosecutor has a duty to search the entire agency of each agent assigned to the prosecution team is not supported by precedent. To be sure, courts have at times loosely described the government's duty of inquiry as broadly applying to the "agency" of those agents assigned to the investigation. But that language does not supplant the black-letter principle that the scope of the government's duty to obtain and produce exculpatory materials is defined by the individuals comprising the prosecution team, not the entirety of the agencies they work for. The Supreme Court has stated that prosecutors have a duty to "learn any favorable evidence known to *others acting on the government's behalf in the case*, including the police." Kyles v. Whitley, 514 U.S. 419, 437 (emphasis added). Thus, if police or federal agents who are members of the prosecution team have exculpatory information in their possession, a prosecutor

must, of course, obtain and produce that information.[3]  But that does not create an open-ended

obligation to conduct a nationwide search of the files of other agency employees who were not

involved in the investigation and were therefore not a part of the prosecution team.  The First

Circuit has made this distinction clear with respect to agency files:

> While a prosecutor must disclose information maintained by government
> agents even if the prosecutor herself does not possess the information, *this*
> *duty does not extend to information possessed by government agents not*
> *working with the prosecution.*

United States v. Hall, 434 F.3d 42, 55 (1st Cir. 2006) (citations omitted) (emphasis added).  This

oft-cited principle makes clear that it is the knowledge and information in the possession of the

individual members of the prosecution team that governs the discovery obligations, not the

collective knowledge and information of the entire agency for which a prosecution team member

works.

The distinction is significant, as federal agencies such as FDA and DEA are massive

organizations that serve regulatory and policy-making functions that are separate from their

criminal investigative functions, let alone the specific investigation of the seven charged

defendants in this case.[4]  The entirety of such agencies do not become members of the

prosecution team simply because certain agents are members of the prosecution team.  See, e.g.,

United States v. Pellulo, 399 F.3d 197, 218 (3d Cir. 2005) (overturning District Court's finding

of a Brady violation because the government had no duty to search a division of the Department

of Labor ("DOL") not involved with the prosecution; the fact "that other agents in the DOL

---

[3]  Those agents also have an independent, correlative duty to provide such information to the
prosecutor so that it may be produced to the defendant.  See Drumgold v. Callahan, 707 F.3d 28,
38 (1st Cir. 2013).

[4] Although the Court's Order treats only FDA's Office of Criminal Investigations as part of the
prosecution team, the Order appears to grant Defendant's request for FDA communications that
likely reside elsewhere in the agency.

participated in this investigation does not mean that the entire DOL is properly considered part of the prosecution team.").

As the Defendants are aware through discovery provided in this case and other public information, there are many ongoing investigations throughout the country that relate in some way to Subsys that are separate and distinct from the instant case. The investigations involve some of the same agencies, but different agents working in different offices with different prosecution teams. Indeed, new investigations may continue to arise in the future. The government is not aware of any case supporting a duty of inquiry so broad that it would cover any such agent or investigation, nor is the government aware of any practical way to carry out such a duty.

> D.   The Government's Search for Exculpatory Information Within Agencies Has Extended Well Beyond the Prosecution Team in This Case.

As this Court has stated, the government is primarily responsible for determining what evidence it must disclose under Brady and its progeny. (Dkt. No. 380 at 6-7 (citing United States v. Rodriguez-Rivera, 473 F.3d 21, 25-26 (1st Cir. 2007)). The Supreme Court noted in Kyles, "[t]his means, naturally, that a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of evidence. ... This is as it should be." Kyles, 514 U.S. at 439 (citing United States v. Agurs, 427 U.S. 97, 108 (1976) ("[T]he prudent prosecutor will resolve doubtful questions in favor of disclosure")).

The liberal approach to seeking and disclosing potentially exculpatory information encouraged by Kyles is exactly the approach the government has taken in this case. The government has undertaken its obligation with great care and diligence. As described at the July 17, 2018 hearing, the government sought exculpatory and Rule 16 materials from the investigations conducted by the six "sister USAOs." To be clear, this included documents and

information from those prosecution teams, which included various federal agents, and therefore incorporated agency documents and information well beyond that possessed by the Boston team. Thus, while the government maintains that the six "sister USAOs," including the agents working for them, are not part of the prosecution team in the instant case, the government has nonetheless sought any exculpatory information from them and has produced it to Defendants.[5]  Moreover, the government will continue to seek such information from the six sister USAOs, including from their investigating agents.

