UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | *<br>*<br>* |
| v. | *<br>* |
| MICHAEL L. BABICH, ALEC BURLAKOFF, MICHAEL J. GURRY, RICHARD M. SIMON, SUNRISE LEE, JOSEPH A. ROWAN, and JOHN KAPOOR, | * Criminal Action No. 16-cr-10343-ADB<br>*<br>*<br>*<br>* |
| Defendants. | * |

## **MEMORANDUM AND ORDER GRANTING**
## **MOTION TO DISQUALIFY DR. CHRISTOPHER GILLIGAN**

BURROUGHS, D.J.

Defendants Michael Babich, Alec Burlakoff, Michael Gurry, Richard Simon, Sunrise Lee, Joseph Rowan, and John Kapoor (collectively, "Defendants") held executive management positions at Insys Therapeutics, Incorporated ("Insys"), a corporation that manufactured, marketed, and sold Subsys, a liquid formulation of fentanyl. [ECF No. 419 ¶¶ 1–2, 16–22]. The government alleges that Defendants engaged in a racketeering conspiracy in violation of 18 U.S.C. §§ 1962(d) and 1963. [Id. ¶¶ 1–75.] Now before the Court is Defendants' motion to disqualify Dr. Christopher Gilligan as an expert for the government based on their assertion that defense counsel had met with Dr. Gilligan first and through meetings and conversations had given him insight into their defense strategy. [EFC No. 387]. Defendants and the government have submitted briefs on these issues, and Defendants have submitted relevant documents reflecting their interactions with Dr. Gilligan for review *in camera*. [ECF Nos. 387, 388, 392, 407, 417]. For the reasons discussed below, Defendants' motion is GRANTED.

## I. BACKGROUND

Dr. Christopher Gilligan is the Chief of the Division of Pain Medicine at Brigham and Women's Hospital in Boston, Massachusetts. [Dkt. No. 392-7 at 2 of 8]. On March 9, 2018, Defendants reached out to Dr. Gilligan about potentially serving as an expert witness for Defendants. [Dkt. No. 392-2 at 3 of 3]. Dr. Gilligan agreed, and over the next two months, defense counsel evaluated Dr. Gilligan as a potential expert, including participating in three teleconferences with Dr. Gilligan on March 21, 2018, March 30, 2018, and April 13, 2018, and one in-person meeting with him on April 25, 2018. [Dkt. No. 392-7]. Defense counsel state that attorneys from Wilkinson Walsh Eskovitz LLP asked Dr. Gilligan to keep the substance of their conversations confidential, but that they did not enter into a written confidentiality agreement with him. [Dkt. No. 392-1 at ¶ 3]. Defense counsel further claim that, during those four conversations, they discussed with Dr. Gilligan confidential case strategy, including defense counsel's theory of the case, possible defenses to the pending criminal charges, and subject areas that Defendants thought they might ask Dr. Gilligan to address. [Dkt. No. 388 at 1]. Defense counsel submitted for *in camera* review two summaries of contemporaneous attorney notes that detail these four conversations with Dr. Gilligan. [Dkt. Nos. 392-3 and 392-4].

On May 11, 2018, Dr. Gilligan notified defense counsel that he received "guidance from [the] leadership in [his] department that [he] cannot serve as an expert witness on the case." [Dkt. No. 392-5 at 4 of 12]. Dr. Gilligan offered to assist Defendants with finding an alternative expert. [Id.] Defense counsel accepted Dr. Gilligan's offer and participated in one final teleconference with him on May 11, 2018, during which Dr. Gilligan recommended three other pain management experts. [Id. at 2 of 12]. At no point did defense counsel formally retain Dr. Gilligan or compensate him for his time.

