UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

***************************

UNITED STATES OF AMERICA,
          Plaintiff

vs.                                    Case No. 1:16-cr-10343-ADB

MICHAEL L. BABICH ET AL,
          Defendants

***************************

TRANSCRIPT OF MOTION HEARING
BEFORE THE HONORABLE JENNIFER C. BOAL
AT BOSTON, MASSACHUSETTS
ON NOVEMBER 5, 2018

APPEARANCES:

For the Plaintiff:
David G. Lazarus, Assistant United States Attorney
Fred M. Wyshak, Assistant United States Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston, Massachusetts 02210
617-748-3100

For Defendant Michael Babich:
William H. Kettlewell, Esquire
Hogan Lovells US, LLP
100 High Street, 20th Floor
Boston, Massachusetts 02110
617-371-1005

Transcriber:  Karen M. Aveyard,
              Approved Federal Court Transcriber

---------------------------------------------------

**TRANSCRIPTION PLUS**
**1334 ELM STREET**
**LEOMINSTER, MASSACHUSETTS 01453**
**(978) 466-9383**
**k.aveyard@comcast.net**

For Defendant, Michael Babich (continued):
Joseph Sedwick Sollers, III, Esquire (*Telephonically*)
Mark A. Jensen, Esquire (*Telephonically*)
King & Spalding LLP
1700 Pennsylvania Avenue NW, Suite 200
Washington, DC 20006
202-626-5612

For Defendant Alec Burlakoff:
George W. Vien, Esquire
Donnelly Conroy & Gelhaar, LLP
260 Franklin Street, Suite 1600
Boston, Massachusetts 02110
617-720-2880

For Defendant Richard Simon:
Patrick J. O'Toole, Jr., Esquire (*Telephonically*)
Weil Gotshal & Manges, LLP
2001 M Street NW, Suite 600
Washington, DC 20036
202-682-7213

For Defendant Michael Gurry:
Megan A. Siddall, Esquire
Demeo, LLP
200 State Street
Boston, Massachusetts 02109
617-263-2600

For Defendant Sunrise Lee:
Peter C. Horstmann, Esquire
450 Lexington Street, Suite 101
Newton, Massachusetts 02466
617-723-1980

For Defendant Joseph Rowan:
Michael Kendall, Esquire
White & Case, LLP
75 State Street
Boston, Massachusetts 02109
617-939-9310

For Defendant John Kapoor:
Kosta S. Stojilkovic, Esquire
Beth Wilkinson, Esquire
Wilkinson Walsh Eskovitz, LLP
2001 M Street NW
Washington, DC 20036
202-847-4000

1                    P R O C E E D I N G S

2

3           THE CLERK:  Today is November 5, 2018.  We're on the

4    record in the matter of United States v. Babich et al.  Case

5    Number is 16-cr-10343.

6           Will counsel please identify themselves for the

7    record.

8           MR. LAZARUS:  Good afternoon, your Honor.  David

9    Lazarus on behalf of the United States.

10          Your Honor, would you like us to stay seated again for

11   the folks on the phone?

12          THE COURT:  Yes, please.

13          MR. LAZARUS:  Thank you.

14          MR. WYSHAK:  Good afternoon.  Fred Wyshak for the

15   United States.

16          MR. KETTLEWELL:  Good afternoon, your Honor.  William

17   Kettlewell for Mike Babich.

18          MR. VIEN:  Good afternoon, your Honor.  George Vien

19   for Alec Burlakoff.

20          MS. SIDDALL:  Good afternoon, your Honor.  Megan

21   Siddall for Mike Gurry.

22          MR. HORSTMANN:  Good afternoon, your Honor.  Pete

23   Horstmann for Sunrise Lee.

24          MR. KENDALL:  Good afternoon.  Mike Kendall for Joe

25   Rowan.

1          MS. WILKINSON:  Good afternoon.  Beth Wilkinson for

2     Dr. Kapoor.

3          MR. STOLJILKOVIC:  Good afternoon.  Kosta Stojilkovic,

4     also for Dr. Kapoor.

