# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

v.

MICHAEL L. BABICH et al.,

Defendants.

Criminal No.:  16-CR-10343-ADB

**REDACTED VERSION**

### DEFENDANTS' MOTIONS *IN LIMINE* NOS. 1-6 AND MEMORANDUM OF LAW IN SUPPORT OF MOTIONS *IN LIMINE* NOS. 1-6 TO EXCLUDE EVIDENCE OR ARGUMENT THAT GOES BEYOND THE SCOPE OF THE CONSPIRACY CHARGED IN THE SECOND SUPERSEDING INDICTMENT

In the Second Superseding Indictment ("SSI"), the government chose to charge Defendants with a single count of conspiracy to violate RICO.  As a result of this charging decision, the government need not prove that the conspiracy "succeeded or was achieved."  First Circuit Pattern Crim. Jury Instructions, 4.18.371(1).  But the government *must* prove, and must prove beyond a reasonable doubt, that Defendants *intended and agreed* to join the conspiracy and *intended and agreed* that someone would commit the underlying crimes.  *See id.*  The inquiry is focused on Defendants' state of mind.  *Zaccagnini v. Morris*, 478 F. Supp. 1199, 1203 (D. Mass. 1979) (stating that, in a conspiracy case, "defendants' states of mind are of central importance").

Defendants are concerned that, rather than focus on what Defendants knew and intended, the government will instead point to downstream events—such as purported patient harm, or the convictions or state board sanctions of doctors who will not testify at trial—and urge the jury to find Defendants guilty based on the suggestion that they should have known better, that they associated with the wrong people, or that they caused the bad conduct of others through negligence.

1

Defendants are likewise concerned that the government will introduce allegations about purported co-conspirators, crimes, and other conduct beyond the particular conspiracy charged in the SSI.

Criminal law does not work that way. The government should not be allowed to present anything to the jury that does not go to Defendants' alleged intent and agreement to join the particular conspiracy charged in the SSI. Specifically, Defendants request that the Court exclude: (1) evidence of patient harm; (2) evidence of pleas, convictions, settlements, or medical board actions of non-testifying witnesses; (3) evidence or argument about alleged co-conspirators beyond the 90 identified in connection with the SSI (including evidence or argument that any practitioner was bribed other than the 13 unindicted co-conspirator practitioners identified in connection with the SSI); (4) evidence of crimes that do not implicate the RICO predicates alleged in the SSI; (5) evidence of any criminal conduct and other bad acts absent a proffer of evidence that any Defendant knew about or agreed to them; and (6) evidence or argument about criminal conduct or other bad acts that post-date the alleged conspiracy period.

## I.     MOTION *IN LIMINE* NO. 1 TO EXCLUDE EVIDENCE OF PATIENT HARM

It is the government's burden to prove that Defendants intended and agreed to join the alleged conspiracy in this case, and intended and agreed that someone would commit the underlying crimes. *See* First Circuit Pattern Crim. Jury Instructions, 4.18.371(1). Evidence of patient harm—whether it be shown through medical records, patient testimony, or adverse event reports ("AERs") filed with the Food and Drug Administration ("FDA")—is not proof of criminal intent.

*First*, any purported patient harm is not proof of Defendants' intentions when marketing and distributing Subsys. *Second*, the government has explicitly disclaimed a need to prove that patients were harmed in this case. *Third*, the government has not proffered any expert testimony

connecting Subsys to any harm experienced by patients, much less showing that the harm was the result of *inappropriate* Subsys prescriptions. *Fourth*, and finally, patients taking Subsys suffer from serious health conditions and, by virtue of the requirement that they be "opioid-tolerant," are on multiple medications. This makes it virtually impossible to determine a causal connection between any resulting harm and Subsys.

Evidence of patient harm is irrelevant, and admitting it carries a clear risk of unfair prejudice to Defendants. *See* Fed. Rs. Evid. 401, 403. And AERs, which are one particular species of patient-harm evidence, also contain inadmissible hearsay. *See* Fed. R. Evid. 802. The Court should therefore exclude all evidence of patient harm, including medical records, patient testimony, and AERs.

