UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>MICHAEL L. BABICH et al.,<br><br>Defendants. | Criminal No. 16-CR-10343-ADB<br><br>**REDACTED VERSION** |

**DEFENDANTS' OPPOSITION TO THE GOVERNMENT'S
MOTION TO EXCLUDE OR, ALTERNATIVELY, TO LIMIT
TESTIMONY AND EVIDENCE FROM DEFENSE EXPERTS**

In its motion to exclude Defendants' experts, the government is trying to have it both ways—applying one set of rules to Defendants and another to itself.  *First*, the government complains that Defendants' expert disclosures are insufficient, even though the government identified its own experts in brief, boilerplate disclosures.  *Second*, the government objects to potential testimony by some of Defendants' experts regarding the regulatory regime that governs the distribution of controlled substances as improper legal opinion, even though the government disclosed regulatory experts using nearly identical language.  *Finally*, the government attacks expert testimony that is intended to help the jury understand certain common practices in the pharmaceutical industry, even though the government intends to argue at trial that Insys deviated from common industry practices.

In each case, the government's arguments fail.  Defendants' expert disclosures satisfy Rule 16.  Indeed, given that Defendants' experts will be largely reactive to the government's case, it is simply not possible for Defendants to provide the government with the level of detail it demands.  Moreover, the government has failed to articulate what portions of the disclosures it believes to be insufficient, and it has never previously complained about them in the more than two months since

it received them.  And, to the extent the Court has any concerns about any aspect of Defendants' disclosures, the proper remedy would be supplementation and not exclusion.  The government's substantive objections are equally meritless.  The government has put the regulatory regime at issue, and Defendants must be permitted to respond.  If the government intends to persist in its strategy of villainizing Defendants for allegedly straying from industry norms, Defendants must be allowed to present contrary, admissible evidence. The government's motion should be denied in full.

## FACTS

The government has disclosed its intent to present testimony from nine expert witnesses, one "financial summary witness," and two "other medical" witnesses.  *See* Ltr. from N. Yeager to Defense Counsel (Aug. 1, 2018) (initial expert disclosure), Dkt. No. 584-2; Ltr. From N. Yeager to Defense Counsel (Sept. 28, 2018) (Ex. 1) (adding Dr. Stephen Thomas after disqualification of Dr. Christopher Gilligan); Ltr. from N. Yeager to Defense Counsel (Nov. 11, 2018) (Ex. 2) (adding Joseph Rannazzisi).  Defendants, in turn, disclosed that they may present testimony from nine expert witnesses, both on affirmative topics and to rebut expected testimony from the government's experts.  *See* Ltr. from B. Wilkinson to N. Yeager (Oct. 1, 2018) (initial expert disclosure), Dkt. No. 584-1; Ltr. from B. Wilkinson to N. Yeager (Nov. 12, 2018) (Ex. 3) (rebuttal expert disclosure).

Defendants' proposed experts include:

1. Dr. Lisa Stearns, Dr. Wilfred Hynes, and Dr. William Rosenberg, who may testify regarding "the practice of pain-management medicine," Dkt. No. 584-1 at 2–4, and may also rebut the testimony of the government's medical witnesses if the government's experts are permitted to testify, *id.* at 1; Ex. 3 at 1;

2. Jodi Avergun and Larry Cote, who were disclosed to address "DEA registration and oversight of controlled substances," "the responsibilities of controlled-substance registrants," and "direct shipment of Schedule II controlled substances between a manufacturer and a retail pharmacy," among other topics, Dkt. No. 584-1 at 4–5, and may rebut the testimony of the government's own experts on regulatory issues, Todd Prough and Joseph Rannazzisi,[1] *id.* at 1; Ex. 3 at 2;

3. Heather Bates and John MacDonald, who will testify in response to the government's allegations using various data analyses, explain Insys's compliance program, and present "summary testimony" concerning "Insys's financial situation and Dr. Kapoor's financial relationship with the company," Dkt. No. 584-1 at 5–8, and may rebut the testimony of the government's data analysis experts and its "financial summary witness," Ex. 3 at 2;

4. Todd Edgar, who will address "insurance reimbursement," including "the role of prior authorization," "processes for determining coverage of specialty drugs," "and the role of drug formularies and other payer guidelines," among other things, Dkt. No. 584-1 at 6–7; and

5. Professor Jesse Fried, who will describe Insys's corporate structure, explain the roles of various company leaders, and present "summary testimony" concerning "Insys's financial situation and Dr. Kapoor's financial relationship with the company," Dkt. No. 584-1 at 7, and may rebut the testimony of the government's "financial summary witness," Ex. 3 at 2.

