# Exhibit 2



2001 M STREET, NW
10th Floor
WASHINGTON, DC 20036

WWW.WILKINSONWALSH.COM

A LIMITED LIABILITY
PARTNERSHIP

October 1, 2018

*Via E-mail & Federal Express*

K. Nathaniel Yeager
Assistant United States Attorneys
District of Massachusetts
John Joseph Moakley United States Courthouse
1 Courthouse Way
Suite 9200
Boston, Massachusetts 02210

Re: *United States v. Michael Babich, et al.*, Criminal No. 16-10343-ADB

Dear Nat:

Pursuant to Fed. R. Crim. P. 16(b)(1)(C), defendant Dr. John Kapoor hereby provides notice of expert testimony he may present at trial under Fed. R. Evid. 702, 703, and 705 in the above-captioned action. Defendants Michael Babich, Michael Gurry, Richard Simon, Sunrise Lee, and Joseph Rowan join this disclosure in full and provide notice that they may join in presenting the testimony disclosed herein at trial. This letter refers to the disclosing defendants collectively as "Defendants."

Some of the testimony described in this letter may not constitute expert testimony, but Defendants disclose it herein out of an abundance of caution.

In addition to the testimony described in this letter, each of the disclosed experts may testify in rebuttal to the government's experts on subject matters that are within their expertise.

This letter and accompanying materials contain personal identifying information and are therefore subject to the Protective Order entered by the Court on March 27, 2017.

**Medical Experts**

1. **Wilfred L. Hynes, MD**

Defendants may present expert testimony from Dr. Wilfred L. Hynes, the Medical Director of and a practicing pain-management specialist at the Pain Management Center at Tufts Medical Center in Boston, MA. Dr. Hynes' curriculum vitae is enclosed.

Dr. Hynes is expected to testify regarding the practice of pain-management medicine, including the following topics: (1) explaining the mechanisms, expression, and types of pain many patients experience, including the effect of pain on patients and others; (2) treatment options for pain, including that prescription drug treatment options such as transmucosal immediate release fentanyl ("TIRF") products are critical treatment options for many pain patients and that certain TIRFs may be preferable to others for a particular patient's needs; (3) on- and off-label drug prescription practices, including that it is often appropriate and even essential for a health care provider, exercising his or her discretion and judgment, to treat pain with prescription drugs for off-label uses and/or at off-label dosages; (4) the regulatory process by which prescription drugs are developed, tested, and approved, including the rigor of such processes; (5) the role of drug warning labels, including the physician's duty to understand and to weigh the benefits and risks of a prescription decision for a patient; (6) issues related to dosing and titration of prescription pain medications, including how dosing and titration decisions can appropriately be patient-specific; (7) the role of the FDA's TIRF-REMS program, including its value in facilitating the education of physicians and patients; and (8) the role of pharmaceutical company-sponsored speaker programs in physicians' continuing education regarding prescription pain management medications.

To the extent necessary for the jury and the Court to understand his opinions and the bases for his opinions, Dr. Hynes may also testify regarding his education, background, prescribing and treatment practices, research, publications, and industry knowledge.

The bases and reasons for Dr. Hynes's opinions are his education (including continuing medical education) and the knowledge, training, skill, and experience that he has developed over decades practicing in the areas of anesthesiology and pain management. Dr. Hynes will also base his opinions on the FDA drug label for Subsys. In addition, Dr. Hynes may base his opinions on materials that have been or will be produced by the government in this case. Finally, Dr. Hynes may base his opinions on materials produced by third parties or publicly available materials, in which case we would provide you with a supplemental disclosure identifying such materials.

2. **William S. Rosenberg, MD**

Defendants may present expert testimony from Dr. William S. Rosenberg, a practicing neurosurgeon who specializes in managing pain at Midwest Neurosurgery Associates and the Center for the Relief of Pain in Kansas City, MO, and the founder of the Cancer Pain Research Consortium. Dr. Rosenberg's curriculum vitae is enclosed.

