## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 16-cr-10343-ADB |
| | ) | |
| v. | ) | **REDACTED; UNREDACTED VERSION** |
| | ) | **FILED UNDER SEAL** |
| MICHAEL L. BABICH et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### DEFENDANTS' MOTION TO PRECLUDE TESTIMONY
### OR OTHER EVIDENCE RELATING TO THE PROVISION OF
### LEGAL ADVICE TO INSYS AND ITS BOARD OF DIRECTORS

After several years of steadfastly maintaining its attorney-client privilege, Insys

Therapeutics is now allowing the government, on essentially the eve of trial, access to attorney-

client privileged information that the prosecutors believe furthers their case against Defendants.

At the same time Insys continues to claim that it has *not waived* its attorney-client privilege.  This

has created a scenario where the government plans to selectively use against Defendants certain

information over which Insys holds an attorney-client privilege (the sword), while allowing Insys

to rely on the privilege to prevent Defendants from accessing contradictory and exculpatory

privileged information (the shield).  The Court should not tolerate this late-breaking attempt to

prosecute Defendants using selective bits and pieces of Insys's privileged information.  For the

reasons explained below, the Court should preclude the government from eliciting at trial any

testimony regarding privileged communications between Insys or its Board of Directors ("Board")

and the company's in-house or outside counsel.

### INTRODUCTION

On January 14, 2019, the government served its revised list of potential trial witnesses.  On

the list are three lawyers who formerly worked for Insys: Leslie Zacks, who served as one of

Insys's outside counsel during the charged conspiracy period and also held a compliance officer

title; Danielle Davis, a lawyer who served as the company's Director of Compliance and coordinated with the company's outside investigations and compliance counsel Skadden, Arps, Slate, Meagher & Flom ("Skadden"); and Franc Del Fosse, the company's former General Counsel.  *See* Ex. A (government's revised witness list).  Mr. Zacks and Ms. Davis are designated as "likely" to be called, while Mr. Del Fosse is designated as someone whom the government "may" call.  *Id.*

Mr. Zacks and Ms. Davis have sat for lengthy proffer sessions with the government within the past five weeks.  Interview memoranda for those proffer sessions, which Defendants only recently received, reveal that Insys is allowing *its own lawyers* to selectively disclose privileged information to the prosecutors, while still claiming that the company is not waiving the privilege. Mr. Zacks's proffer session, for example, appears to have been almost entirely a discussion of legal advice that he provided Insys employees, managers, executives, and directors before and during the alleged conspiracy period.  And Mr. Zacks turned over to the government his hand-written notes of a legal presentation he gave to the Insys Board laying out his plan of action for responding to the government's subpoena to Insys in this case.  Yet, amazingly, Insys's outside counsel, Geoff Hobart of Covington & Burling LLP, began the Zacks proffer session by stating that Insys *was not waiving its attorney-client privileged*.  The prosecutors have not challenged Insys's change in position, and are seemingly willing consider "non-privileged" anything that Mr. Hobart is now willing to call "non-privileged," regardless of whether Mr. Hobart's characterizations have any principled basis.  *See* Ex. B (January 15, 2019 meet-and-confer email from AUSA David Lazarus).

Throughout this case, Defendants have chosen to respect Insys's attorney-client privilege. They have neither subpoenaed Insys for privileged information, nor do they intend to raise an advice-of-counsel defense at trial.  Defendants are deeply disappointed that Insys has decided to

allow the government to selectively access the company's privileged information as part of an effort to convict presumptively innocent people who helped build the company.

Defendants understand that Insys, as part of its corporate resolution with the Department of Justice, is obligated to assist the government with its prosecution of Defendants.  But an obligation to cooperate does not permit the Boston USAO to present one-sided testimony about certain advice that the company and its Board received from its in-house and outside counsel, while Insys keeps using the shield of privilege to prevent Defendants from meaningfully challenging that testimony.  If a prosecution witness were to testify regarding privileged legal advice that Insys received before and during the government's investigation of the company, Defendants would not be equipped to fully cross-examine those witnesses without having (1) unfettered access to *all* Insys documents, including privileged material, that could be used to impeach the witness's testimony, and (2) the right to force the witness to provide complete answers to all cross-examination questions, regardless of whether the questions implicate the company's privilege.  There are likely tens of thousands of privileged documents in Insys's possession that Defendants do not have but that would be relevant to cross examining witnesses' direct testimony about privileged matters.  Even assuming that the Court has the authority, pursuant to the Fifth and Sixth Amendments, to order Insys to provide Defendants with open-file access to its privileged materials, it would be impossible at this late date for Defendants to be prepared to make adequate use of such voluminous materials at trial.

