## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 16-CR-10343-ADB |
| ) | |
| MICHAEL L. BABICH et al., ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' OPPOSITION TO EXPRESS SCRIPTS, INC.'S MOTION TO QUASH

Express Scripts, Inc.'s motion to quash rests on a foundation of exaggerations and red herrings, all of which are designed to obfuscate the undisputed fact that the company chose neither to respond to nor move to quash a Court-authorized, duly-issued Rule 17(c) subpoena *duces tecum* that Defendants served on Express Scripts back in July 2018.

Express Scripts is an alleged victim of the alleged RICO conspiracy, specifically of the wire fraud predicate (fraud against insurers). The government has advised Defendants that it intends to call an Express Scripts corporate representative as a witness at trial—not merely to authenticate documents, but ostensibly for the purpose of establishing substantive elements of the wire fraud predicate. Defendants understand that Express Scripts would prefer not to respond to Defendants' Rule 17(c) subpoena. But Express Scripts's preferences do not trump Defendants' constitutional right to cross examine witnesses against them, or their compulsory process rights under the Federal Rules of Criminal Procedure. The Express Scripts business records that Defendants seek go to the heart of the wire fraud elements of knowledge, intent, and materiality. This Court already determined as much when it granted Defendants' under seal, *ex parte* motion for permission to serve subpoenas on Express Scripts and numerous other insurers and PBMs. *See* Dkt. No. 332. Express Scripts's formulaic, conclusory assertion that Defendants are engaged in an improper "fishing expedition" is therefore impossible to take seriously, particularly given that

Express Scripts, as a non-party, knows next to nothing about how the prosecution intends to prove Defendants' guilt, and how Defendants plan to respond.  The motion to quash should be denied.

## PROCEDURAL HISTORY

In June and July 2018, Defendants served Rule 17(c) subpoenas *duces tecum* on several of the country's most prominent health insurers and pharmacy benefit managers ("PBMs").  The subpoenas required documents to be produced by August 15, 2018.  Before serving the subpoenas, Defendants sought this Court's authorization to do so, as Rule 17(c) requires where the subpoena calls for pre-trial return.  Defendants presented this Court with a model subpoena, under seal and *ex parte*, so that the Court could ensure the subpoena satisfied the "*Nixon* factors."[1]  After reviewing Defendants' under seal, *ex parte* submission, the Court authorized Defendants to serve the subpoenas, in an order that was itself under seal, *ex parte*.  *See* Dkt. No. 332 (under seal, *ex parte* order).

One company that Defendants served in July 2018 was Express Scripts, Inc.  Express Scripts is the largest PBM in the world.  It is ranked #25 on the Fortune 100 list, with UnitedHealth Group and CVS Health being the only higher ranked healthcare companies.  In 2017, its net income was approximately $4.51 billion.  *See* Fortune Magazine, *available at* http://fortune.com/fortune500/express-scripts-holding, last visited on January 27, 2019.  Rather than having each Defendant serve an identical subpoena on Express Scripts, Defendants served Express Scripts with a single subpoena on behalf of all Defendants.  The subpoena called for a single production of documents, to be returned to the Boston office of Donnelly, Conroy & Gelhaar, counsel for then-Defendant Alec Burlakoff.

---

[1] The subpoena served on Express Scripts in July 2018 was identical to the model.

After receiving the subpoena, Express Scripts's outside counsel at Kobre & Kim contacted Mr. Vien of Donnelly, Conroy & Gelhaar by letter.  *See* Katz. Decl., ¶ 3.  On August 1, 2018, there was a telephone call between the Kobre & Kim lawyers; Ropes & Gray partner Aaron Katz, counsel for Dr. John Kapoor; and Mr. Vien.  *Id.* ¶ 4.  On that call, Mr. Katz made the following things clear to the Kobre & Kim lawyers: (1) the subpoena served on Express Scripts was on behalf of all Defendants; (2) Defendants had briefed the Court on the *Nixon* factors in an under seal, *ex parte* filing; (3) the Court had entered an order permitting service of the subpoenas; (4) the Court's order was itself under seal and *ex parte*, and therefore Defendants were disinclined to share a copy with Express Scripts; (5) despite having the Court's authorization, Defendants were amenable to narrowing the scope of the subpoena through negotiation; and (6) Defendants would unconditionally extend the deadline to respond to the subpoena to at least September 14, 2018, and would be reasonable with respect to requests for further extensions.  *Id.* ¶ 5.