Further demonstrating its diligence in seeking exculpatory information from agency files, the government extended its search further still, moving beyond the investigations conducted by the six sister USAOs.  For example, the government has requested that each of the agents working on the Boston team seek from their respective agencies the disclosure of any Insys sales representative's or Insys physician consultant's denial that Insys speaker program payments were intended to be kickbacks or that a speaker program was a sham.  The government has sought this information without regard for district or prosecution team, anywhere in the United States.

The government believes that—with the exception of two specific requests addressed below—the government's disclosures effectively moot Defendants' request for agency materials, and the Court may, applying the same reasoning it did to the "sister USAO" materials, deny the Defendants' Motion for agency materials as moot.

As this Court is aware, there is no precise formula in the case law that determines where and how to search for exculpatory information.  See generally United States v. LaRouche Campaign, 695 F. Supp. 1265, 1281 (D. Mass. 1988) (Keaton, J.) (describing the government's

---

[5]  Indeed, at the hearing on the Motion, counsel for the Defendants stated, "I will say at the outset I've tried cases in this district and other districts.  I am entirely appreciative of the discovery procedures that this district uses.  I think … [the prosecution] ought to be commended for turning over as much as it has."  (Dkt. No. 369 at 25).

duty of inquiry where a case spans multiple offices, and noting, "The methods of search that are required to meet these guidelines will vary, depending on the circumstances of the case."). The government in this case has attempted to search for exculpatory information in a broad and thorough manner, erring on the side of disclosure at each step along the way. Even where the government believes that the Defendants' requests are too broad, seek immaterial information, or seek information not in the prosecution team's possession, the government has still tried to provide available information that addresses the issues raised by Defendants.

For example, the government has previously objected (and continues to object) to the Defendants' request for DEA communications regarding wholesaler caps, as immaterial and indeed irrelevant to the charged offenses in this case.[6] Nonetheless, the government has sought and will provide Defendants with any suspicious activity reports in the possession of the DEA regarding any pharmacy identified in the First Superseding Indictment, as discussed at the July 17, 2018 hearing.

As to Defendants' request for agency communications regarding the legitimacy of off-label use of immediate release fentanyl products, the government maintains—as it did in its opposition and at the July 17, 2018 hearing—that such statements of the DEA and FDA are not relevant to the charged offenses and are not in the possession of the prosecution team. In any case, the FDA has repeatedly acknowledged in public statements that doctors may legitimately use approved drugs for off-label purposes. See, e.g., https://www.fda.gov/forpatients/other /offlabel/ default.htm ("From the FDA perspective, once the FDA approves a drug, healthcare

---

[6] The indictment alleges that Defendants believed they could subvert suspicious reporting requirements to the DEA by eliminating wholesalers from the distribution chain. The Defendants have never suggested that they were aware of any statement by DEA regarding wholesale caps and related suspicious reporting requirements, and there has been no explanation of how such statements could be relevant to the state of mind and intent of the Defendants at the time of the charged offenses in this case.

providers generally may prescribe the drug for an unapproved use when they judge that it is medically appropriate for their patient."). Granting this request would require the government to search years of communications of current and former regulatory and policy-making personnel who did not communicate with or act on behalf of the government in this investigation.

The government will continue to work in good faith with defense counsel to respond to reasonable requests for additional documents and information that they believe are material to the preparation of the defense. Cf. United States v. Merlino, 349 F.3d 144, 154 (3d Cir. 2003) ("[I]t is one thing to require honest searches, reasonable in scope, of unrelated files for specific identifiable information, but quite another to send prosecutors on open-ended fishing expeditions.") (citation and internal quotation marks omitted)  The Court's current order, however, is an unwarranted expansion of the government's discovery obligations.

III.   Conclusion

For the foregoing reasons, the United States respectfully moves this Court to: (1) reconsider its ruling that the Government waived its opposition to producing Brady, Giglio, and Rule 16 materials in possession of ten federal agencies; (2) deny Defendants' specific requests for DEA communications regarding wholesaler caps and for DEA and FDA communications regarding the legitimacy of off-label use of rapid-onset opioids; and (3) either deny the Defendants' motion pertaining to other agency materials as moot, based on the scope of the government's inquiry and production of agency materials, or otherwise limit the scope of the

order to agency materials and information in the possession of the prosecution team in this case.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:     /s/ K. Nathaniel Yeager
K. NATHANIEL YEAGER (BBO 3630992)
DAVID J. D'ADDIO (BBO 665790)
DAVID G. LAZARUS (BBO 624907)
Assistant U.S. Attorneys

Date:   August 17, 2018,

## CERTIFICATE OF SERVICE

I, K. Nathaniel Yeager, hereby certify that the foregoing document filed through the ECF system will be sent electronically to counsel for the defendants.

By:     /s/ K. Nathaniel Yeager
K. NATHANIEL YEAGER