On July 5, 2018, the government contacted Dr. Gilligan about potentially serving as a pain management expert for it in this case. [Dkt. No. 407-1 at 1 of 3]. Dr. Gilligan previously testified as an expert for the government in *United States v. Zolot*, 11-cr-10070-PBS (D. Mass), in which the government charged a physician and nurse practitioner with one count of conspiracy to distribute methadone, oxycodone, and fentanyl, and seven counts of distribution of controlled substances. On July 27, 2018, during a call with the government, Dr. Gilligan disclosed that he had met with defense counsel about serving as a pain management expert for them in the same case but that he had not been retained. [Id. at 1-2 of 3]. The government instructed Dr. Gilligan not to disclose the substance of his meetings with defense counsel and asked Dr. Gilligan questions about his understanding of the confidentiality of his conversations with the defense team. [Id. at 2 of 3]. After researching the issue, the government, the District's Professional Responsibility Officer, and the Department of Justice's Professional Responsibility Advisory Office concluded that retaining Dr. Gilligan as a pain management expert would be permissible under the circumstances. [Id.].

On August 1, 2018, the government disclosed to Defendants that it may call Dr. Gilligan to testify as a pain management expert at trial. [Dkt. No. 388-1 at 4 of 5]. The parties exchanged correspondence and Defendants filed this motion on August 20, 2018 [ECF No. 387].

## II. DISCUSSION

"Although courts are generally reluctant to disqualify expert witnesses, federal courts have inherent authority to disqualify experts if necessary to preserve public confidence in the fairness and integrity of the judicial system." Palomar Med. Techs., Inc. v. Tria Beauty, Inc., No. 09-cv-11081-RWZ, 2012 WL 517532, at *2 (D. Mass. Feb. 15, 2012) (quoting Lacroix v. Bic Corp., 339 F. Supp. 2d 196, 199 (D. Mass. 2004) (quotation marks omitted).

3

"[D]isqualification of an expert is warranted based on a prior relationship with an adversary if (1) the adversary had a confidential relationship with the expert and (2) the adversary disclosed confidential information to the expert that is relevant to the current litigation." Hewlett-Packard Co. v. EMC Corp., 330 F. Supp. 2d 1087, 1092–93 (N.D. Cal. 2004). In addition to these two factors, the court may consider its "interest in protecting and preserving the integrity and fairness of the judicial proceedings." Simons v. Freeport Mem'l Hosp., No. 06-cv-50134, 2008 WL 5111157, at *2 (N.D. Ill. Dec. 4, 2008).

"The party seeking disqualification bears the burden of showing that it was reasonable for it to believe that a confidential relationship existed, and whether the relationship developed into a matter sufficiently substantial to make disqualification or some other judicial remedy appropriate." Lacroix, 339 F. Supp. 2d at 200 (citations and quotation marks omitted). The test is an objective test, and the court may consider several factors, including:

> whether the relationship was one of long standing and involved frequent contacts instead of a single interaction with the expert, whether the expert is to be called as a witness in the underlying case, whether alleged confidential communications were from expert to party or vice-versa, and whether the moving party funded or directed the formation of the opinion to be offered at trial.

Id. (quoting Stencel v. Fairchild Corp., 174 F. Supp. 2d 1080, 1083 (C.D. Cal. 2001)). "'Other factors include whether the parties entered into a formal confidentiality agreement, whether the expert was retained to assist in the litigation, the number of meetings between the expert and the attorneys, whether work product was discussed or documents were provided to the expert, whether the expert was paid a fee, whether the expert was asked to agree not to discuss the case with the opposing parties or counsel, and whether the expert derived any of his specific ideas from work done under the direction of the retaining party.'" Id. (quoting Hewlett–Packard v. EMC Corp., 330 F. Supp. 2d at 1093). "The emphasis 'is not on whether the expert was retained per se but whether there was a relationship that would permit the litigant reasonably to expect

4

that any communications would be maintained in confidence.'" Lacroix, 339 F. Supp. 2d at 200 (quoting Hewlett-Packard, 330 F. Supp. 2d at 1093).