5          THE COURT:  And do we have some folks on the phone?

6          MR. SOLLERS:  Yes, your Honor.  Good afternoon.  Wick

7     Sollers and Mark Jensen, King & Spaulding, for Mike Babich.

8          MR. O'TOOLE:  Good afternoon, your Honor.  Patrick

9     O'Toole from Weil for Rich Simon.

10          THE COURT:  Good afternoon, everyone.

11          So we're here to hear argument on the defendant's

12     renewed Motion for Bill of Particulars.  Just first before we

13     get to that, Mr. Lazarus, I had asked for an excludable delay

14     motion, which I got the second time, but I actually asked for

15     it up until the time of trial, which I think was agreed upon at

16     the last hearing.  So I think I only got one until today.

17          MR. LAZARUS:  That's correct, your Honor.  So with the

18     Court's permission, I'll file one today through -- up to and

19     including the time of trial.

20          THE COURT:  Great.  Thank you.

21          Alright.  So I'll hear from the defendants first.

22          MR. STOLJILKOVIC:  Thank you, your Honor.  Let's start

23     with some overall points before addressing some of the specific

24     categories.

25          First of all, I think it's clear, in light of the meet

1    and confer correspondence and the pleadings, that we are

2    essentially in the same situation we were in under the First

3    Superseding Indictment, because the Government's position is

4    that even though the Second Superseding Indictment is narrower

5    and shorter, that they reserve the right to present allegations

6    under the First Superseding Indictment.  They reserve the right

7    to present uncharged crimes or dropped counts at trial in this

8    case.

9         So we are still facing the situation which we faced

10   then, which is we have a very broad amount of discovery.  Of

11   course we have been reviewing that discovery diligently, but

12   large discovery does not substitute for particulars.  In this

13   case, I think it's actually quite the opposite.  We have

14   thousands of patient records and we don't know whether we're

15   going to -- the Government expects to get into those or which

16   of those at trial.  We have 90 identified co-conspirators.  The

17   Government's pleadings talk about the 13 co-conspirator

18   practitioners they've identified, but there's also 77 other

19   individuals.  So our concern is unfair surprise at trial.

20        The other two big picture points I would make, one, we

21   do recognize that the Government has a conspiracy count here.

22   It's a one-count conspiracy, and so the Government doesn't have

23   to prove the completion of substantive offenses.  We're not

24   arguing otherwise, but the problem is the Government's position

25   is not that therefore they won't go into specific examples,

1    therefore they won't.  If it's that simple, they can just tell

2    us they're not going to get into specific patients and the

3    specific prescriptions, and, you know, that's all the -- from

4    most of these requests, I think that would resolve it.  But the

5    concern we have is all of a sudden at trial we're going to find

6    out that they're focused on this particular prescription, that

7    particular patient, this particular speaker offend.  There's so

8    much material there, your Honor, and especially with these

9    prescriptions.  They require analysis, they require medical

10   analysis, and it's just not something we can do on the fly.

11        We also need it for motions practice.  Our Motions in

12   Limine are due in early December, and if the Government is

13   going to go into some of these substantive areas, even though

14   it's a conspiracy case, we need to know so that we can assess

15   those motions.

16        In one area of the case, the Government did provide

17   particulars last time around, which were the 154 or so calls,

18   and that is -- we appreciate that and we think that we're

19   looking for that level of detail, sometimes even less than

20   that, but on other parts of the case, because those calls only

21   go to one of three or four kind of core allegations and we

22   don't have that kind of visibility on the rest of the case.

23        So those are my framing points.  If the Court wants, I

24   can address each of the categories briefly or I can do them in

25   groups.  Whatever would be helpful to the Court.

1          THE COURT:  I had a couple of questions.  My

2     understanding is that the Indictment lists about eight

3     practitioners that were targeted by the defendants, as well as

4     examples of specific instances where the defendants paid

5     speaker honoraria or paid practitioners employee salaries as

6     bribes or kickbacks.