In order to convict Defendants of conspiring to violate the honest services fraud statute and Controlled Substances Act, the government will need to prove that Defendants *intended* that doctors would prescribe Subsys to patients who did not need it. *See* Mem. in Support of Mot. to Dismiss First Superseding Indictment ("First MTD") (Dkt. No. 319) at 21–31; Mem. in Support of Mot. to Dismiss Second Superseding Indictment ("Second MTD") (Dkt. No. 514) at 11–16. That is the closest the government need veer toward introducing prescription-related evidence in this case. And making that showing in no way requires (or permits) the government to introduce evidence of what happened to patients *after* they received their prescriptions for Subsys. Evidence of patient harm is therefore irrelevant to any of the issues in this case and should be excluded under Rule 401.

To the extent that this evidence were considered relevant in some tangential way, the potential for significant and unfair prejudice to Defendants substantially outweighs any conceivable probative value. As explained above, the jury will have no need to consider or decide

whether any patients were harmed after taking Subsys. *See United States v. Herman*, 589 F.2d 1191, 1198 (3d Cir. 1978) (holding that, when balancing under Rule 403, courts must consider the extent to which the proposition is "directly at issue"). Evidence about patient harm is very likely to inflame jurors' passions or, at a minimum, confuse the jury about what is and what is not at issue in this case. And it would wrongly suggest to jurors that Subsys—and not one of the dozens of other, alternative possibilities—caused the alleged harm.

The only prescription-related fact that the jury must decide here—whether Defendants *intended* that doctors would prescribe Subsys to patients without a legitimate medical purpose—requires a nuanced determination. If the jury hears that some patients were harmed *after* taking Subsys, they might well infer, based on negative emotion or even simple confusion, that Subsys caused that result and that Defendants intended it—even if there is no evidence of either, and even if there is no evidence that the medication was dispensed without a legitimate medical purpose. Rule 403 was enacted to prevent exactly those kinds of improper inferences. The Court should therefore exclude evidence of patient harm under Rule 403 as well. *See United States v. Mermelstein*, 487 F. Supp. 2d 242, 257 (E.D.N.Y. 2007) ("The allegation that defendant's misconduct caused one or more of the patients under his care to suffer serious bodily injury is a more serious charge than one of fraud and, if not properly lodged, might improperly influence the jury's consideration of the fraud charges.").

Aside from the reasons to exclude evidence of patient harm generally (detailed above), there are additional reasons to exclude patient-harm evidence in the form of AERs. The FDA guidelines require drug manufacturers to submit reports to the FDA regarding "[a]ny adverse event associated with the use of a drug in humans, *whether or not considered drug related*." 21 C.F.R. §§ 310.305(b), 314.80(a) (emphasis added). If a drug manufacturer receives a report of an adverse

event from a healthcare professional or consumer, it is required to submit that report to the FDA.[1]

However, many of the reports that the FDA receives are "voluntary" reports from healthcare professionals and consumers.[2] AERs "tend to be brief recitals of events which do not consider potential alternate causes or attempt to investigate or to explain methods of causation . . . [and] fail to address the individual's prior medical history, risk factors, use of other medications or drugs, family medical history, and other individual factors necessary to assess a cause-and-effect relationship between the use of the drug and the reported adverse effect." *Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 462 (W.D. Pa. 2003).

The SSI charges Defendants with one count of RICO conspiracy, based on alleged fraud. SSI ¶¶ 23–73. Even if patient harm were at issue—which it is not—the fact that an unknown person with an unknown medical condition reportedly experienced an adverse event at some point while also taking Subsys is not reliable evidence that Subsys caused patient harm—much less that Defendants' alleged conduct caused harm. AERs are wholly irrelevant and should be excluded.

The FDA itself has repeatedly disclaimed the usefulness of AERs and publicly acknowledged their "limitations," including the fact that "there is no certainty that the reported event (adverse event or medication error) was due to the product," the "reports do not always contain enough detail to properly evaluate an event," the FDA "does not receive reports for every adverse event or medication error that occurs with a product," and there are "also duplicate reports where the same report was submitted by a consumer and by the sponsor."[3] It is thus unsurprising that courts have repeatedly recognized the inherent unreliability of AERs. *See, e.g.*, *Smith v. Pfizer,*

---

[1] *See* Questions and Answers on FDA's Adverse Event Reporting System (FAERS), *available at* https://www.fda.gov/drugs/guidancecomplianceregulatoryinformation/surveillance/adversedrugeffects/default.Htm (last visited Dec. 3, 2018).