---

[1] As explained in Defendants' motion to exclude Mr. Rannazzisi's testimony, Dkt. No. 580, Mr. Rannazzissi should be excluded from the case, and the Court should reject the government's belated attempt to rebrand him as a pure fact witness for its case in chief.

For more than two months after Defendants disclosed their experts, the government appeared satisfied: It never asked Defendants to clarify or expand upon those descriptions. Then, on December 5, 2018, just over seven weeks before trial, the government filed a motion to exclude or limit the testimony of each of Defendants' experts.

## LEGAL STANDARD

Federal Rule of Criminal Procedure 16 requires that a party seeking to present an expert's testimony describe "the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." Fed. R. Crim. P. 16(a)(1)(G). Rule 16 is "designed to give opposing counsel notice that expert testimony will be presented, permitting 'more complete pretrial preparation' by the opposing side, such as lining up an opposing expert, preparing for cross-examination, or challenging admissibility on *Daubert* or other grounds." *United States v. Nacchio*, 519 F.3d 1140, 1151 (10th Cir. 2008) (quoting Fed. R. Crim. P. 16, 1993 Advisory Comm. Notes), *vacated in part on other grounds on reh'g en banc,* 555 F.3d 1234 (10th Cir. 2009). Rule 16 disclosures in criminal cases need not be as extensive as the disclosures required of an expert witness in a civil case. "Unlike under the civil rules, an expert in a criminal case is not required to present and disclose an expert report in advance of testimony," or "the data or other information considered in forming the opinion," or "all summary or supporting exhibits." *Nacchio*, 519 F.3d at 1152. Rather, expert disclosures in criminal cases require "minimal notice." *United States v. Jiminez*, 525 F. App'x 565, 567 (9th Cir. 2013).

## ARGUMENT

**I.     Defendants' Expert Disclosures Comply With Rule 16**

    **A.     Defendants Adequately Described Their Experts' Proposed Opinions**

The government begins its brief with the argument that, even though Defendants' expert disclosures enumerate the "topics" about which the expert may testify, "most"—but not all—"of

4

the topics . . . completely omit any description of the witness's opinion" and, therefore, fail to comply with Rule 16. Gov't Mot. to Exclude ("Gov't Mot.") (Dkt. No. 584), at 2. The government fails to cite a single case explaining why Rule 16 requires more than Defendants have provided. Nor does it identify which particular disclosures it believes are problematic. That is reason enough to deny this aspect of the government's motion.

But the government's argument also falls short on the merits. To begin with, Defendants' responsibility under Rule 16 is merely to notify the government about the "nature of [the disclosed experts'] opinions." *United States v. Galloway*, 2018 WL 2303106, at *4 (D.N.M. May 21, 2018). And despite the government's argument to the contrary, expert disclosures indicating the "topics" of potential testimony are sufficient to satisfy Rule 16 if they fairly capture underlying opinions. For example, the Seventh Circuit found sufficient a disclosure explaining that an expert might "testify at trial concerning the use of beepers, firearms, walkie-talkies, and Western Union wire transfers in connection with the sale of narcotics" because that "statement notified the defendants that the witnesses were of the opinion that certain paraphernalia and profile evidence were frequently linked to the sale of narcotics." *United States v. Jackson*, 51 F.3d 646, 650–51 (7th Cir. 1995). Indeed, courts have specifically rejected challenges premised on the argument that an expert disclosure "only provide[s] a list of subjects . . . rather than describing the opinions or the reasons for those opinions." *United States v. Shafi*, 2018 WL 3159769, at *4 (N.D. Cal. June 28, 2018). For example, courts have found sufficient the disclosure that an expert would "testify about background on the al-Nusrah Front and ISIS, prominent figures and violence committed by these organizations, . . . and vocabulary used by individuals seeking to join." *Id.* at *2. Courts have also blessed the disclosure of an expert who would address topics including "how cellular

telephones and cellular networks operate." *See United States v. Martinez*, 2015 WL 428314, at *1 (N.D. Cal. Jan. 30, 2015).