Dr. Rosenberg is expected to testify regarding the practice of managing pain, including the following topics: (1) explaining the mechanisms, expression, and types of pain many patients experience, including the effect of pain on patients and others; (2) treatment options for pain,

including that prescription drug treatment options such as TIRF products are critical treatment options for many pain patients and that certain TIRFs may be preferable to others for a particular patient's needs; (3) on- and off-label drug prescription practices, including that it is often appropriate and even essential for a health care provider, exercising his or her discretion and judgment, to treat pain with prescription drugs for off-label uses and/or at off-label dosages; (4) the clinical process by which prescription drugs are developed, tested, and approved, including the rigor of such processes; (5) the role of drug warning labels, including the physician's duty to understand and to weigh the benefits and risks of a prescription decision for a patient; (6) issues related to dosing and titration of prescription pain medications, including how dosing and titration decisions can appropriately be patient-specific; (7) the role of the FDA's TIRF-REMS program, including its value in facilitating the education of physicians and patients; (8) patients' struggle to obtain prior authorization for and reimbursement of prescription drug costs, including that it is not uncommon for pharmaceutical companies to help health-care providers with such processes and that they may be helpful in doing so; and (9) the role of pharmaceutical company-sponsored speaker programs in physicians' continuing education regarding prescription pain management medications.

To the extent necessary for the jury and the Court to understand his opinions and the bases for his opinions, Dr. Rosenberg may also testify regarding his education, background, prescribing and treatment practices, research, publications, and industry knowledge.

The bases and reasons for Dr. Rosenberg's opinions are his education (including continuing medical education) and the knowledge, training, skill, and experience that he has developed over decades practicing in the areas of neurosurgery and pain management. Dr. Rosenberg will also base his opinions on the FDA drug label for Subsys. In addition, Dr. Rosenberg may base his opinions on materials that have been or will be produced by the government in this case. Finally, Dr. Rosenberg may base his opinions on materials produced by third parties or publicly available materials, in which case we would provide you with a supplemental disclosure identifying such materials.

### 3. Lisa J. Stearns, MD

Defendants may present a mix of expert and fact testimony from Dr. Lisa J. Stearns, a practicing pain-management specialist and founder and medical director of the Center for Pain and Supportive Care in Phoenix, AZ. Dr. Stearns's curriculum vitae is enclosed.

Dr. Stearns is expected to testify regarding the practice of pain-management medicine, including the following topics: (1) explaining the mechanisms, expression, and types of pain many patients experience, including the effect of pain on patients and others; (2) treatment options for pain, including that prescription drug treatment options such as TIRF products are critical treatment options for many pain patients and that certain TIRFs may be preferable to others for a particular patient's needs; (3) on- and off-label drug prescription practices, including that it is often appropriate and even essential for a health care provider, exercising his or her discretion and judgment, to treat pain with prescription drugs for off-label uses and/or at off-label dosages; (4) the regulatory process by which prescription drugs are developed, tested, and approved, including the rigor of such processes; (5) the role of drug warning labels, including the physician's duty to understand and to weigh the benefits and risks of a prescription decision for a patient; (6) issues

related to dosing and titration of prescription pain medications, including how dosing and titration decisions can appropriately be patient-specific; (7) the role of the FDA's TIRF-REMS program, including its value in facilitating the education of physicians and patients; (8) prior authorization for and reimbursement of prescription drug costs, including that it is not uncommon for pharmaceutical companies to help health-care providers with such processes and that they may be helpful in doing so; and (9) the role of pharmaceutical company-sponsored speaker programs in physicians' continuing education regarding prescription pain management medications.

To the extent necessary for the jury and the Court to understand her opinions and the bases for her opinions, Dr. Stearns may also testify regarding her education, background, prescribing and treatment practices, research, publications, and industry knowledge.