Accordingly, the only solution that adequately ensures Defendants' right to a fair trial is not violated by the "non-waiver" charade is for the Court to keep the privilege door completely shut.  In short, the Court should preclude the government from eliciting any testimony relating to legal advice that Insys and its Board received from its in-house or outside counsel.  No other

remedy will adequately protect Defendants' constitutional rights to a fair trial and to confrontation of government witnesses.

## FACTUAL BACKGROUND

There is no dispute that Insys's lawyers and outside counsel provided legal advice to Insys and its Board both before and throughout the charged conspiracy period.  Insys retained Skadden in December 2013, days after receiving a HIPAA subpoena from the government, to serve as its outside investigations and compliance counsel.  Under the cloak of attorney-client privilege, Insys's internal legal team, Leslie Zacks, Danielle Davis, and Franc Del Fosse, worked shoulder-to-shoulder with Skadden and the Board to detect and remediate any compliance problems.

Mr. Zacks began serving as Insys counsel long before the government started its investigation of the company.  He served as Insys's outside general counsel from January 2012 through spring of 2014, providing legal advice to Insys on a variety of issues including the company's speaker program, and leading its Compliance Committee.  Ms. Davis, a lawyer who Insys hired as its Director of Compliance in March 2014, worked closely with Skadden, under the umbrella of the company's attorney-client privilege, on investigatory and compliance issues relevant to the charges against Defendants.  And Mr. Del Fosse served as the company's General Counsel from February 2014 through October 2018, both serving as Skadden's principal point of contact and routinely engaging in privileged conversations with company management and its Board.

Insys generated and withheld a substantial volume of material on privilege grounds during the investigation underlying this prosecution.  As the government itself has acknowledged, "the attorney-client privilege belongs to the company" and "Insys has not waived the privilege."  *See* Dkt. No. 570 at 4.  Insys, through its outside counsel, Geoffrey Hobart, has repeatedly reiterated the company's non-waiver, including in very recent government interviews of Insys personnel.

*See, e.g.*, Ex. C, at 1 (Danielle Davis, FBI memorandum of December 12, 2018 interview). Defendants respect Insys's privilege and have represented to the Court that "they do not anticipate using such privileged materials" at trial. *See* Dkt. No. 627, at 2.

But, at the eleventh hour, the government has signaled a different approach. Not only does the government intend to call a custodian of records from Skadden and all three Insys lawyers as prosecution witnesses, but its recent proffer sessions confirm that Insys is allowing the government to selectively use against Defendants information that Insys has previously treated as privileged.

A prime example is the company's position with respect to Mr. Zacks. The privilege log that Skadden provided the government in 2016 clearly identifies Mr. Zacks as "outside counsel," and the limited communications involving Mr. Zacks that Skadden produced to the government— including emails and minutes of Compliance Committee meetings in which Mr. Zacks was included—were carefully redacted to avoid even a whiff of disclosure of advice that was sought or received from Mr. Zacks. Yet, during Mr. Zacks's recent proffer session with the government, Mr. Hobart allowed Mr. Zacks to disclose the substance of legal advice he claims he provided the company and its Board throughout the conspiracy period, including at an Insys Board meeting held three days after the company's receipt of the HIPAA subpoena that commenced the government's investigation of the company. *See* Ex. D (Leslie Zacks, FBI memorandum of December 20, 2018 interview). And Mr. Zacks turned over to the government his marked-up notes of a legal presentation he gave to the Insys Board, laying ███████████████████████████ ████████████████████████████████, which he ████████████████████ ██████████████████████████." The notes then lay out the legal plan that Zacks recommended to the Board, as well as the Board's response. *See* Ex. E (Zacks Board meeting notes).

As another example, during Ms. Davis's December 12, 2018 proffer session with the government, Mr. Hobart, despite his claim that the company is not waiving privilege, allowed Ms. Davis to answer a variety of questions that she had previously refused to answer, on attorney-client privilege grounds, in a sworn statement she gave to prosecutors in this case and in a deposition she sat for in a lawsuit pending in Maryland state court.[1]

## ARGUMENT

### I.      Insys Cannot Allow the Government To Use Select Privileged Material as Both a "Sword" and a "Shield" against Defendants.