Over the next several months, Defendants received rolling document productions from other health insurers and PBMs on which it served subpoenas identical to the one they served on Express Scripts.[2]  These rolling productions included the exact categories of documents that Express Scripts—the largest PBM in the world and third-richest healthcare company in America—claims it cannot produce without "extraordinary burden and cost."  Express Scripts Mem., at 15.  Express Scripts, however, chose a different approach.  Without filing a motion to quash or

---

[2] The categories of documents that Defendants received from these other health insurers and PBMs included the exact categories that Express Scripts, in its motion to quash, claims would be unduly burdensome for it to produce.

otherwise informing Defendants' counsel, Express Scripts decided that it would do *absolutely nothing*.[3]  This is precisely what Rule 17(c) *does not permit*.

When the government disclosed to Defendants in mid-January 2019 that an Express Scripts corporate representative was a "likely" trial witness, Defendants could not wait on Express Scripts's production any longer.  *See id.* ¶ 7.  Counsel for Dr. Kapoor, acting on behalf of all remaining Defendants, immediately contacted Kobre & Kim to inquire about Express Scripts's failure to respond to the July 2018 subpoena.  *See id.* ¶ 7.  The Kobre & Kim lawyers claimed to be "surprised" that Defendants were anticipating documents from Express Scripts.  *See id.* ¶ 8.  They claimed that the July 2018 subpoena was moot, because it had called for the responsive documents to be produced to the office of Mr. Burlakoff's counsel and Mr. Burlakoff had recently pled guilty.  *See id.* ¶ 8.  And they claimed the subpoena was not valid because it did not comply with *Nixon*.  *See id.* ¶ 8.

These explanations for Express Scripts's total noncompliance with the July 2018 subpoena are nonsensical.  Express Scripts knew by no later than August 1, 2018, because Dr. Kapoor's counsel told the Kobre & Kim lawyers, that the subpoena was on behalf of *all Defendants*.  Moreover, Mr. Burlakoff's decision to plead guilty and cooperate with the government was not made public until November 14, 2018, and therefore could not logically explain Express Scripts's dilatory conduct up to that point.  Moreover, Express Scripts knew by no later than August 1, 2018, because Dr. Kapoor's counsel told the Kobre & Kim lawyers, that the Court already had reviewed and authorized service of the subpoena—an implied finding that the subpoena satisfied *Nixon*.  Finally, even taking the Kobre & Kim lawyers' explanations at face value, it still does not explain

---

[3] The Federal Rules of Criminal Procedure do not include any procedure to move to compel a response to a duly issued Rule 17(c) subpoena.  Instead, Rule 17(c)(2) puts the onus on the subpoena recipient to move to quash.

why they made a unilateral decision to ignore compliance with the July 2018 subpoena, rather than moving "promptly" to quash, as Rule 17(c) requires—other than to lull Defendants into a false sense of security that Express Scripts was making some effort to collect responsive documents.

Dr. Kapoor's counsel made clear to the Kobre & Kim lawyers that Defendants considered the July 2018 subpoena still valid. *See id.* ¶ 9. Nevertheless, to cover their bases, on January 18, 2019, Defendants served another Rule 17(c) subpoena—this one containing a subset of the requests contained in the July 2018 subpoena, with non-substantive stylistic revisions to make them even more clear, and requiring documents to be returned by January 28, 2019 to the office of Defendant Michael Gurry's counsel. *See id.* ¶ 10. Over the next several days, the Kobre & Kim lawyers and Dr. Kapoor's counsel attempted to negotiate the scope of this new subpoena. Unfortunately, it became clear relatively quickly that Express Scripts would be unwilling to agree to anything remotely acceptable to Defendants. *See id.* ¶ 11. Express Scripts's motion to quash followed.