The party seeking disqualification also bears the burden of showing that confidential information was disclosed to the expert. "Confidential information essentially is information 'of either particular significance or [that] which can be readily identified as either attorney work product or within the scope of the attorney-client privilege.'" Lacroix, 339 F. Supp. 2d at 200–01 (quoting Hewlett–Packard, 330 F. Supp. 2d at 1094). "It could include discussion of the party's 'strategy in the litigation, the kinds of experts [the party] expected to retain, [the party's] view of the strengths and weaknesses of each side, the role of each of the [party's] experts to be hired and anticipated defenses.'" Id. at 201 (quoting Hewlett–Packard, 330 F.Supp.2d at 1094; Mayer v. Dell, 139 F.R.D. 1, 4 (D.D.C. 1991)). "Only the disclosure of confidential information that the opposing party would be unable to obtain through discovery should form a basis for disqualification of an expert witness." Twin City Fire Ins. Co. v. Mitsubishi Motors Credit of Am., Inc., No. 04-cv-0043, 2006 WL 5164249, at *4 (C.D. Cal. Nov. 6, 2006). "The key distinction to be made . . . is between confidential information that is disclosed to the expert, but that is nevertheless discoverable by the opposing party, and confidential information that is privileged, attorney work product, or otherwise inaccessible to the opposing party." Id.

Applying these standards, the Court concludes that Defendants have satisfied their burden and disqualifies Dr. Gilligan from testifying on behalf of the government. The Court acknowledges that this is a close case, particularly given the lack of a confidentiality agreement, but ultimately concludes that disqualification is warranted given the defense representation that they asked Dr. Gilligan to keep the substance of their conversations confidential, the nature of

5

the information exchanged, and the fact that this is a criminal case which, in the view of the Court, requires that close calls be resolved in favor of the Defendants.

The record indicates that defense counsel's relationship with Dr. Gilligan developed beyond an informal consultation and Defendants' assumption of a confidential relationship with Dr. Gilligan was reasonable. Although defense counsel did not enter into a formal confidentiality agreement with Dr. Gilligan, pay him for his time, or ultimately retain him, Defendants' *ex parte* filings demonstrate that defense counsel and Dr. Gilligan had four substantive discussions, during which defense counsel apparently requested confidentiality and disclosed significant confidential attorney work product concerning their litigation strategy in this case. Even if Dr. Gilligan did not disclose this confidential information to the government, the government "would still obtain the benefit of this confidential information because it would shape or effect, either consciously or unconsciously," the testimony that Dr. Gilligan would render on behalf of the government. Conforti & Eisele, Inc. v. Div. of Bldg. & Const., Dep't of Treasury, 170 N.J. Super. 64, 73 (1979). Finally, the exercise of the Court's inherent authority to disqualify experts where necessary to preserve public confidence in the fairness and integrity of the judicial system is particularly justified in a criminal case, where it is incumbent on the Court to take all steps necessary to ensure the Defendants receive as fair a trial as possible.

Thus, given that defense counsel, in a criminal case, seemingly disclosed confidential work product to Dr. Gilligan prior to his contact with the government relative to this case, the Court finds that Dr. Gilligan must be disqualified as an expert for the government. There is no evidence that the government or Dr. Gilligan acted in bad faith, however, and the Court grants the government's requests that they be permitted to retain an expert to replace Dr. Gilligan and for time to do that.

Accordingly, Defendants' motion to disqualify Dr. Christopher Gilligan [ECF No. 387] is GRANTED.  Dr. Gilligan is hereby disqualified and the government is barred from discussing this case with Dr. Gilligan.  The government is granted until October 26, 2018 to retain and appropriately disclose a pain management expert to replace Dr. Gilligan.[1]

**SO ORDERED.**

September 26, 2018                                             /s/ Allison D. Burroughs
                                                                              ALLISON D. BURROUGHS
                                                                              U.S. DISTRICT JUDGE

---

[1] The Defendants' willingness to delay the trial did not factor into this ruling.  The Court appreciates that the government expeditiously found an alternative expert and encourages the government to make the required disclosures as soon as practicable.  With regard to scheduling, the Court anticipates that the trial of this case will end prior to May 6, 2019 and wants to preserve the possibility of recessing for February and April vacation weeks depending on the needs of the jurors and the Court.  Subject to further discussion with the parties, the Court intends to sit from approximately 10 a.m. to 4 p.m. four days per week and 10 a.m. to 1 p.m. one day per week.