7          Has the Government provided the names of the folks

8     that were listed in the Indictment?

9          MR. STOLJILKOVIC:  Yes, your Honor, and I think

10    several responses to that.

11         So they have identified the eight to us by name in

12    their 28-day letter.  In addition, they've identified five more

13    who are not noted by number in the Indictment, but they've said

14    they also alleged to be co-conspirator practitioners.  So we

15    know this universe of 13.

16         They have not identified which speaker events, which

17    speaker events they allege to be bribes or shams, and those 13

18    individuals had a lot of events.  I do want to know, I mean,

19    13, this is out of, you know, 2,000 or so doctors who prescribe

20    in this area.  So it's a small number, but those people had a

21    lot of speaker events.  The Second Superseding Indictment does

22    acknowledge some speaker events were legitimate, but it alleges

23    others were shams.  But we don't actually have any

24    identification of it's this particular event or that particular

25    event.  So that's one of the categories that we are seeking.

1          THE COURT:  And the First Superseding Indictment names

2     ten practitioners while the Second Superseding Indictment names

3     eight, and my understanding is that the Government had

4     previously provided the defendants with a spreadsheet of all

5     payments made to the practitioners mentioned in the First

6     Superseding Indictment; is that correct?

7          MR. STOLJILKOVIC:  Yes, your Honor.  We do have an

8     overview of all the payments.  The challenge here, and if I --

9     I think this frames the issue of speaker fees and the impasse

10    we have, there's no debate that a pharmaceutical company is

11    allowed to pay doctors to serve as speakers.  The Government,

12    in their own response, says -- acknowledges that -- I'm on

13    Page 7 -- some of the programs never occurred, or they allege

14    that some of the programs respecting these 13 never occurred,

15    or that some of them were more social events.  They acknowledge

16    that even its own witnesses have difficulty proving the

17    specifics of each program.

18          So, I mean, to the extent the Government is saying

19    they're not going to get into particular events at trial,

20    that's one thing, because that would answer our question and we

21    can figure out a trial strategy.  But to the extent they're

22    going to say oh no, it was 90 percent of the events that these

23    13 guys did that were shams, or 95 percent, or it was these

24    particular events and not others, that's where we don't have

25    anything by which to really assess that at this time.

1          THE COURT:  Thank you.

2          MR. STOLJILKOVIC:  And, your Honor, speakers are --

3    speaker fees are one category that's been enumerated, and that

4    is enumerated in the Indictment as an alleged bribe.  A second

5    category are services of INSYS employees.  That's enumerated in

6    the SSI as well.  And in the Government's response in

7    opposition here, they do note two other categories.  I'm on

8    Page 6 of their response.  One, sham dinners that they allege

9    occurred in this state on a particular date, and fourth, they

10   allege agreements to pay bribes in the form of volume

11   discounts, and they identify some pharmacies.

12          What our first category sought that's before you, your

13   Honor, is just to get clarification that these are all the

14   categories we're talking about.  You know, if there's some

15   fifth category or sixth category, a different kind of

16   arrangement, that's something we should certainly know now.

17          I think, your Honor, the other points, and I think

18   they're actually probably the most important ones with respect

19   to honest services fraud in a lot of ways, are Requests 5, 6

20   and 7, because here we really are flying blind.  The SSI does

21   not allege that anyone was deceived about these payments.

22   That's true also of the FSI.  So we don't know how the

23   Government intends to prove the deception aspect of the

24   conspiracy.

25          The SSI does not disclose the source of the duty that

1    it alleges that these 13 practitioners breached.  Again, for

2    our motions practice, for our trial prep, we need to understand

3    that.  And, you know, maybe most important, your Honor, we

4    don't know whether the Government is going to allege at trial

5    that anyone was tangibly harmed as a result of these financial

6    arrangements, and that, I think your Honor can understand,

7    would be a very explosive allegation to hear for the first time

8    at trial.  I completely agree with the Government that in a

9    conspiracy case, I mean, you know, if they just feel like

10   that's not what they're proving and that's not what their case

11   is about, if they say that, that will put us to rest.  But the

12   uncertainty of that is something that's really hard for us to

13   deal with.  That also is one of our requests on the list of

14   distribution scheme because, again, it goes to the same issue.