[2] *See id.*

[3] *See id.*

*Inc.*, No. 3:05-CV-0444, 2010 WL 1754443, at *5 (M.D. Tenn. Apr. 30, 2010) (noting that AERs "have 'inherent biases as they are second-or-third hand reports, are affected by medical or mass media attention and are subject to other distortions'") (quoting *DeLuca v. Merrell Dow Pharm., Inc.*, 791 F. Supp. 1042, 1050 (D.N.J. 1992)); *In re Carter-Wallace, Inc., Sec. Litig.*, 220 F.3d 36, 41 (2d Cir. 2000) ("[T]he receipt of an adverse report does not in and of itself show a causal relationship between [the drug] and the illness mentioned in the report.").

Evidence of AERs also is unfairly prejudicial and improper where patient harm is not at issue. *See United States ex rel. El-Amin v. Geo. Wash. Univ.*, 533 F. Supp. 2d 12, 34 (D.D.C. 2008) (holding that evidence of patient harm in case about billing would "undoubtedly implicate Federal Rule of Evidence 403"); *see also In re Prograf Antitrust Litig.*, No. 1:11-MD-2242, 2014 WL 7641156, at *1 (D. Mass. Dec. 23, 2014) (holding that evidence concerning patient injuries was unfairly prejudicial and risked distracting focus in case in which patients were not parties); *Mermelstein*, 487 F. Supp. 2d at 257 (holding that, in a case "essentially" about fraud, allegations concerning injury to patients raised concerns of undue prejudice).

Presented with evidence of AERs, the jury would likely be confused about the significance of that evidence and could easily be left with the impression that AERs demonstrate that Subsys was unacceptably dangerous and contributed to patient harm. *See Goldstein v. Centocor, Inc.*, 310 F. App'x 331, 332 n.1 (11th Cir. 2009) (affirming exclusion of AERs because "the prejudicial effect of these reports outweighs their probative value"). Admission of AERs would also waste time because Defendants would have to present evidence rebutting their significance. *See, e.g., In re Norplant Contraceptive Prods. Liab. Litig.*, No. MDL 1038, 1997 WL 80527, at *1 (E.D. Tex. Feb. 19, 1997) (holding that introduction of AERs would waste time because defendants would have to "rebut the significance of the reports").

Finally, AERs should also be excluded because they contain inadmissible hearsay. AERs contain out-of-court statements whose reliability is impossible to establish. They can be created by anyone, including "family members, lawyers and others" who have secondhand knowledge of the information included in the report.[4] The only possible purpose for admitting these documents would be to establish the "truth" of what they suggest—that patients who used Subsys were somehow harmed by the medication. Numerous courts have excluded AERs on this basis. *See, e.g.*, *Klein v. TAP Pharm. Prods., Inc.*, 518 F. App'x 583, 584 (9th Cir. 2013) (holding that AERs are "hearsay reports of uncertain reliability, lacking information relevant to causation"); *Wolfe v. McNeil-PPC, Inc.*, No. 7-CV-348, 2012 WL 38694, at *2 (E.D. Pa. Jan. 9, 2012) (holding that AERs offered for their truth are hearsay); *Goldstein*, 2007 WL 7428597, at *3 (excluding AERs as inadmissible hearsay because they include "uncontrolled anecdotal information" and "are not reliable sources on which to base opinions as to general or specific causation") (internal citation and quotation omitted). For the foregoing reasons, the Court should grant Defendants' motion to exclude any evidence or argument regarding patient harm.

## II. MOTION *IN LIMINE* NO. 2 TO EXCLUDE ANY EVIDENCE OR ARGUMENT REGARDING ANY PLEAS, CONVICTIONS, SETTLEMENTS, OR MEDICAL BOARD ACTIONS OF NON-TESTIFYING WITNESSES

The Court should preclude the government from presenting evidence or argument about settlements, pleas, convictions, or medical board actions involving non-testifying witnesses.[5] Such evidence is irrelevant to the charges the government has brought in this case—the fact that other individuals were convicted, pled, settled, or lost their medical licenses does not prove that

---

[4] *See id.*

[5] In this motion, Defendants do not challenge evidence of settlements, pleas, convictions, or medical board actions of *testifying* witnesses. Defendants reserve the right to raise any relevant objection to the admission of such evidence at trial.