Defendants' disclosures satisfy the requirements of Rule 16 and are sufficiently detailed to put the government on notice as to what opinions the defense experts plan to offer at trial. In fact, the Defendants' disclosures are at least as detailed as the government's. For example, Defendants' DEA experts, Ms. Avergun and Mr. Cote, have been disclosed to testify regarding their views on "the responsibilities of controlled-substance registrants," the reasonableness of a pharmaceutical company's "rely[ing] on the diligence that [its] wholesalers, logistics providers, and distributors perform on pharmacies and other downstream registrants," and the complex DEA registration and oversight regime. *See* Dkt. No. 584-1 at 4. The government's similar disclosure for its "C.S.A. Expert," Agent Todd Prough, discloses that he will testify about "the duties and responsibilities of D.E.A. registrants when handling controlled substances," "the mechanics of D.E.A. registration and the reporting of suspicious activity," "the use of mail order pharmacies to sell controlled substances, direct shipping and the use of third party logistic carriers to transport controlled substances." Dkt. No. 584-2 at 2. The government cannot attack Defendants' disclosures under Rule 16 when their disclosures are no more thorough.[2]

Moreover, it would be unreasonable to expect Defendants' disclosures to be more detailed than the government's. After all, Defendants' disclosures are by necessity responsive: Defendants do not have the burden of proof, so they plan to present expert testimony only in response to the

---

[2] In its motion, the government notes that, in some circumstances, it incorporated various other materials authored by its experts. Those supplemental materials, however, do not change the analysis, because they are largely irrelevant to this case. *See* Defendants' motions to exclude or limit the testimony of Dr. Marshall, Dr. Fleischman, Mr. Rannazzisi, and the government's medical experts. *See* Dkt. Nos. 578, 579, 580, 583. Once the irrelevant supporting materials are removed from consideration, the government's disclosures are revealed to be even less detailed than Defendants' disclosures.

government's case. *See, e.g.*, Dkt. No. 584-1 at 6 ("Ms. Bates may present [opinions] *responding to the government's allegations*") (emphasis added); Ex. 3 at 1 ("As Defendants noted in their initial expert disclosure letter of October 1, 2018, each of Defendants' affirmative experts may also testify in rebuttal to the government's experts on subjects that are within their expertise."). As a result, it would be impossible for Defendants to describe every opinion they expect to present through their experts at this time.

In addition, much of Defendants' experts' testimony will be factual testimony that will help the jury to understand the evidence; accordingly, no "opinion" disclosure is necessary. In keeping with their disclosures, Defendants will ask their experts to testify to certain facts that will assist the jury in understanding the evidence in this case. For example, Defendants have disclosed that Dr. Rosenberg may "explain[] the mechanisms, expression, and types of pain many patients experience, including the effect of pain on patients and others." Dkt. No. 584-1 at 2. Mr. MacDonald and Ms. Bates may present data describing "Insys's marketing, payor-relations, and direct-marketing practices," *id.* at 5–8, and Professor Fried, Mr. MacDonald, and Ms. Bates may describe "Dr. Kapoor's financial relationship with [Insys]," *id.* In these circumstances, there is no "opinion" to disclose in relation to such testimony, and, as a result, Defendants need make no further disclosures on these subjects. *See, e.g.*, *United States v. Sember*, 2016 WL 1170886, at *1 (S.D. Ohio Mar. 25, 2016) ("[A]n expert need not testify as to opinions, but may assist the trier of fact through testimony regarding facts within his expertise."); *United States v. Verges*, 2014 WL 559573, at *5 (E.D. Va. Feb. 12, 2014) (holding that where an expert would testify to "the methods and means utilized to import and distribute heroin into the United States and elsewhere," it was sufficient that the government had disclosed "general information" about such factual testimony); *United States v. Edwards*, 887 F. Supp. 2d 63, 69 (D.D.C. 2012) (concluding that where experts

would provide "[a]n understanding of what [cell site information] is, how it is gathered and how it is used by law enforcement" and "standard law enforcement techniques," the disclosures setting forth those topics of testimony contained a sufficiently "detailed overview") (alteration in original).