The bases and reasons for Dr. Stearns's opinions are her education (including continuing medical education) and the knowledge, training, skill, and experience that she has developed over decades practicing in the areas of anesthesiology and pain management, including her involvement in the Subsys clinical trials. Dr. Stearns may also base her opinions on materials that have been or will be produced by the government in this case. Finally, Dr. Stearns may base her opinions on materials produced by third parties or publicly available materials, in which case we would provide you with a supplemental disclosure identifying such materials.

In addition to the testimony described above, Dr. Stearns may testify regarding the Subsys clinical trials, including her own involvement in those trials, the patient outcomes of those trials, and her own experience in prescribing Subsys and interactions with Insys.

**DEA Experts**

4.   **Jodi L. Avergun**

Defendants may present expert testimony from Jodi L. Avergun, partner at Cadwalader, Wickersham & Taft LLP and former Chief of Staff for the United States Drug Enforcement Administration ("DEA"). Ms. Avergun's curriculum vitae is enclosed. Ms. Avergun is retained jointly by defendants Kapoor and Babich.

Ms. Avergun is expected to testify on topics related to the DEA, including: (1) DEA registration and oversight of controlled substances in general and opioids in particular; (2) the DEA's tracking, monitoring, and auditing of controlled substances, such as opioids, from manufacturer to retail pharmacy; (3) suspicious order monitoring programs and customer diligence customary in the industry; (4) the responsibilities of controlled-substance registrants; (5) direct shipment of Schedule II controlled substances between a manufacturer and a retail pharmacy, and the use of third-party logistics providers in that process, including custom and practice in the industry; and (6) third party logistics provider shipping arrangements and how such agreements do or do not impact registrants' reporting requirements to the DEA. Ms. Avergun may also opine that it was customary in the industry at and prior to the indictment in this case for pharmaceutical companies to rely upon the diligence that their wholesalers, logistics providers, and distributors perform on pharmacies and other downstream registrants.

To the extent necessary for the jury and the Court to understand her opinions and the bases for her opinions, Ms. Avergun may also testify regarding her education, background, research, publications, and industry knowledge.

The bases and reasons for Ms. Avergun's opinions are the knowledge, training, skill, and experience that she has developed over decades of handling regulatory compliance and enforcement issues involving controlled substances, including her prior service at the DEA. They also include Ms. Avergun's review of the indictment and materials that have been or will be produced by the government in this case. Ms. Avergun may also base her opinions on materials produced by third parties or additional publicly available materials, in which case we would provide you with a supplemental disclosure identifying such materials.

### 5. Larry P. Cote

Defendants may present expert testimony from Larry P. Cote, partner at Quarles & Bradley LLP and former Associate Chief Counsel of the DEA Diversion and Regulatory Litigation Section. Mr. Cote's curriculum vitae is enclosed.

Mr. Cote is expected to testify on topics related to the DEA, including: (1) DEA registration and oversight of controlled substances in general and opioids in particular; (2) the DEA's tracking, monitoring, and auditing of controlled substances, such as opioids, from manufacturer to retail pharmacy; (3) suspicious order monitoring programs and customer diligence customary in the industry; (4) the responsibilities of controlled-substance registrants; and (5) direct shipment of Schedule II controlled substances. Mr. Cote may also opine regarding a pharmaceutical manufacturer's regulatory obligations under the CSA relating to due diligence of pharmacies and physicians.

To the extent necessary for the jury and the Court to understand his opinions and the bases for his opinions, Mr. Cote may also testify regarding his education, background, research, publications, and industry knowledge.

The bases and reasons for Mr. Cote's opinions are the knowledge, training, skill, and experience that he has developed over decades of handling regulatory compliance and enforcement issues involving controlled substances. They also include Mr. Cote's review of the indictment and materials that have been or will be produced by the government in this case. Mr. Cote may also base his opinions on materials produced by third parties or publicly available materials, in which case we would provide you with a supplemental disclosure identifying such materials.

### Other Experts

### 6. Heather Bates

Defendants may present expert testimony from Heather Bates, Managing Director at Berkeley Research Group in Washington, DC. Ms. Bates's curriculum vitae is enclosed.