It is well-established that the attorney-client privilege may not be used "as both a sword and a shield.  Were the law otherwise, [parties] could selectively disclose fragments helpful to its cause, entomb other (unhelpful) fragments, and in that way kidnap the truth-seeking process." *In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.)*, 348 F.3d 16, 24 (1st Cir. 2003); *Columbia Data Prod., Inc. v. Autonomy Corp.*, No. 11-cv-12077-NMG, 2012 WL 6212898, at *17 (D. Mass. Dec. 12, 2012).   By selectively disclosing privileged material against Defendants—a last-minute act of cooperation that hands the government the "sword"—while using a claim of "non-waiver" and the scant time between now and trial as a "shield" to prevent Defendants from meaningfully challenging the testimony, Insys is enabling the government to do just that.

The government should not be allowed to elicit testimony that Defendants cannot adequately impeach on cross examination because Insys's attorney-client privilege has prevented Defendants from accessing the material that would enable the impeachment.  In this regard, Insys's

---

[1] The government has not produced any memoranda or grand jury testimony for Mr. Del Fosse, so Defendants do not know what the government might seek to elicit from him if he is called.  But given his position as Insys General Counsel during the alleged conspiracy it is hard to imagine how his testimony would *not* implicate privileged communications.

attorney-client privilege would inherently stymie Defendants' ability to cross examine Mr. Zacks, Ms. Davis, and Mr. Del Fosse (if he is called)—even assuming the Court could bar them from invoking Insys's attorney-client privilege in response to questions posed to them on cross examination (an open question in the First Circuit).  Any cross of these witnesses would be profoundly undercut by Defendants' inability to present exculpatory material that Insys has deemed subject to attorney-client privilege.

The Sixth Amendment's Confrontation Clause guarantees a criminal defendant the right to cross-examine the witness against him.  *United States v. Celestin*, 612 F.3d 14, 19 (1st Cir. 2010) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986)).  This right is violated where a witness's "assertion of privilege unduly restricts a defendant's cross-examination," and in such circumstances "the witness' direct testimony may have to be stricken."  *United States v. Coven*, 662 F.2d 162, 170-71 (2d Cir. 1981) (internal quotations and citations omitted); *see also United States v. Rainone*, 32 F.3d 1203, 1206 (7th Cir. 1994) (recognizing that a witness's invocation of the attorney-client privilege may, in some circumstances, violation the defendant's "right of confrontation").  For the same reason, the Court should preclude a witness from testifying in the first instance where it is clear that the invocation of the attorney-client privilege by the corporation for which the employee worked would unduly restrict the defendant from fully testing the witness's testimony through cross examination.

Defendants could not fully cross-examine, and the jury could not fairly evaluate, the testimony that Mr. Zacks, Ms. Davis, or Mr. Del Fosse—or any other Insys witness for that matter—might provide regarding attorney-client privileged matters.  Because Insys has maintained attorney-client privilege throughout discovery, Defendants cannot cross-examine these witness on pertinent legal communications and work product, including their communications with Insys's Board, senior management, and outside counsel that directly bear on privileged subject matter that

the government may seek to elicit from Insys witnesses on direct examination.  Nor can Defendants use Skadden's communications with Insys's management and directors to refute testimony that the government may seek to elicit from witnesses such as Mr. Zacks, Ms. Davis, and Mr. Del Fosse.

Ms. Davis, for example, made reference during her December 12, 2018 proffer session to a number of documents that Defendants have not received in discovery—including work product she presented to the company's Board regarding an investigation she performed into the Insys Reimbursement Center.  How could Defendants possibly cross examine Ms. Davis about what findings she presented to the Board and the advice she provided based on those findings, or put into context for the jury the Board's reaction to those findings?  And the government has produced *less than thirty* (often redacted) emails sent from Leslie Zacks—surely a mere fraction of the relevant emails he sent during his multi-year tenure as outside general counsel to Insys.  How could Defendants possibly test claims that Mr. Zacks might make about his work at the company? Moreover, if Mr. Zacks, Ms. Davis, Mr. Del Fosse, or another witness were to testify that Insys's Board failed to follow certain advice provided by a lawyer, how could Defendants possibly receive a fair trial without having the opportunity to impeach that testimony (*e.g.*, by showing that contrary advice was provided by another company lawyer)?  The answer to these questions is clear: if Insys witnesses are allowed to selectively testify about any matter related to the provision of legal advice to the company or Board, Defendants will not have the ability to meaningfully cross examine those witnesses.