## ARGUMENT

### I.   Express Scripts Should Be Ordered to Respond to Defendants' Subpoenas.

The Court already has resolved the issue of whether Defendants' document requests to Express Scripts satisfy the *Nixon* factors. *See* Dkt. No. 322 (Defendants' under seal, *ex parte* memorandum of law); Dkt. No. 332 (Court's under seal, *ex parte* order). That should be the end of the matter. Defendants should not be forced to waste precious pretrial time re-briefing and re-arguing the *Nixon* issue again—this time publicly, so as to reveal their defense strategy to the government in advance of cross examining insurer and PBM witnesses—simply for the benefit of a non-party that does not know, and has no material interest in, how the government will attempt to prove Defendants' guilt or how Defendants intend to respond. And with respect to Express

Scripts's claim that responding to the subpoena would be unduly burdensome, its arguments have no merit.

First, Express Scripts provides no acceptable explanation for why it made *no efforts* to collect documents responsive to the July 2018 subpoena during the approximately four-month period between being served and Mr. Burlakoff filing his motion for a change in plea hearing. If Express Scripts considered the July 2018 subpoena invalid under *Nixon*, it was required to file a motion to quash "promptly." Fed. R. Crim. P. 17(c)(2). Having chosen not to do so, Express Scripts *at a minimum* should have been searching for and collecting responsive documents up through November 14, 2018, when Mr. Burlakoff's decision to plead guilty became public. Express Scripts essentially admits in its motion to quash that it took no such efforts. This alone proves that Express Scripts's newly minted reliance on Mr. Burlakoff's plea as its explanation for why it did not respond to the July 2018 subpoena is completely pretextual. It also means that it is Express Scripts's own fault that it is at square zero with respect to its collection of documents responsive to the new January 2019 subpoena.

Second, there is no support for Express Scripts's argument that Mr. Burlakoff plea rendered the July 2018 subpoena "moot," merely because the subpoena listed Donnelly, Conroy & Gelhaar as the address to which responsive documents should be returned. Express Scripts was clearly aware by no later than August 1, 2018 that the subpoena was on behalf of all Defendants, because counsel for Dr. Kapoor clearly told them so. It is brazen in the extreme for Express Scripts to try to get this Court to believe that Defendants waited until ten days prior to trial to serve a subpoena on the company.

Third, neither the July 2018 subpoena nor the narrowed January 2019 subpoena is unduly burdensome. The subpoenas do not require Express Scripts to search across "100 million

individuals." Express Scripts Mem., at 5.  The subpoenas call for Express Scripts to provide prior authorization records relating to TIRF medications.  Given the small number of patients prescribed TIRFs, it is unlikely that Express Scripts granted more than 10,000 TIRF-related prior authorization requests during the applicable time frame (2012-2015 for the July 2018 subpoena, and 2013-2014 for the January 2019 subpoena).  Each TIRF has a unique NDC code, and it strains credulity to suggest that Express Scripts is incapable of using these NDC codes to quickly filter the presumably-electronic patient records at issue—if Express Scripts did not have this capability, it would not possibly be able to operate a large and successful PBM, let alone the largest and most successful PBM in the world.  In this regard, it is notable that Express Scripts—the largest PBM in the world, with $4.51 billion in net income in 2017—is the only insurer or PBM to lodge a complaint that responding to Defendants' subpoena would be unduly burdensome.  It is also telling that, in its motion to quash, Express Scripts says merely that "prior authorization materials prior to January 1, 2014 *may be* in an archived database."[4]  Express Scripts Mem., at 5 (emphasis added).  That Express Scripts cannot even make a definitive representation to the Court is further proof that it did nothing in response to the July 2018 subpoena and has no concrete proof that providing documents pre-dating January 1, 2014 would be unduly burdensome.

Fourth, even if the Court orders Express Scripts to respond to the subpoenas, Defendants remain amenable to the compromise that they proposed immediately prior to Express Scripts's filing of its motion to quash—including extending the return date, given Kobre & Kim's expectations that the Express Scripts witness will not be called for at least several more weeks.