15           Your Honor, the other points, just briefly, the other

16   issues with respect to illicit distribution, this has to do

17   with the alleged Controlled Substances Act predicate.  Of

18   course the identity of any patients the Government wants to

19   argue or tangibly harm is key, but the other thing that we need

20   clarity on is, I read the Government's opposition as saying the

21   CSA allegation is essentially coterminous with the honest

22   services fraud allegation, that is that's it about bribes and

23   kickbacks that are alleged.  But there is also another

24   allegation in the Second Superseding Indictment about evasion

25   of certain Drug Enforcement Administration reporting, and it's

1    enumerated only by two example paragraphs.

2            So that's the other request for specificity we have,

3    is the Government alleging that those supposedly evasive steps

4    are some kind of CSA violation and is it limiting itself to the

5    kind of examples provided in Paragraph 72 or 73.

6            Finally, your Honor, we do request information on

7    venue.  The Government points out in its response that venue,

8    it argues anywhere the enterprise does business.  Your Honor,

9    we here have a case where the enterprises alleged is a legal,

10   lawful, going concern.  So our position is that venue can't be

11   based simply on the fact that the Government shows that INSYS

12   did something completely legitimate in the state, and so we are

13   looking for more allegations on that to help understand.  I do

14   know that the Government has referred in its letter and in

15   prior correspondence to some instances, but they seem very

16   tangential, and it's not clear to us how they are in

17   furtherance.  So those are our points.

18           The last one I would just say, on the 154 calls on

19   insurance fraud, again, we appreciate that.  We think that is

20   an appropriate disclosure.  The Government reserves the right

21   to amend it, and, you know, we can leave for another motion the

22   question of whether they can do that, but we need some kind of

23   limitation or understanding.  We have thousands of calls.  So

24   if, you know, tomorrow they amend it by adding 500 calls, we're

25   not going to be ready to assess those at trial.

1           THE COURT:  Thank you.

2           MR. STOLJILKOVIC:  Thank you.

3           THE COURT:  Mr. Lazarus?

4           MR. LAZARUS:  May I respond, your Honor?

5           THE COURT:  Yes.

6           MR. LAZARUS:  Thank you.

7           So, your Honor, first of all, just to address some of

8     the broader concerns that were raised by counsel, as this Court

9     has recognized, the purpose of a Bill of Particulars is not to

10    disclose the whens, wheres and with whoms of the allegations.

11    This is a case here where the defendant is seeking in their

12    renewed motion evidentiary details and legal theories to which

13    they're not entitled, and we've turned over in this case

14    voluminous discovery.  It's searchable.  We've turned over

15    Grand Jury transcripts that the defense has had for over a

16    year.  We've turned over the Grand Jury exhibits that go along

17    with those transcripts.  We've turned over memorandums of

18    interviews, 302s, reports with witnesses.  This is not a case,

19    such as some of those cited in the papers, where discovery,

20    Jencks material, information like that, has not been provided.

21    Here, we've gone through rounds of discovery requests that

22    we've been very responsive to.

23          So counsel is correct, that voluminous discovery in

24    and of itself can't cure where there is a need for a Bill of

25    Particulars, but here where the discovery is searchable and

1   where we've essentially opened up our Grand Jury transcripts,

2   we've opened up interview reports, we've provided our expert

3   disclosure.  So we've provided the type of details necessary

4   for the defense to conduct their own investigation, which is

5   really what they're saying that they can't do.

6          And so for the Government to be compelled at this

7   point to respond to the specific interrogatories that they've

8   put forth just isn't consistent with the caselaw given where we

9   are in the case.