Defendants conspired with them. And convictions, pleas, settlements, and state board resolutions that follow the end of the alleged conspiracy period cannot possibly serve as evidence of notice to Defendants during the conspiracy period. *See* Fed. R. Evid. 402. Such evidence—pleas and settlements of non-testifying parties—would also almost certainly constitute inadmissible hearsay. Even if such evidence were otherwise admissible, it should be excluded under Rule 403 because the principal purpose and likely effect of such evidence is to suggest that Defendants are guilty by association. *See United States v. Parada-Talamantes*, 32 F.3d 168, 170 (5th Cir. 1994) ("Because evidence of 'guilt by association' is typically highly prejudicial, it should be excluded.").

By way of example, on August 8, 2018, Insys agreed to pay $150 million to settle a Department of Justice ("DOJ") investigation into the company's sales practices.[6] ███████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[6] Nishant Molan, *Insys to Pay $150 Million to Settle Justice Department Investigation*, Wall Street Journal (Aug. 8, 2018), *available at* https://www.wsj.com/articles/insys-to-pay-150-million-to-settle-justice-department-investigation-1533733598.

███████████████████████████████████████████████████████████

████████████████████

Some of these cases involve conduct similar to the conduct that the government has charged in the instant case, but others involve allegations of wrongdoing that are completely unrelated to the present charges. Regardless, evidence of these pleas or convictions is not relevant to proving Defendants' intent or agreement to enter into a conspiracy. And that evidence certainly cannot be relevant to "notice" or Defendants' state of mind, because all the pleas, convictions, settlements, and license revocations occurred after the alleged conspiracy period in this case. *See* Fed R. Evid. 402; *see also infra*, Defs.' Mot. in Lim. No. 6.[7]

In any case, evidence of claims, pleas, and settlements involving these third parties should be excluded as inadmissible hearsay. *See United States v. Harrell*, 436 F.2d 606, 614 (5th Cir. 1970) ("With respect to [the defendant's] guilt or innocence, Norris' plea of guilty was no more and no less than an inadmissible hearsay statement[.]"); *see also Hancock v. Dodson*, 958 F.2d 1367, 1371 (6th Cir. 1992) (holding that a non-party's guilty plea is inadmissible hearsay); *United States v. Hawley*, 562 F. Supp. 2d 1017, 1053–54 (N.D. Iowa 2008) (same); *see also Wolfe*, 2012 WL 38694, at *8 (granting motion to preclude evidence of "lawsuits, claims or settlements regarding non-parties"). If these individuals are not called to testify against Defendants, there is

---

[7] ███████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
███████ *See, e.g.*, *United States v. Hunter*, No. 3:06-CR-204-J-33MCR, 2007 WL 470444, at *3 (M.D. Fla. Feb. 13, 2007) (excluding evidence after the conspiracy period as irrelevant and inadmissible under Rule 403).

no basis for the government to introduce the fact of any prior plea, conviction, settlement, or medical board action.

This evidence should also be excluded under Rule 403 because it invites the jury to convict on a theory of guilt-by-association. "[R]ecognizing the attendant danger of jury confusion and unfair prejudice," courts in this Circuit frequently exclude "judicial findings, convictions, and similar evidence on Rule 403 grounds." *Faigin v. Kelly*, 184 F.3d 67, 80 (1st Cir. 1999). The risk of prejudice and confusion is obvious and substantial. For example, while the instant case requires the government to prove its charges beyond a reasonable doubt, medical board actions often require much less. *See, e.g.*, *Tsirelman v. Daines*, 794 F.3d 310, 312 (2d Cir. 2015) (holding that "the Constitution does not require a higher standard of proof" than preponderance of the evidence in "fraud-based medical disciplinary proceedings"). Jurors are "likely to confuse the different standards of proof" which would further prejudice Defendants. *United States v. Awadallah*, 436 F.3d 125, 133 (2d Cir. 2006). And the "danger of prejudice is heightened" where the evidence "goes to an ultimate issue in the case," such as the legitimacy of medical practitioners' prescriptions. *Id.*

Permitting such evidence also would waste time. Defendants would be forced to take irrelevant detours from the matters at hand in order to refute this evidence and explain its irrelevance. █████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████ The Court should not be put in the position of having to preside over such irrelevant mini-trials, particularly where the trial is already scheduled to last three months.