### B. Defendants' Data Analysis Experts Need Not Provide Details Of Their Analyses At This Stage

The government also argues that the disclosures for two of Defendants' experts—Ms. Bates and Mr. McDonald—are not "accompanied by analyses or by a summary that describes the witness's opinions." Gov't Mot. at 2. That argument is misplaced. In criminal cases, experts—including data analysis experts—need not explain the results of their analyses in their Rule 16 disclosures.

Ms. Bates and Mr. McDonald were disclosed to testify, among other things, about their analyses of "sales and prescription data" in response to the government's allegations. Dkt. No. 584-1 at 5, 7–8. This may include "quantitative and statistical analyses" of "the relationship between Insys's provision of speaker payments and physicians' prescribing of Subsys and other TIRF products," *id.* at 6, and "the materiality of certain alleged misstatements or omissions by Insys Reimbursement Center employees to payors' approval decisions," among other subjects, *id.* at 7. Here, too, Defendants have taken largely the same approach as the government. In disclosing Ms. Horan—the FBI agent and forensic accountant whom Ms. Bates and Mr. MacDonald may rebut—for example, the government explained that the witness may present "her analysis of," among other things, "prescription data" and certain financial statements. Dkt. No. 584-2 at 2. The government did not disclose that analysis or explain what her conclusion would be.

Rule 16 requires no more. It does not require "specific details, data, and exhibits on every subject the witness may testify about." *Martinez*, 2015 WL 428314, at *1–2. For example, in

*Martinez*, the government planned to call an expert to tell the jury where the defendants were at the relevant time "based on information contained in call detail records, based on the cellsite location accessed for a particular call, along with any attendant cell sector information." 2015 WL 428314, at *1. The defendants asked the court to exclude the expert on the ground that "the disclosure is insufficient because the expert had not yet . . . determined the relationship between the locations of interest and the cell towers," and they requested "(1) a more detailed technical forensic report; [and] (2) a comprehensive document detailing the method, equipment, and processes the expert used." *Id.* at *2. That is, the defendants complained that the government had not yet presented the expert's underlying analysis, or even his ultimate opinion. *Id.* The court rejected that argument, concluding that those "requests are unreasonable and go beyond what is required by [Rule] 16." *Id.* "The rule," the court concluded, "does not require specific details, data, and exhibits on every subject the witness may testify about." *Id*. Because the government had reported that the expert had "conducted cellsite location analysis for defendants' cell phones during the time of the events in question' and "provided the defense with the underlying data regarding [the expert's] testimony," the disclosure was sufficient. *Id.* at *1–2; *see also Nacchio*, 519 F.3d at 1151–52 (the rule applicable to criminal cases, unlike that in civil cases, does not require "an expert report in advance of testimony" that contains "a complete statement of all opinions the witness will express and the basis and reasons for them") (internal quotation marks omitted).

Defendants' disclosures in this case are similarly sufficient. Defendants disclosed the analyses that Ms. Bates and Mr. MacDonald will perform and, critically, "provided the [government] with the underlying data regarding [their] testimony"—Defendants explained that Ms. Bates and Mr. MacDonald would rely on the publicly available "Medicare Provider Utilization

9

and Payment Data: Part D Prescriber Public Use File" and "Open Payments Data," and the disclosure explained where those data may be found on the Internet. Dkt. No. 584-1 at 6, 8. The government, in short, knows that Defendants' experts may present analyses regarding the causal connection between Insys's speaker payments and prescriptions and the materiality of statements the company made to insurance companies, among other topics, and it is free to use the data Defendants provided to prepare to respond to those analyses.