Ms. Bates may present, summarize, and analyze sales and prescription data responding to the government's allegations about the causal relationship between the Insys speaker program and

Subsys prescription rates by speaker practitioners. Her testimony may include quantitative and statistical analyses of (1) the relationship between Insys's provision of speaker payments and physicians' prescribing of Subsys and other TIRF products, (2) Subsys's share of the TIRF market through the alleged RICO conspiracy period, (3) patterns of TIRF and other opioid prescribing and speaker payments among physicians, and (4) Insys's marketing practices compared to industry custom and normal practice. Ms. Bates may also summarize and analyze data on prescription drug insurance coverage and authorization practices to respond to the government's allegations about the materiality of certain alleged misstatements or omissions by Insys Reimbursement Center employees. In addition, Ms. Bates may summarize and analyze data to respond to the government's allegations that Insys's direct-shipment agreements with specialty pharmacies and other providers circumvented reporting requirements and volume caps, and that Insys employees pressed healthcare providers to write prescriptions for higher doses of Subsys than were medically necessary. Finally, Ms. Bates may present summary testimony concerning bank statements, brokerage statements, revenue, stock prices, and other issues relevant to Insys's financial situation and Dr. Kapoor's financial relationship with the company.

The bases and reasons for Ms. Bates's opinions are the knowledge, training, skill, and experience that she has developed over many years providing analytical and consulting services to pharmaceutical, biotech, and insurance companies. Ms. Bates has reviewed and relied upon the Medicare Provider Utilization and Payment Data: Part D Prescriber Public Use File (publicly available at https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/Medicare-Provider-Charge-Data/Part-D-Prescriber.html) and Open Payments Data (publicly available at https://www.cms.gov/OpenPayments/index.html) in forming her opinions. Ms. Bates's opinions are also based on her review of the indictment and materials that have been or will be produced by the government in this case. Ms. Bates may also base her opinions on materials produced by third parties or additional publicly available materials, in which case we would provide you with a supplemental disclosure identifying such materials.

### 7. Todd Edgar, Pharm.D.

Defendants may present expert testimony from Todd Edgar, Senior Vice President, Payor Access Solutions, at Precision for Value in Baltimore, MD. Dr. Edgar's curriculum vitae is enclosed.

Dr. Edgar may testify on a number of topics related to insurance reimbursement of pharmaceuticals generally and of Subsys particularly, including, but not limited to: (1) the role of prior authorization and coverage policies; (2) processes for determining coverage of specialty drugs; (3) the role of drug formularies and other payer guidelines; (4) custom and practice in the industry regarding pharmaceutical companies' use of internal and/or external reimbursement services hubs; and (5) custom and practice in the industry regarding pharmaceutical companies' use of reimbursement and coverage data to inform the company's payor strategies.

To the extent necessary for the jury and the Court to understand his opinions and the bases for his opinions, Dr. Edgar may also testify regarding his education, background, research, publications, and industry knowledge.

  The bases and reasons for Dr. Edgar's opinions are his extensive knowledge, training, skill, and experience that he has developed over decades in the third-party payer and pharmacy benefit management industries. They also include Dr. Edgar's review of the indictment and materials that have been or will be produced by the government in this case. Dr. Edgar may also base his opinions on materials produced by third parties or publicly available materials, in which case we would provide you with a supplemental disclosure identifying such materials.

### 8. Jesse M. Fried

  Defendants may present expert testimony from Professor Jesse M. Fried, Dane Professor of Law at Harvard Law School. Professor Fried's curriculum vitae is enclosed.

  Professor Fried may testify regarding the roles and responsibilities of members of the boards of directors of public companies, including their reliance upon and interactions with company employees and outside advisors and consultants. Professor Fried may opine that founders, executives, directors, and other employees have different incentives (based on their respective economic and non-economic interests) to generate short-term revenue and profits for a firm, build long-term value, ensure compliance with applicable laws and regulations, and otherwise contribute to the operation and growth of the firm's business. Professor Fried may also present testimony regarding issues related to compliance, including custom and practice relating to how boards of directors typically respond to a government subpoena or government investigation. In addition, Professor Fried may present testimony regarding Insys's executive and staff compensation structures, including whether they are consistent with custom and practice for companies of Insys's size and trajectory. Professor Fried may also present testimony concerning his analysis of bank statements, brokerage statements, revenue, stock price, and other data relevant to Insys's financial situation and Dr. Kapoor's financial relationship with the company. Professor Fried may also offer testimony relating to Dr. Kapoor's holdings of Insys stock over time.