**II.      Forcing Insys to Waive Privilege on the Eve of Trial Is No Solution to the Problem.**

To be clear, Defendants are *not* asking the Court to force Insys to waive attorney-client privilege and provide them with open-file access to the company's privileged information.  This

is for two reasons.  First, Defendants respect the fact that Insys is the holder of the privilege, and has repeatedly announced its refusal to waive the privilege.  Second, Defendants are not relying on an advice-of-counsel defense.  Third, Defendants would be unable to litigate the privilege issues in full, or to adequately review and synthesize Insys privileged material for exculpatory and impeachment materials, between now and the start of trial.  This is particularly true here, because the privilege log that Skadden produced to the government during the investigation appears woefully incomplete, preventing it from serving as a road map that Defendants could use to identify in any targeted fashion privileged materials that might be especially pertinent to the witness testimony.[2]

Accordingly, the only way to protect Defendants' Fifth Amendment right to a fair trial and Sixth Amendment right to fully cross examine all of the government's witnesses is to prevent the government from presenting testimony or evidence relating to legal advice that Insys and its Board received from its in-house and outside counsel.  None of the government's witnesses should be allowed to testify to any communications they made to the company or the Board in conjunction with the provision of legal advice, or to any documentation or recollection related to such advice. In the case of Mr. Zacks and Mr. Del Fosse, based on the information the government has turned over to date, the Court should preclude their testimony in full.  In the case of Ms. Davis, the Court should substantially constrain her testimony so she does not opine on any topics on which she previously invoked Insys's privilege.

---

[2] Defendants' understanding is that the privilege log that Skadden provided to the government during the underlying investigation was the product of negotiation, and it clearly was never intended to be a full list of all privileged communications that might be relevant to Defendants' cross examination of government witnesses.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion.

Dated:  January 15, 2019                          Respectfully submitted,

/s/ Tracy A. Miner                                  /s/ Steven A. Tyrrell

Tracy A. Miner (BBO# 547137)                  Steven A. Tyrrell (admitted *pro hac vice*)

tminer@demeollp.com                              steven.tyrrell@weil.com

Megan Siddall (BBO# 568979)                Patrick J. O'Toole, Jr. (BBO# 559267)

msiddall@demeollp.com                          Patrick.otoole@weil.com

Demeo LLP                                        Weil, Gotshal & Manges LLP

200 State Street                                    2001 M Street, NW

Boston, MA 02109                                Washington, D.C. 20036

Telephone: (617) 263-2600                  Telephone: (202) 682-7213

***Attorneys for Michael Gurry***             ***Attorneys for Richard Simon***

/s/ Peter C. Horstmann                        /s/ Michael Kendall

Peter C. Horstmann (BBO# 556377)       Michael Kendall (BBO# 544866)

pete@horstmannlaw.com                        michael.kendall@whitecase.com

Law Offices Peter Charles Horstmann    Alexandra Gliga (BBO# 694959)

450 Lexington Street, Suite 101          alexandra.gliga@whitecase.com

Newton, MA 02466                            White & Case, LLP

                                             75 State Street

***Attorney for Sunrise Lee***                 Boston, MA 02109

                                             Telephone: (617) 939-9310

/s/ Beth A. Wilkinson

Beth A. Wilkinson (admitted *pro hac vice*)   ***Attorney for Joseph Rowan***

bwilkinson@wilkinsonwalsh.com

Alexandra M. Walsh (admitted *pro hac vice*)

awalsh@wilkinsonwalsh.com

Kosta S. Stojilkovic (admitted *pro hac vice*)

kstojilkovic@wilkinsonwalsh.com

2001 M Street NW

Washington, D.C. 20036

Telephone: (202) 847-4000

Brien T. O'Connor (BBO# 546767)

brien.o'connor@ropesgray.com

Aaron M. Katz (BBO# 662457)

aaron.katz@ropesgray.com

Ropes & Gray LLP

800 Boylston Street

Boston, MA 02199

Telephone: (617) 951-7000

*Attorneys for Dr. John Kapoor*

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1, I hereby certify that counsel for Defendants have conferred with counsel for the government and that counsel for the government objects.

/s/ Beth A. Wilkinson

## CERTIFICATE OF SERVICE

I, Beth A. Wilkinson, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 15, 2019.

/s/ Beth A. Wilkinson