---

[4] Even if the materials are in an "archived database," this is completely beside the point.  Express Scripts cannot credibly claim that searching an archived database for electronic records that are less than six years old would be unduly burdensome for a company that made $4.51 billion in net income in 2017.  Would Express Scripts be making the same claim in response to a subpoena served on the company by the Department of Justice or a United States Attorney's Office?

The Court should not grant Express Scripts's motion to quash on conclusory, unsupported claims that even *that compromise* would be unduly burdensome.

## II.   If the Court Is Inclined to Grant Express Scripts's Motion to Quash, It Should Also Preclude an Express Scripts Witness From Testifying at Trial to Anything Other Than the Authenticity of Express Scripts Records.

Defendants are not charged with telling a discrete lie, with respect to a discrete patient, to Express Scripts.  They are charged with being participants in a multi-year conspiracy to defraud insurers and PBMs, including Express Scripts.  It is therefore absurd for Express Scripts to suggest that the only relevant Express Scripts documents are those relating to the few Express Scripts patients that the government has put on its list of "likely" trial witnesses.

Things might be different if the government intent was to call an Express Scripts corporate representative merely to authenticate Express Scripts corporate records, and to present no other testimony regarding Express Scripts's prior authorization criteria for Subsys specifically or TIRF medications generally.  But, it appears that the government intends to go way beyond simple authentication in the topics it covers with the Express Scripts witness.  Without the documents that their Rule 17(c) subpoenas request, Defendants would be completely disabled from cross-examining the Express Scripts witness on such topics.

Accordingly, if the Court is inclined to grant Express Scripts's motion to quash, it must also preclude any substantive testimony from the Express Scripts witness, or any substantive testimony from any other witness regarding Express Scripts's prior authorization criteria. Otherwise, Defendants' Sixth Amendment rights to cross examination will have been violated.

## CONCLUSION

For the foregoing reasons, Express Scripts's motion to quash should be denied.

Dated:  January 28, 2019

Respectfully submitted,

/s/ Tracy A. Miner
Tracy A. Miner (BBO# 547137)
tminer@demeollp.com
Megan Siddall (BBO# 568979)
msiddall@mosllp.com
Demeo LLP
200 State Street
Boston, MA 02109
Telephone: (617) 263-2600

**Attorneys for Michael Gurry**

/s/ Peter C. Horstmann
Peter C. Horstmann (BBO# 556377)
pete@horstmannlaw.com
Law Offices Peter Charles Horstmann
450 Lexington Street, Suite 101
Newton, MA 02466

**Attorney for Sunrise Lee**

/s/ Aaron M. Katz
Beth A. Wilkinson (admitted *pro hac vice*)
bwilkinson@wilkinsonwalsh.com
Alexandra M. Walsh (admitted *pro hac vice*)
awalsh@wilkinsonwalsh.com
Kosta S. Stojilkovic (admitted *pro hac vice*)
kstojilkovic@wilkinsonwalsh.com
2001 M Street NW
Washington, D.C. 20036
Telephone: (202) 847-4000

Brien T. O'Connor (BBO# 546767)
brien.o'connor@ropesgray.com
Aaron M. Katz (BBO# 662457)
aaron.katz@ropesgray.com
Ropes & Gray LLP
800 Boylston Street
Boston, MA 02199
Telephone: (617) 951-7000

**Attorneys for Dr. John Kapoor**

/s/ Steven A. Tyrrell
Steven A. Tyrrell (admitted *pro hac vice*)
steven.tyrrell@weil.com
Patrick J. O'Toole, Jr. (BBO# 559267)
Patrick.otoole@weil.com
Weil, Gotshal & Manges LLP
2001 M Street, NW
Washington, D.C. 20036
Telephone: (202) 682-7213

**Attorneys for Richard Simon**

/s/ Michael Kendall
Michael Kendall (BBO# 544866)
michael.kendall@whitecase.com
Alexandra Gliga (BBO# 694959)
alexandra.gliga@whitecase.com
White & Case, LLP
75 State Street
Boston, MA 02109
Telephone: (617) 939-9310

**Attorney for Joseph Rowan**

## <u>CERTIFICATE OF SERVICE</u>

      I, Aaron M. Katz, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on January 28, 2019.

                    /s/ Aaron M. Katz