10          Then on top of that, your Honor, Judge Burroughs has

11   already set a schedule for disclosure of exhibit lists and

12   witness lists, which is well in advance of trial, and we

13   intend, of course, to comply with those.

14          So there's Motions in Limine that are coming up.

15   There are other disclosures that we'll make in the form of the

16   exhibit list and witness list that will provide further detail

17   as to how we intend to prove the case.  But counsel is saying

18   that they need to come up with their trial strategy, that's

19   something that counsel just stated, so they need to know more

20   from us to do that.  That's not the purpose of a Bill of

21   Particulars.

22          So this is really just a discovery tactic that's

23   designed to hem us in and lock us in to lists and charts, which

24   is not the purpose of a Bill of Particulars.  We have charged a

25   conspiracy here.  It's a Glasser conspiracy, which is totally

1    appropriate, your Honor.  It is not individual racketeering

2    acts.

3           So the nature of the charges are different and overt

4    acts are not required.  We have provided specificity in the

5    Indictment, so there is enough information.  The defendants

6    know what they're charged with, they know what the central

7    allegations are, and they can prepare their defense without

8    surprise.  Certainly, double jeopardy is not an issue.

9           There are certain arguments that are being made,

10   essentially, that we won't be able to prove our case, which we

11   of course dispute.  But also, again, that's not the purpose of

12   a Motion for Bill of Particulars.  So, for example, where they

13   talk about, you know, that there are sham dinners and maybe

14   they're not sham dinners, that's not enough, that we're going

15   to have to prove much more, that's not really a question for a

16   Bill of Particulars, for us to identify and say uhn-uhn, we

17   should get summary judgment, essentially, now.  So that's not

18   where we are, your Honor, and that wouldn't be appropriate, of

19   course.

20          This idea that we haven't provided any information

21   about those dinners and about the speaking engagements, just so

22   the Court is aware, it's not just a vacuum and a mystery.

23   We've turned over these Grand Jury transcripts and interview

24   reports of sales reps who were responsible for putting on these

25   speaking engagements, and they talk about -- where we say in

1     our papers that it's difficult for them to identify certain

2     events, that's because there were so many events that were

3     happening that it's difficult for a sales rep to remember sure,

4     on a Tuesday in Omaha, this happened.  That's just a made up

5     hypothetical, your Honor.  But it's challenging for the sales

6     reps to identify that in that level of detail at times, but the

7     sales reps, their transcripts where they testified in the Grand

8     Jury had been turned over a year ago, and their interview

9     reports have been turned over.

10            So it's not as though it's a situation where we have

11    not provided any information, like in Davydov where there was

12    an allegation in a RICO case that the enterprise was going to

13    extort one business, but then, in fact, the Government proved

14    at trial two totally separate businesses for the first time.

15    That's not what's happening here, so a Bill of Particulars is

16    unnecessary.

17            Just in terms of some of the specifics, your Honor, we

18    addressed them in the papers.  I'm happy to address any that

19    the Court has questions about.  I would just note on this

20    concept of Area Business Liaisons, ABLs and BRMs, where there's

21    been a claim that there's OIG guidance that says that it's okay

22    to provide certain services, and, therefore, they need more

23    specificity to know what we're talking about that would violate

24    that, we allege in the Second Superseding Indictment, for

25    example, in Paragraphs 29 and 55, that targeted practitioners

1    were provided these types of services, and that takes it

2    outside of the OIG guidance, as an example, your Honor.

3            So that's just another place where they're looking to

4    lock us in prematurely and to conduct discovery, which is

5    inappropriate at this point.

6            THE COURT:  And you've identified who the targeted

7    practitioners are?

8            MR. LAZARUS:  So in the Second Superseding Indictment,

9    we did allege the practitioners you were speaking of earlier,

10   your Honor, and in the First Superseding Indictment we allege

11   additional practitioners.

12           THE COURT:  More.

13           So the first one had more and the second one had less?

14           MR. LAZARUS:  Correct.  That's correct, your Honor.

15           THE COURT:  But it wasn't clear to me, is it a subset

16   or is it different folks?