### III. MOTION *IN LIMINE* NO. 3 TO EXCLUDE ANY EVIDENCE OR ARGUMENT THAT ANY PRACTITIONER OTHER THAN THE THIRTEEN ALLEGED CO-CONSPIRATORS WAS BRIBED

Following Defendants' first motion to dismiss, the government stated that it would "streamline" and "narrow[]" the case. Dkt. No. 371 at 1. The SSI dropped three of the four counts, cut almost 70% of the prior indictment's factual allegations, and focused on alleged agreements between Insys and eight numbered practitioners. After issuing the SSI, the government also submitted a letter under Local Rule 116.1(c)(1)(E), identifying unindicted co-conspirators in the case. *See* Ltr. from N. Yeager to Defense Counsel (Sept. 25, 2018) (Ex. 1). This letter identified the eight numbered practitioners by name, and identified an additional five alleged co-conspirator practitioners, as well as over 70 former Insys employees whom the government apparently views as co-conspirators. Following this disclosure, the government sent Defendants a letter responding to their request for particulars, which identified six more alleged co-conspirators, none of whom were healthcare practitioners. *See* Ltr. from N. Yeager to Defense Counsel (Oct. 18, 2018) (Ex. 2). As the count now stands, the government has identified 90 alleged unindicted co-conspirators related to the SSI, 13 of whom are healthcare practitioners.

Defendants are entitled to rely on these disclosures and, indeed, have done so in preparing for trial. However, when asked about the thirteen identified co-conspirator practitioners at a hearing before Magistrate Judge Boal, the government hedged its bets and started referring to

additional practitioners who were identified as co-conspirators in connection with the First Superseding Indictment ("FSI"), but expressly excluded from the SSI co-conspirator disclosures. *See* 11/5/2018 Hr'g Tr. (Dkt. No. 521) 16:6–18. The government has also attempted to reserve the right to present charges and allegations from the FSI that do not appear in the SSI. Ex. 2 at 2–3.

The government should not be permitted to present evidence or argument about additional alleged co-conspirators at trial. Federal Rule of Criminal Procedure 16 is intended to "minimize[e] surprise that often results from unexpected testimony." *United States v. Francis*, No. 08-CR-00494, 2009 WL 1444930, at *2 (C.D. Cal. May 20, 2009). Local Rule 116.1 "implements Rule 16," *United States v. Jones*, 620 F. Supp. 2d 163, 178 (D. Mass. 2009), and, in fact, has been recognized to even "go[] one step further than the Supreme Court [in *Giglio*] with respect to the disclosure of exculpatory material." *United States v. Guzman*, 160 F.R.D. 6, 7 (D. Mass. 1995). Subsection (c)(1)(E) of that rule, which requires "the name of any person asserted to be a known unindicted co-conspirator" is in keeping with the general purpose of providing notice to criminal defendants and allowing them to prepare for trial. *See* L.R. 116.1(c)(1)(E).

Moreover, Local Rule 116.1 does not require the government to provide the names of "some" or a "subset" of the known unindicted co-conspirators; rather, it requires notice of "*any person* asserted to be a known unindicted co-conspirator." L.R. 116.1(c)(1)(E). And, as this Court has previously stated, the Rule 116.1 disclosure is "always over inclusive." *United States v. Facteau*, No. 1:15-CR-10076, Dkt. No. 351 at 109 (D. Mass 2016). Fairness requires that the government be held to its disclosures, so that Defendants can adequately prepare for trial. This is particularly important with respect to the 13 alleged practitioner co-conspirators, because preparation for any testimony regarding them involves review of thousands of pages of patient

records by attorneys and medical specialists. Accordingly, Defendants respectfully ask the Court

to issue an order excluding any evidence or argument that any practitioner other than the 13 alleged

co-conspirator practitioners was bribed. Defendants also respectfully ask the Court to issue an

order that confines the government to the 90 co-conspirators that the government has disclosed in

connection with the SSI, and precludes them from unfairly surprising Defendants with additional

alleged co-conspirators at trial.