### C. The Remedy Sought By The Government Is Inappropriate

As explained above, Defendants have satisfied Rule 16's requirements. But in the event that the Court has any reservations about any of Defendants' disclosures, the exclusion remedy sought by the government is plainly inappropriate. Because "few rights are more fundamental than that of an accused to present witnesses in his own defense," "courts should use particular caution in applying the drastic remedy of excluding a witness altogether." *United States v. Lague*, 2018 WL 3429127, at *1 (N.D. Cal. July 16, 2018) (quoting *United States v. Finley*, 301 F.3d 1000, 1018 (9th Cir. 2002)); *see also United States v. Smithers*, 212 F.3d 306, 317 (6th Cir. 2000) (holding that "a criminal defendant's relevant evidence may generally not be excluded on the basis of a discovery sanction" and reversing defendant's conviction where trial court excluded the defendant's expert due to tardy disclosure). In particular, "[e]xclusion is an appropriate remedy for a [defendant's] discovery rule violation" only if "the omission was willful and motivated by a desire to obtain a tactical advantage," *Lague*, 2018 WL 3429127, at *1 (quoting *Finley*, 301 F.3d at 1018) (emphasis omitted), and "substantially prejudice[d] the government in its ability to find its own expert and conduct similar testing," *United States v. Dorsey*, 45 F.3d 809, 816 (4th Cir. 1995).

The government has offered no evidence to prove—indeed, does not even mention the requirement that it prove—that Defendants acted out of an improper strategic motive, or that the

10

government has been "substantially prejudice[d]" by Defendants' conduct. *Id.* Defendants transmitted their disclosures to the government on October 1, the deadline set by the Court, and the government did not so much as suggest that Defendants' disclosures were inadequate until the parties met and conferred regarding the government's December 5 motion, more than two months later. Nor did the government seek to disclose any rebuttal witnesses in response to Defendants' medical or statistical experts, make any substantive *Daubert* argument to exclude those experts, or indicate that Defendants' disclosures prevented it from doing either. Accordingly, while Defendants stand by their disclosures in full, if the Court has any concerns about them the appropriate remedy would be supplementation, not exclusion of the expert witnesses.

II.   **The Government Has Put The Regulatory Regime At Issue, And Defendants Must Be Allowed To Respond**

The government next challenges the disclosures for three defenses experts—the DEA experts, Ms. Avergun and Mr. Cote, and the corporate governance expert, Professor Fried—who, they claim, "will testify about requirements of different aspects of the law." Gov't Mot. at 7. As an initial matter, Professor Fried will do no such thing; he will explain "the roles and responsibilities of members of the boards of directors of public companies," Dkt. No. 584-1 at 7— which the government suggests will touch on legal issues—but that testimony will draw on his extensive experience studying and working with such companies, and it will help the jury understand how the Insys Board of Directors interacted with management, employees, and shareholders. It is not testimony about any legal issue in this case. Instead, it will help the jury understand a subject—Insys's corporate governance—that is critical to understanding Dr. Kapoor's role as Chairman of the Board.

With respect to the DEA experts, meanwhile, the government wants it both ways. The government has alleged that Defendants had the specific intent to circumvent DEA regulations—

11

that they "engaged in conduct to prevent detection of their illegal activities by the DEA and others," which consisted of entering into direct shipping agreements intended "to reduce the possibility of the wholesaler reporting suspicious activity to the DEA," SSI ¶¶ 71, 73.  And the government has disclosed two experts to discuss various DEA regulations:  DEA Special Agent Todd Prough, and Joseph Rannazzisi, the agency's former Deputy Assistant Administrator.  *See* Dkt. No. 584-2 at 2; Ex. 2 at 2.  Yet at the same time, the government objects to similar testimony from Ms. Avergun and Mr. Cote, whom Defendants have disclosed only because the government put the relevant issues in play.

The government's objections are difficult to square with its own approach.  The government says that Mr. Prough will explain "the duties and responsibilities of D.E.A. registrants," Dkt. No. 584-2 at 2, and that Mr. Rannazzisi will testify regarding "the duties and obligations placed upon DEA registrants," Ex. 2 at 2.  And yet the government objects to Ms. Avergun or Mr. Cote testifying regarding "the responsibilities of controlled-substance registrants." Gov't Mot. at 3 (quoting Dkt. No. 584-1 at 4, 5).  ███████████████

███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████

███████████████████████████████ The government clearly intends to address these same issues at trial. Its position appears to be that while *its* witnesses may testify about the applicable regulations to bolster the charges, Defendants cannot employ experts to respond to that testimony, or to the government's other efforts to bring these issues into the case. That cannot be so.