  To the extent necessary for the jury and the Court to understand his opinions and the bases for his opinions, Professor Fried may offer testimony regarding Insys's corporate structure and organization, its business, its industry, and the roles and responsibilities of its officers and directors—including how the foregoing evolved since the time of the company's founding by Dr. Kapoor.

  The bases and reasons for Professor Fried's opinions are the knowledge that he has developed over two decades as a researcher and teacher in areas relating to corporate governance. They also include Professor Fried's review of Insys's annual reports, proxy statements, and other public filings, available at https://www.nasdaq.com/symbol/insy, as well as his review of materials that have been or will be produced by the government in this case. Mr. Fried may also base his opinions on materials produced by third parties or additional publicly available materials, in which case we would provide you with a supplemental disclosure identifying any such materials.

### 9. John MacDonald

  Defendants may present expert testimony from John "Tri" MacDonald, President of Berkeley Research Group in Washington, DC. Mr. MacDonald's curriculum vitae is enclosed.

Mr. MacDonald may present testimony regarding the evolution of the opioid market and compliance best practices in the pharmaceutical industry. He may opine on the elements of an effective compliance program given a company's size, industry sector, market space, and other factors; the reasonable steps a company like Insys might take to identify, manage, and mitigate compliance risks; and the extent to which Insys implemented and maintained an effective compliance program during the relevant time period. Mr. MacDonald may also address the evolution of the opioid market, and the TIRF market in particular, between Insys's founding and the end of the relevant period, and he may testify about industry best practices with respect to marketing, reimbursement-assistance services, and direct-shipping arrangements.

Mr. MacDonald may also present, summarize, and analyze sales and prescription data responding to the government's allegations regarding (1) the causal relationship between Insys's marketing efforts and Subsys prescription rates, (2) the materiality of certain alleged misstatements or omissions by Insys Reimbursement Center employees to payors' approval decisions, (3) the relationship between Insys's direct-shipment agreements with specialty pharmacies and reporting requirements and volume caps, and (4) Insys employees' pressing healthcare providers to write prescriptions for higher doses of Subsys than were medically necessary. His testimony may include qualitative and quantitative analyses of the statistical relationship between speaker payments and prescribing behavior and comparisons of Insys's marketing, payor-relations, and direct-marketing practices to industry custom and normal practice. Finally, Mr. MacDonald may present summary testimony concerning bank statements, brokerage statements, revenue, stock price, and other issues relevant to Insys's financial situation and Dr. Kapoor's financial relationship with the company.

The bases and reasons for Mr. MacDonald's opinions are his extensive knowledge, training, skill, and experience that he has developed over many years providing analytical and consulting services to pharmaceutical, biotech, and insurance companies. Mr. MacDonald has reviewed and relied upon the Medicare Provider Utilization and Payment Data: Part D Prescriber Public Use File (publicly available at https://www.cms.gov/Research-Statistics-Data-and-Systems/Statistics-Trends-and-Reports/Medicare-Provider-Charge-Data/Part-D-Prescriber.html) and Open Payments data (publicly available at https://www.cms.gov/OpenPayments/index.html) in forming his opinions). Mr. MacDonald's opinions are also based on his review of the indictment and materials that have been or will be produced by the government in this case. Mr. MacDonald may also base his opinions on materials produced by third parties or additional publicly available materials, in which case we would provide you with a supplemental disclosure identifying such materials.

Sincerely,

_____
Beth Wilkinson

cc: Fred Wyshak
David Lazarus
Counsel of Record for Defendants