17           MR. LAZARUS:  They're the same.  Some who are in the

18   first are not in the second.

19           THE COURT:  Got it.  Alright.

20           Yes?

21           MR. STOLJILKOVIC:  Your Honor, if I may, a couple

22   things in response.

23           So I'm not sure I follow the last thing that counsel

24   said.  I understand that we've -- you know, looking at the

25   numbering in the Indictments, we've gone from ten to eight.

1    Looking at the 28-day letters, there was also longer lists

2    before under the FSI.  Now we're down to 13 in total.  We

3    understand that the Government is limiting itself to those 13.

4    Those are the only practitioners who it identifies as

5    co-conspirators.  So if that's not the case, that is certainly

6    nothing that we have been told, and I think it's another reason

7    for specificity.

8            But I also want to respond to the point that we're

9    seeking a witness list or discovery.  We're not.  I want to use

10   the example of Haitians again.  I can think of three general

11   ways this case could be tried.  Number one, the Government

12   attempts to prove a conspiracy involving the defendants and

13   involving the 13 practitioners, and to show that prescriptions

14   generally went up, or something to that effect.  If they're

15   going to stop there, I think the request for additional patient

16   specificity is essentially mooted.

17           A second scenario is they might try to prove that and

18   also show at trial that this particular patient shouldn't have

19   received the drugs.  Your Honor, even if they're down, as we

20   understand them to be, to 13 practitioners, they have hundreds

21   of patients.  We have a lot of patient files for them.  So if

22   that happens at trial, your Honor, that's something that we

23   need to prepare for.

24           Three, they could go even further and say not only are

25   they going to offer testimony about whether a particular

1    prescription was, in their view, inappropriate, but they want

2    to show what happened.  They want to show that somebody had

3    something bad happen to them, and that is, you know,

4    potentially very explosive evidence that we need to brief under

5    Rule 403, and we would want to do it in a Motion in Limine due

6    December 5th before the witness lists are due.  We're not

7    asking for them to give us their witness list.  They could

8    attempt to prove these things through different witnesses.  It

9    wouldn't necessarily have to be the patient.  But what I want

10   to point out to your Honor is we haven't received any kind of

11   expert disclosure that said oh, you know, the Government has

12   provided expert disclosures, but they don't indicate they're

13   going to, you know, testify about these kinds of granular

14   analyses about SUBSYS.  We don't have a witness list, and it is

15   something that we ought to be able to brief in our Motions in

16   Limine.

17        So we're not looking to unfairly peek ahead.  They're

18   just very different cases and we need to know which one we're

19   facing.

20        THE COURT:  Thank you.

21        Anything further, Mr. Lazarus?

22        MR. LAZARUS:  Just very briefly, your Honor.

23        THE COURT:  Yes.

24        MR. LAZARUS:  In every case where there's Motions in

25   Limine that are filed, there's a meet and confer.  So if

1  counsel has questions about different areas that they think

2  might be subject to motions, we can have discussions about

3  that.  But to be ordered to, in detail, give them a roadmap and

4  lists at this time just isn't necessary for them to be able to

5  make whatever motions they think are appropriate.

6          And of course whatever motions they think they should

7  make, they should be allowed to make, and we would like an

8  opportunity to respond to those.

9          THE COURT:  Thank you.  I will take it under

10  advisement.

11          I also do have the defendants' Status Report regarding

12  agency discovery, so I assume the Government would like to

13  respond.

14          MR. LAZARUS:  Yes, your Honor, we would.

15          THE COURT:  Can you do that by this Friday?

16          I know that's sooner than under the normal

17  circumstances, but I know you all are under some deadlines

18  right now.

19          MR. LAZARUS:  Your Honor, yes, with the only caveat

20  being that I've been unable to connect with agency counsel at

21  the FDA most recently.  So long as she's available, that's not

22  a problem.  If I find out otherwise, I'll let counsel know and

23  alert the Court immediately and seek some sort of relief.  But

24  Friday, otherwise, is fine.

25          THE COURT:  Alright.  And then I'll determine whether

1   I need oral argument on it once I get the Government's

2   response.