## IV. MOTION *IN LIMINE* NO. 4 TO EXCLUDE EVIDENCE OF ANY CRIMES OTHER THAN RICO PREDICATE OFFENSES ALLEGED IN THE SSI

The sole count in the SSI is conspiracy to violate the RICO statute. The government will

thus have to prove at trial that Defendants willfully agreed to join in the conspiracy, and

specifically intended that someone would commit crimes that qualify as RICO predicates. *See*

*United States v. Ramirez-Rivera*, 800 F.3d 1, 18 (1st Cir. 2015) (quoting *United States v. Shifman*,

124 F.3d 31, 35 (1st Cir. 1997)). Not every crime is a violation of the RICO statute. But the

government's view appears to be that evidence of *any* crime is fair game at trial—including but

not limited to the crimes previously charged in the prior indictments but dropped from the SSI.[8]

For example, contrary to the government's apparent belief, violations of the AKS cannot establish

a violation of the RICO statute. *See* 18 U.S.C. § 1961(1) (excluding AKS offenses from the

definition of "racketeering activity"). *See* First MTD at 29–30; Reply in Support of First MTD

(Dkt. No. 345) at 13; Second MTD *passim*; Reply in Support of Second MTD (Dkt. No. 540)

*passim*. The same is true for any alleged violations of the Health Insurance Portability and

Accountability Act, the HIPAA statute. *See* 42 U.S.C. § 1320d *et seq.*

---

[8] As the Court is aware, the government's Rule 404(b) notice indicates that it will introduce evidence of uncharged crimes and bad acts beyond those identified in the SSI, including evidence imputing Defendants' character.

The government should be precluded from introducing evidence or arguments concerning any purported crimes other than crimes that are alleged in the SSI *and* qualify as RICO predicates. Such evidence is irrelevant to the government's burden to prove the RICO conspiracy charged in the SSI, and would unfairly prejudice Defendants and confuse the jury about what it must decide. Fed. Rs. Evid. 402, 403.

## V. MOTION *IN LIMINE* NO. 5 TO EXCLUDE EVIDENCE OF CRIMINAL CONDUCT AND OTHER BAD ACTS ABSENT A PROFFER OF EVIDENCE THAT ANY DEFENDANT KNEW ABOUT OR AGREED TO THEM

Before the government introduces any evidence of criminal conduct or other bad acts, it should be required to proffer evidence showing that one or more of the Defendants knew about or agreed to the criminal conduct or other acts. This is especially important in this case, where the government must prove that Defendants intended and agreed to join the conspiracy, and intended and agreed that someone would commit the underlying crimes. The inquiry in a conspiracy case is focused on Defendants' state of mind. *See Zaccagnini*, 478 F. Supp. at 1203 (holding that, in a conspiracy case, "defendants' states of mind are of central importance"); First Circuit Pattern Crim. Jury Instructions, 4.18.371(1).

If evidence of criminal conduct or other bad acts lacks a link to any of the Defendants and is not properly contained, the jury will be misled into convicting Defendants based on guilt by association, failure to stop the crime, negligence, or *respondeat superior*—none of which are relevant to the charges the government has brought in this case or sufficient to meet the government's burden. Accordingly, any evidence of criminal conduct or other bad acts, without a link showing that at least one of the Defendants knew about or agreed to the conduct, is irrelevant and highly prejudicial. Fed. R. Evid. 402, 403.

Defendants expect that the government will seek to put before the jury irrelevant and highly prejudicial evidence relating to conduct of Insys employees or medical practitioners—but which lacks a link to Defendants. ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████

Evidence that third parties associated with Defendants engaged in unlawful or other unseemly conduct is entirely irrelevant absent some evidence suggesting that a Defendant was aware of or directed that conduct. *See United States v. Josleyn*, 206 F.3d 144, 156 (1st Cir. 2000) (deeming evidence of an inducement accepted by a third party after defendant left company irrelevant to the issue of intent absent "suggestion that either [defendant] knew of this alleged

act"); First Circuit Pattern Crim. Jury Instructions, 4.18.371(1) ("Proof that [defendant] willfully joined in the agreement must be based upon evidence of his/her own words and/or actions."). Without a demonstrated foundation in admissible evidence connecting a Defendant to the conduct, such information would serve only to unfairly prejudice Defendants by encouraging the jury to find guilt by association. *United States v. St. Michael's Credit Union*, 880 F.2d 579, 602–04 (1st Cir. 1989) (remanding for a new trial where district court erroneously admitted evidence of the illegal activities of others "without connecting them to the defendants," noting the "prejudicial danger . . . that the jury may have convicted [the defendant] on a theory of guilt by association").