The rules of evidence, moreover, permit instruction on any "relevant matters beyond the understanding of a typical juror" as "an appropriate function of an expert witness." *In re Bard IVC Filters Prods. Liab. Litig.*, 2017 WL 6523833, at *4 (D. Ariz. Dec. 21, 2017). Even "[l]egal opinions by experts may be admitted," courts have explained, "if the subject is the application of a complex regulatory standard to a specific factual background." *Cervenec v. Borden Dairy Co. of Fla., LLC*, 2015 WL 13187075, at *3 (S.D. Fla. Dec. 9, 2015). For this reason, expert witnesses have been allowed to testify regarding the structure and application of FDA regulations, *see In re Flonase Antitrust Litig.*, 884 F. Supp. 2d 184, 198 (E.D. Pa. 2012), corporate governance standards, *see Crown Cork & Seal Co., Inc. Master Ret. Trust v. Credit Suisse First Bos. Corp.*, 2013 WL 978980, at *6–7 (S.D.N.Y. Mar. 12, 2013), and Medicare regulations, *see United States v. Gold*, 743 F.2d 800, 817 (11th Cir. 1984).

### III. Defendants' Experts Must Be Allowed To Explain How The Pharmaceutical Industry Works

Finally, the government suggests that Defendants' proposed expert testimony about "industry practices and customs" should be excluded as irrelevant "unless and until[] there is evidence that a particular Defendant knew about, or relied upon the advice of, a particular expert opinion." Gov't Mot. at 7. In particular, the government challenges four of Defendants' experts—Ms. Avergun, Mr. Cote, Mr. Edgar, and Professor Fried—for having proposed opinions regarding "generic industry custom and practice." *Id.* at 3.

Once again, the government wants to have its cake and eat it too. At every turn, the government has insinuated that Defendants are guilty because they were out of step with the rest of the industry. ███████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████

The implication of this evidence and these assertions is clear: Defendants are guilty, in the government's view, because Insys does not fit the government's uninformed conception of a "normal" pharmaceutical company. The government should not be allowed to present such evidence—to tar Defendants with suggestions of their coworkers' potentially distasteful (but lawful) practices, and to insinuate that the jury should convict Defendants because Insys's marketing approach, its corporate culture, and its business success were outside the norm. But if the Court permits this line of argument from the government, Defendants must be allowed to respond. For example, Defendants must be able to explain, through Professor Fried, that Insys's practice of paying significant bonuses to sales representatives is typical for pharmaceutical companies, especially young ones.[3] More generally, if the government is permitted to argue that

---

[3] The government attempts to shoehorn testimony into the rubric of "generic industry custom and practice" even where that label does not fit. For example, the government asserts that Professor Fried "will testify about industry 'incentives' of board members and other corporate employees."

Insys's allegedly atypical practices can form the basis for criminal liability, Defendants must be allowed to explain to the jury that the practices the government demonizes—Insys's speaker program, the Reimbursement Center, direct shipping, and off-label prescribing, among many others—are neither unusual nor illegal.

In any case, Defendants' industry-practice expert testimony stands on its own: It is admissible "[i]f [the] expert credibly testifies that most people in the industry would have known about" the comparison. *See Ratajczak v. Beazley Sols. Ltd.*, 2015 WL 5444906, at *2 (E.D. Wis. Sept. 15, 2015). This is because, given that evidence, the "jury could draw an inference about [Defendants'] knowledge even though the expert was not a direct witness to their actual mental state." *Id.* Defendants should be given an opportunity to lay this foundation with their experts on the stand. In addition, the government concedes that this testimony will be relevant if Defendants present evidence that they were aware of the relevant industry norms at the time. Gov't Mot. at 7. Defendants may offer such evidence at trial, and it would be premature for the Court to exclude Defendants' experts on this basis now.

The cases on which the government relies are inapposite, as they all involve defendants who argued that they lacked the necessary scienter because they were ignorant of or confused

---

Gov't Mot. at 4. But Defendants did not use the word "industry" in their disclosure; the government appended the word to an unrelated phrase to give the impression that Defendants proposed testimony that they did not. In fact, Professor Fried's testimony regarding the incentives of board members and other corporate employees will not compare Insys's corporate governance to standard industry practice. Instead, Professor Fried will explain the incentives facing *Insys's leaders* and how those incentives might have affected *their own* behavior. But, in any case, this testimony is admissible. *See S.E.C. v. Das*, 2011 WL 4375787, at * 9 (D. Neb. Sept. 20, 2011) (allowing an expert to testify "about the duties of CFOs under Delaware law" and "industry standards, i.e., practices and procedures generally used in corporate governance"); *Crown Cork & Seal Co.*, 2013 WL 978980, at *6–7 (allowing testimony from a professor of "corporate finance, corporations, corporate acquisitions, and law and economics" on "those subjects for which he has knowledge of *relevant industry customs, practices, and standards*") (emphasis added).