3          We do not have another conference scheduled before me.

4   Is there a need to schedule one?

5          MS. WILKINSON:  Yes, your Honor.  We have one other

6   issue we'd like to bring up.  We suggest that we have one on

7   the calendar because there are so many issues that are ongoing.

8   We didn't get to share this with the Government, so I don't

9   know -- or with anyone else, we were thinking somewhere around

10  December 6th.  You know, that would give us time.  The motions

11  are due on December 5th, so we think everyone will be busy

12  doing those, and, as Mr. Lazarus said, hopefully meeting and

13  conferring to minimize those motions.  But we thought after

14  that might be -- shortly after that might be a good time to

15  have a hearing.  If we don't need it, of course we'll file a

16  request to cancel the hearing.

17         THE COURT:  And you're making that representation on

18  behalf of all the defendants, counsel, or?

19         MS. WILKINSON:  I'm not sure about the exact date.  I

20  think so.

21         MR. VIEN:  We're checking the date now, your Honor.

22         THE COURT:  Alright.  And Mr. Leger --

23         MR. STOLJILKOVIC:  I would just ask wherever possible,

24  if we could do that on a Friday, your Honor, just with our

25  travel schedules.  We'll make whatever is good for the Court

1    work, but -- so the 7th, your Honor.

2              THE COURT:  There's a mediation?

3              THE CLERK:  The Court is available at 3:30 on December

4    7th.

5              MR. KETTLEWELL:  Your Honor, I may be traveling that

6    week.  If the Court would allow me to participate by phone and

7    I could have another person from my office physically here,

8    that would be fine.

9              THE COURT:  Yes, that would be fine.

10             So, otherwise, does December 7th in the afternoon work

11   for folks?

12             MS. WILKINSON:  Your Honor, we have our firm's holiday

13   party that we have scheduled as partners, and I know we're out

14   of town.  It's at 6:30.  That would just be difficult for us,

15   which is why we asked for the Thursday.

16             THE COURT:  Sixth.

17             How's the Monday?

18             Oh, you asked for Fridays, is that right, Mr. Lazarus?

19             MR. STOLJILKOVIC:  Your Honor, we can make the 6th

20   work, your Honor.  That's fine.

21             THE COURT:  Okay.  What's Monday look like?

22             THE CLERK:  On Monday the 10th, the Court is available

23   at 12 noon.

24             MS. WILKINSON:  Thank you, your Honor, if that's -- if

25   that works for everyone else, that would be great for us.

1        MR. KETTLEWELL:  I will be traveling that day as well.

2        THE COURT:  So you're welcome to appear by phone.

3        MR. KETTLEWELL:  Thank you.

4        THE COURT:  Is that convenient for the Government or

5   not?

6        Well, how about I suggest this.  Why don't you all

7   work on a date with Mr. York and we'll try and accommodate as

8   many concerns as we can.

9        MR. LAZARUS:  Thank you, your Honor.  We appreciate

10   that.

11        THE COURT:  Alright.  Thank you very much.

12        MS. WILKINSON:  Your Honor, we have one other matter.

13        THE COURT:  Yes.

14        MS. WILKINSON:  If I could hand this up.

15        (Pause.)

16        MS. WILKINSON:  Your Honor, we just received this

17   subpoena Friday afternoon from the Government and it's a HIPAA

18   subpoena for documents supposedly in the possession of

19   Dr. Kapoor.  This is something that we had discussed with

20   Mr. Yeager back in January and he dropped it, and then about, I

21   guess when we were in front of you the last time, a little over

22   two weeks ago in the hallway, Mr. Yeager said to me we're going

23   to subpoena those documents from you, and I just said okay,

24   send me the subpoena.