As Judge Woodlock recognized in *United States v. Reichel*, there has to be "proof of the conspiracy itself" and a "witness has to be connected in some fashion to the conspiracy charged in this case, not that he was doing something that was consistent with or parallel[]." No. 15-CR-10324, Dkt. No. 194 at 33–34 (D. Mass. May 16, 2016). The government cannot just show that there are "individual people out there in the field who do things. It has to have some connection with [the conspiracy charged]." *Id.* at 35. And because the risk of prejudice to Defendants is substantial and irreparable, a contemporaneous objection will not suffice. To ensure that the jury is not misled, confused, or caused to improperly attribute the conduct of third parties to Defendants, the government must be required to first demonstrate a link between that conduct and the Defendants, as a condition of its admissibility. In *Reichel*, Judge Woodlock required the government to proffer how a specific witness's testimony was "link[ed]" to the defendant and the conspiracy in that case "before [the witness] gets on the stand." *Id.* at 35–36. The same should be ordered here. And, to the extent that the government can only link certain testimony to some of the Defendants in this case, and not others, a limiting instruction should be provided to the jury that they may consider the testimony only as to those Defendants.

The need to ensure that the government does not present evidence of criminal conduct or other bad acts absent a link to one of the Defendants is even more crucial in this case than it was in *Reichel*. *Reichel* involved one defendant, and the trial lasted three weeks. In contrast, this trial is scheduled to last three months, and involves six defendants. And *Reichel* involved two osteoporosis drugs, neither of which has the sensationalized and prejudicial connotation of a class of drugs like opioids. The consequence of admitting prejudicial evidence that is never tied to any particular Defendant and the opportunity for jurors to be confused as to which evidence pertains to each Defendant is much worse in this case than it was in *Reichel*. The only way to effectively prevent the danger of unfair prejudice is to require a proffer from the government before a witness takes the stand, to exclude any evidence that cannot be linked to Defendants, and to provide appropriate limiting instructions in real time.

## VI. MOTION *IN LIMINE* NO. 6 TO EXCLUDE ANY EVIDENCE OR ARGUMENT OF CRIMINAL CONDUCT OR OTHER BAD ACTS THAT POST-DATE THE ALLEGED CONSPIRACY PERIOD

The government has alleged that the conspiracy period in this case occurred between May 2012 and December 2015. SSI ¶ 23. Evidence that post-dates the end of the conspiracy as alleged in the SSI has no bearing on whether Defendants intended and agreed to join the alleged conspiracy, and intended and agreed that someone would commit the underlying crimes. And, any criminal conduct or bad acts that followed the alleged conspiracy would not be evidence of notice to Defendants during the conspiracy period. Accordingly, any evidence of or argument about criminal conduct or other bad acts that post-date the alleged conspiracy period is irrelevant and likely to unfairly prejudice Defendants, as well as mislead and confuse the jury. Fed. R. Evid. 402, 403; *see Hunter*, 2007 WL 470444, at *3 (excluding evidence that fell outside of the conspiracy period because it was irrelevant and subject to Rule 403).

Defendants' meet-and-confer with the government on this issue underscores the need for a ruling from the Court. The government suggested that it may well introduce evidence that post-dates the conspiracy as alleged in the SSI, and asserted that the dates identified in the SSI are only approximations. But this is not a mere approximation issue; it is an issue of notice about the crime charged. Defendants are preparing to defend against an accusation that they conspired during the time period alleged in the indictment, not at some other time. The government should not be permitted to ambush Defendants at trial with a new theory of when the alleged conspiracy ended, or with a constructive amendment of the indictment that extends the period of the alleged conspiracy.