15

about the law. *United States v. Patwardhan*, 2009 WL 2190191 (C.D. Cal. July 18, 2009), *aff'd*, 422 F. App'x 614 (9th Cir. 2011), is representative. In *Patwardhan*, the defendant sought to establish his good faith as a defense by pointing to expert testimony describing the confusion "among the general public" about the law and the rules. *Id.* at *1. In those circumstances, the court excluded evidence that "everyone was doing it," because it concluded that that evidence would tend to prove that the defendant was ignorant of the law only if he or she knew about a contrary common practice. And the court declined to admit the expert's testimony because "there was no connection between the proffered testimony regarding general confusion of the public . . . and the Defendant's acts." *Id.* Here, by contrast, Defendants do not plan to argue that they lacked the necessary scienter because they were ignorant of the law, and they do not expect any expert to testify about general "confusion" as to what the law requires. Instead, Defendants seek to present expert testimony about industry practice for the other legitimate reasons described here.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the government's motion to exclude Defendants' experts.

Dated: December 19, 2018

/s/ Steven A. Tyrrell
Steven A. Tyrrell (admitted *pro hac vice*)
steven.tyrrell@weil.com
Patrick J. O'Toole, Jr. (BBO# 559267)
patrick.otoole@weil.com
Weil, Gotshal & Manges LLP
2001 M Street NW
Washington, D.C. 20036
Telephone: (202) 682-7213

*Attorneys for Richard Simon*

/s/ Michael Kendall
Michael Kendall (BBO# 544866)
michael.kendall@whitecase.com
Alexandra Gliga (BBO# 694959)
alexandra.gliga@whitecase.com
White & Case LLP
75 State Street
Boston, MA 02109
Telephone: (617) 939-9310

*Attorneys for Joseph Rowan*

/s/ Tracy A. Miner
Tracy A. Miner (BBO# 547137)
tminer@demeollp.com
Megan Siddall (BBO# 568979)
msiddall@demeollp.com
Demeo LLP
200 State Street
Boston, MA 02109
Telephone: (617) 263-2600

*Attorneys for Michael Gurry*

Respectfully submitted,

/s/ Beth A. Wilkinson
Beth A. Wilkinson (*admitted pro hac vice*)
bwilkinson@wilkinsonwalsh.com
Alexandra M. Walsh (*admitted pro hac vice*)
awalsh@wilkinsonwalsh.com
Kosta S. Stojilkovic (admitted *pro hac vice*)
kstojilkovic@wilkinsonwalsh.com
Wilkinson Walsh + Eskovitz LLP
2001 M Street NW
Washington, D.C. 20036
Telephone: (202) 847-4000

Brien T. O'Connor (BBO# 546767)
brien.o'connor@ropesgray.com
Aaron M. Katz (BBO# 662457)
aaron.katz@ropesgray.com
Ropes & Gray LLP
Prudential Tower 800 Boylston Street
Boston, MA 02199
Telephone: (617) 951-7000

*Attorneys for Dr. John Kapoor*

/s/ Peter C. Horstmann
Peter C. Horstmann (BBO# 556377)
pete@horstmannlaw.com
Law Offices of Peter Charles Horstmann
450 Lexington Street, Suite 101
Newton, MA 02466
Telephone: (617) 723-1980

*Attorney for Sunrise Lee*

17

## **LOCAL RULE 7.1 CERTIFICATION**

Pursuant to Local Rule 7.1(a)(2), I hereby certify that counsel for Dr. Kapoor have in good faith conferred with counsel for the government to resolve or narrow the issues presented by this motion, and that the disputed issues remain unresolved.

/s/ Beth A. Wilkinson
Beth A. Wilkinson
Counsel for Dr. John Kapoor

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document will be served on all counsel of record through the ECF system.

/s/ Beth A. Wilkinson
Beth A. Wilkinson
Counsel for Dr. John Kapoor