25        They did not send it, even though the subpoena is

1    dated the 26th of October.  We didn't receive it until Friday,

2    November 2nd at around 3:30.  We contacted Mr. Lazarus to ask

3    if we could have ten days, because otherwise it's due on

4    Friday, November 9th, and he said if you're going to produce

5    the documents, you can have more time, but if it's because

6    you're going to oppose it, you cannot.

7         As you might imagine, we're concerned about a HIPAA

8    subpoena being used after the close of the investigation, and

9    we need to do some research and we need to talk to our client,

10   and it's just going to be very difficult for us to get it done

11   by this Friday, and we would ask if we could have additional

12   time.

13        MR. LAZARUS:  Your Honor, if I may very briefly,

14   that's not exactly -- that was the takeaway from what I said,

15   but there was context to it, of course.

16        So what I said was this is no surprise to anybody.  I

17   was actually surprised they asked for more time.  It's my

18   understanding the documents are not voluminous.  I asked them

19   to correct me if I'm wrong.  The use of a HIPAA subpoena is

20   permitted by statute and there's no bar that I'm aware of to

21   that being a pretrial, like a Grand Jury subpoena.  It's a

22   HIPAA subpoena that's authorized by statute for investigations

23   of certain types of offenses.

24        We're not aware that there's a bar to that, so it is a

25   lawful subpoena that's been issued for documents that are

1   material evidence, that counsel has known the Government has

2   viewed as material evidence of these crimes for a very long

3   time.  So the fact that we didn't send the subpoena for it

4   sooner is not a defense to the fact that they're sitting on

5   material information, records, that are responsive to

6   previously issued subpoenas and now to this subpoena.

7        So the idea that they need time to decide what their

8   position is, which is how it was put in their request for an

9   extension, they've already conveyed what their position is.  I

10  asked Ms. Wilkinson after the last hearing if she would just

11  give the records to us and she said no.  So they know that they

12  don't want to turn the records over.  For us to wait for that

13  to happen is just an unnecessary delay.

14       What I said was I'm not looking to create a hardship

15  production.  If they do want to produce the documents, if I'm

16  wrong and they are voluminous, then of course I would agree to

17  an extension.  But to agree to an extension just to give them

18  time to say what they've already repeatedly told us just didn't

19  seem necessary, and given all the other deadlines in this case,

20  it seemed like an unnecessary waste of everybody's time.

21            THE COURT:  So how long are you asking for?

22            MS. WILKINSON:  Just ten days, your Honor.

23            THE COURT:  So that would be -- since there seems to

24  be an issue of when that had started to run, ten days from

25  when?

1    MR. LAZARUS:  They asked for a ten-day extension, I

2 believe.  They can correct me if I'm wrong.

3    MS. WILKINSON:  Right, ten days from this Friday.

4    MR. LAZARUS:  So they were asking for 17 days.

5    MS. WILKINSON:  Ten days in addition to this Friday.

6    THE COURT:  So the 17th?

7    I'm sorry, I heard a number of dates.

8    MR. LAZARUS:  They --

9    MS. WILKINSON:  That's the 19th, that that's -- let me

10 see.

11    THE CLERK:  The 19th, your Honor.

12    THE COURT:  The 19th?

13    MS. WILKINSON:  The 17th is the -- yeah, so the

14 Monday.

15    MR. LAZARUS:  They asked for the 19th, your Honor.

16    THE COURT:  Alright.  So they have until the 19th.

17    MR. LAZARUS:  Okay.  Thank you.

18    THE COURT:  Thank you very much.

19

20    (The hearing was concluded.)

21

22

23

24

25

<u>C E R T I F I C A T I O N</u>

      I, Karen M. Aveyard, Approved Federal Court Transcriber, do hereby certify that the foregoing transcript, consisting of 25 pages, is a correct transcript prepared to the best of my skill, knowledge and ability from the official digital sound recording of the proceedings in the above-entitled matter.

<u>/s/ Karen M. Aveyard</u>

Karen M. Aveyard

<u>November 9, 2018</u>

Date