The government has further suggested that it may attempt to tell the jury about the records at issue in a post-indictment HIPAA subpoena to Dr. Kapoor—which is the subject of a pending motion for protective order in this very case—for the purpose of suggesting to the jury that Dr. Kapoor has engaged in a coverup or obstruction of justice. That outrageous suggestion further underscores the need for a clear order from the court precluding the government from introducing any evidence that falls outside the charged conspiracy period. The government has no business presenting to the jury issues that an accused defendant is briefing in discovery motions before this Court and attempting to cast those motions as criminal conduct or evidence indicating consciousness of guilt. Much as it may inconvenience the government, a criminal defendant exercising his rights in seeking court protection from eve-of-trial subpoenas is not obstruction of justice; it *is* our system of justice.

In all events, the government should identify now, in its opposition brief, the specific post-conspiracy evidence it thinks is relevant, so that the Court can issue appropriate rulings with respect to such evidence (if any) that the government intends to present. This would ensure that Defendants and the Court are not unfairly surprised by the government's presentation at trial, and

that the government is properly constrained to trying the indictment returned by the grand jury and not some other conduct.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the Court should grant Defendants' Motions *in Limine* Nos. 1-6.

Dated:  December 5, 2018

Respectfully submitted,

/s/ Joseph Sedwick Sollers, III
Joseph Sedwick Sollers, III
(admitted *pro hac vice*)
wsollers@kslaw.com
Mark Jensen (admitted *pro hac vice*)
mjensen@kslaw.com
King & Spalding LLP
1700 Pennsylvania Avenue NW
Washington, D.C. 20006
Telephone: (202) 737-0500

William H. Kettlewell (BBO# 270320)
wkettlewell@collorallp.com
Hogan Lovells
Boston, MA 02110
Telephone: (617) 371-1005

*Attorneys for Michael Babich*

Steven A. Tyrrell (admitted *pro hac vice*)
steven.tyrrell@weil.com
Patrick J. O'Toole, Jr. (BBO# 559267)
Patrick.otoole@weil.com
Weil, Gotshal & Manges LLP
2001 M Street, NW
Washington, D.C. 20036
Telephone: (202) 682-7213

*Attorneys for Richard Simon*

/s/ Michael Kendall
Michael Kendall (BBO# 544866)
michael.kendall@whitecase.com
Alexandra Gliga (BBO# 694959)
alexandra.gliga@whitecase.com
White & Case, LLP
75 State Street
Boston, MA 02109
Telephone: (617) 939-9310

*Attorneys for Joseph Rowan*

/s/ Beth A. Wilkinson
Beth A. Wilkinson (admitted *pro hac vice*)
bwilkinson@wilkinsonwalsh.com
Alexandra M. Walsh (admitted *pro hac vice*)
awalsh@wilkinsonwalsh.com
Kosta Stojilkovic
kstojilkovic@wilkinsonwalsh.com
Wilkinson Walsh + Eskovitz LLP
2001 M Street NW
Washington, D.C. 20036
Telephone: (202) 847-4000

Brien T. O'Connor (BBO# 546767)
brien.o'connor@ropesgray.com
Aaron M. Katz (BBO# 662457)
aaron.katz@ropesgray.com
Ropes & Gray LLP
Prudential Tower 800 Boylston Street
Boston, MA 02199
Telephone: (617) 951-7000

*Attorneys for Dr. John Kapoor*

/s/ Tracy A. Miner
Tracy A. Miner (BBO# 547137)
tminer@demeollp.com
Megan Siddall (BBO# 568979)
msiddall@demeollp.com
Demeo LLP
200 State Street
Boston, MA 02109
Telephone: (617) 263-2600

*Attorneys for Michael Gurry*

/s/ Peter Horstmann
Peter C. Horstmann (BBO# 556377)
pete@horstmannlaw.com
Law Offices Peter Charles Horstmann
450 Lexington Street, Suite 101
Newton, MA 02466
Telephone: (617) 723-1980

*Attorney for Sunrise Lee*

## **LOCAL RULE 7.1 CERTIFICATION**

Pursuant to Local Rule 7.1(a)(2), I hereby certify that counsel for Dr. Kapoor have in good faith conferred with counsel for the government to resolve or narrow the issues presented by this motion, and that the disputed issues remain unresolved.

/s/ Beth A. Wilkinson
Beth A. Wilkinson
Counsel for Dr. John Kapoor


## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document will be served on all counsel of record through the ECF system.

/s/ Beth A. Wilkinson
Beth A. Wilkinson
Counsel for Dr. John Kapoor