## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 16-cr-10343-ADB |
| | ) | |
| MICHAEL L. BABICH et al., | ) | |
| | ) | |
| Defendants. | ) | |

### SUPPLEMENTAL MEMORANDUM OF LAW REGARDING
### THE ADMISSIBILITY OF SECRETLY TAPE RECORDED,
### EXCULPATORY STATEMENTS OF DEFENDANTS

Defendants jointly submit this supplemental memorandum of law regarding the admissibility of the tape recordings that Defendant Joseph Rowan's trial counsel played to the jury during his opening.[1] Portions of the tape recordings, which were secretly made by two *qui tam* whistleblowers apparently looking to entrap Mr. Rowan, Defendant Michael Gurry, and others into making inculpatory statements, are admissible for ***non-hearsay purposes***, while other portions are admissible pursuant to Rule 803(3)'s hearsay exception for statements showing the declarant's then-existing state of mind. Defendants wish to introduce the tape recordings into evidence, either as non-hearsay or pursuant to Rule 803(3)'s hearsay exception.[2]

The Court certainly is entitled to provide the jury a limiting instruction to explain the purposes for which the tape recordings are being admitted and for which they may be considered

---

[1] As this is a conspiracy case, each of Defendants has an interest in ensuring that all exculpatory, admissible evidence makes its way to the jury. Mr. Rowan and Mr. Gurry have the greatest interest with respect to these particular tape recordings, because they were participants in the recorded conversations.

[2] Defendants wish to introduce into evidence full, uncut versions of the tape recordings. In some instances, the tape will be relevant in its entirety, while in other instances the full tape should be admitted pursuant to the rule of completeness, as well as to provide the jury confidence that nothing pertinent has been withheld. If the Court prefers that Defendants winnow the recordings down to relevant excerpts, Defendants are happy to proceed that way and will propose such excerpts *post haste*.

(*i.e.*, not for the truth of the matters asserted therein).[3]  But denying the admission of the tape recordings would be clear reversible error as to Mr. Rowan, likely reversible error as to Mr. Gurry, and potentially reversible error as to the other three Defendants.  And it would be constitutional error to require any Defendant to testify before the jury in their own defense as a condition to admitting the tapes into evidence, where the tapes are relevant as non-hearsay or satisfy a Rule 803 hearsay exception.  *Cf. Simmons v. United States*, 390 U.S. 377 (1968).

The tape recordings are indisputably the best evidence of what Mr. Rowan and Mr. Gurry said—and, equally important, what they *did not say*—during the 13+ meetings and phone calls that were secretly recorded between October 2012 and April 2013.  *See, e.g.*, *Gordon v. United States*, 344 U.S. 414, 421 (1953) (holding that a "document is a more reliable, complete and accurate source of information as to its contents and meaning than anyone's description").  Indeed, the tape recordings are *indisputable* evidence of what occurred at those meetings and on those phone calls.  This supplemental memorandum begins by explaining why the tape recordings are clearly admissible for ***non-hearsay purposes*** and/or under Rule 803(3).  It then briefly describes the various ways in which the Federal Rules of Evidence would permit Defendants to prove the authenticity of the tape recordings.

## APPLICABLE LAW

An out-of-court statement is "hearsay" only if the "party offers [it] in evidence to prove the truth of the matter asserted in the statement."  Fed. R. Evid. 801(c).  That "a statement made out of court may be received to prove some relevant fact other than the truth of what [the statement] asserts . . . is well-established."  *United States v. Benitez-Avila*, 570 F.3d 364, 371 (1st Cir. 2009).

---

[3] For example, we agree that Mr. Rowan's statement that "we don't discuss honorariums with physicians" is not admissible as substantive evidence that Insys sales personnel, consistent with Mr. Rowan's admonition, in fact did not discuss honorariums with physicians.

"[E]vidence is not hearsay when it is used only to prove that a prior statement was made and not to prove the truth of the statement." *Anderson v. United States*, 417 U.S. 211, 220 n.8 (1974).  In other words, if the "significance" of a statement "lies solely in the fact that it was made, . . . the statement is not hearsay.'" *United States v. DeCologero*, 530 F.3d 36, 58 (1st Cir. 2008) (quoting Fed. R. Evid. 801, Advisory Committee Notes); *United States v. Murphy*, 193 F.3d 1, 5-6 (1st Cir. 1999) ("So long as out-of-court statements are not offered for their truth, they are not hearsay[.]").[4] If, however, an out-of-court statement satisfies one of Rule 803's hearsay exceptions, it can be admitted for the truth.  *See* Fed. R. Evid. 803.

In determining whether an out-of-court statement is admissible as non-hearsay, or whether the statement satisfies a hearsay exception, the Federal Rules of Evidence treat all declarants equally—simply put, the Rules do not distinguish between statements made by the defendant and statements made by a third-party.  Moreover, save for "testimonial statements" subject to the rule of *Crawford v. Washington*, 541 U.S. 36 (2004), the admissibility of a declarant's out-of-court statement does not depend upon whether the declarant is available to be cross examined on it by the opposing party.  To the contrary, Rule 803 sets forth twenty-three categories of out-of-court statements that are "not excluded by the rule against hearsay, *regardless of whether the declarant is available as a witness*."  Fed. R. Evid. 803 (prefatory statement; emphasis added).  Indeed, the fundamental purpose of Rule 803's hearsay exceptions is to allow the proponent to admit the declarant's out-of-court statement, for its truth, despite the declarant's absence.  Whether the

---

[4] As Judge Boudin wrote in *Murphy*: "So long as out-of-court statements are not offered for their truth, they are not hearsay; it is unnecessary to fit such statements into one particular category, like verbal act, although this is often done, primarily as a short-hand way of explaining the non-hearsay purpose for which the statement is offered."  193 F.3d at 5-6 (citation omitted).  Though we think that many of the statements that Mr. Rowan and Mr. Gurry can be heard making on the tape recordings fit within the colloquially defined category of "verbal acts," ultimately the fundamental point is that any statements that are offered not for the "truth" of what they assert, but rather are offered for the fact that the statements were made, are non-hearsay.

opposing party might prefer to have the opportunity to cross examine the declarant is, under Rule 803, beside the point.  Rule 803 was purposefully drafted to except from the hearsay bar any statement falling within one of the Rule's twenty-three specified categories.

Furthermore, where a declarant's out-of-court statement is admitted for a *non-hearsay* purpose, the opposing party has neither a right nor a need to cross examine the declarant, because admission of a non-hearsay statement does not "put [the declarant's] credibility in issue." *Anderson v. United States*, 417 U.S. 211, 220 (1974).  "The value of a statement offered for nonhearsay purposes lies in its being said rather than its content.  The only person the [opposing party] needs to cross-examine, therefore, is the person who heard it, and is testifying to its utterance from personal knowledge."[5]  *United States v. Peaden*, 727 F.2d 1493, 1500 n.11 (11th Cir. 1984); *Minemyer v. R-Boc Representatives, Inc.*, No. 07-cv-1763, 2012 U.S. Dist. LEXIS 13625, at *15 n.5 (N.D. Ill. Feb. 6, 2012) ("Since the only question is whether the statement was made, there is no need to cross-examine the declarant, and the hearsay rule has no application.").

## LEGAL ANALYSIS

I.    **Some Portions of the Tape Recordings Are Admissible for Non-Hearsay Purposes, While Other Portions Are Admissible Under Rule 803(3)'s Hearsay Exception.**

The government has called Mr. Rowan's and Mr. Gurry's recorded statements—which sales representatives Raymond Furchak and Maria Guzman secretly tape recorded in an attempt to further their clandestine whistleblowing efforts[6]—"self-serving hearsay."  But the government's

---

[5] Of course, where a non-hearsay, out-of-court statement is memorialized on a tape recording, there is no need to have a witness "testify to its utterance from personal knowledge."  Instead, the jury can simply receive the tape recording as indisputable evidence of the "utterance" of the statement.

[6] The government previously identified Mr. Furchak and Ms. Guzman as unindicted co-conspirators.  Mr. Furchak made his tape recordings in October 2012, and Ms. Guzman made her tape recordings in April 2013.  We are not aware of any evidence that Mr. Furchak and Ms. Guzman were aware of each other's clandestine whistleblowing activity, nor are we aware of any evidence that Defendants were aware of that activity at the time the tape recordings were made.

characterization completely misapprehends two basic points about the tape recorded statements. First, many of Mr. Rowan's and Mr. Gurry's statements on the tapes are highly relevant and powerfully exculpatory—and therefore plainly admissible—for ***non-hearsay purposes***. Second, if a defendant's out-of-court statement satisfies the four corners of Rule 803(3)'s hearsay exception, it is admissible evidence of the defendant's then-existing state of mind no matter how "self-serving" the prosecution considers it to be. *United States v. Farhane*, 634 F.3d 127, 172 (2d Cir. 2011). As the Second Circuit explained in *Farhane*, "the self-serving nature of a statement expressing a state of mind does not automatically preclude application of Rule 803(3). That concern is properly considered by the jury in deciding what weight to accord the statement."

### A.    Mr. Rowan's and Mr. Gurry's Compliance-Minded Instructions to the Sales Force Are Exculpatory Non-Hearsay Statements.

Mr. Rowan's and Mr. Gurry's recorded statements include compliance-minded instructions to members of the sales force, whom the government deems soldiers of the charged RICO conspiracy. Mr. Rowan, for example, gave the following instruction to his sales team: "Do not talk about money [with physicians], ever. . . . [D]on't say: hey you wrote a lot so we're gonna, you know . . . ." These sorts of instructions that Mr. Rowan gave to his sales team are powerfully exculpatory—the instructions directly contradict the prosecution's theory that Mr. Rowan taught, directed, and agreed with his sales representatives to use speaker programs as bribes. For his part, Mr. Gurry's recorded statements include an instruction to Mr. Furchak not to give a Medicare patient cash to cover her Subsys co-pay, which would violate the Anti-Kickback Statute and may constitute Medicare fraud, even if it meant that Insys would lose a sale. Mr. Gurry's instruction in this regard undermines the prosecution's theory that he instructed and agreed with sales representatives and others to engage in insurance fraud to increase Insys's profits.

These compliance-minded instructions, which contradict fundamental suppositions of the government's theories of guilt, are relevant and admissible as ***non-hearsay*** statements.  The First Circuit, like every other circuit, "has held that directions from one individual to another . . . do not constitute hearsay."  *United States v. Bailey*, 270 F.3d 83, 87 (1st Cir. 2001); *United States v. Waters*, 627 F.3d 345, 358 (9th Cir. 2010) (holding that a declarant's instructions to another "does not fall within the definition of hearsay").  This is because a declarant's instructions to another "do not express a 'truth' for which they could be offered."  *United States v. Hayes*, 369 F.3d 564, 568 (D.C. Cir. 2004); *see also Flanagan v. Off. of the Chief Judge*, 893 F.3d 372, 374-375 (7th Cir. 2018) ("Commands are not statements submitted for their truth and so are not hearsay."); *United States v. Reilly*, 33 F.3d 1396, 1410 (3d Cir. 1994) ("'Instructions to an individual to do something are . . . not hearsay,' because they are not declarations of fact and therefore are not capable of being true or false." (quoting Graham, Federal Practice and Procedure: Evidence § 6705, at 409)).  A declarant's instructions that constitute non-hearsay include not only "directions to do" something, but also "directions to . . . refrain from doing something[.]"  *Minemyer*, 2012 U.S. Dist. LEXIS 13625, at *15 n.5 (holding that such instructions "fall[ ] within the category 'verbal acts'").  Accordingly, the hearsay rules have no application whatsoever to the declarant's instruction to another.  *Murphy*, 193 F.3d at 5 (allowing admission of evidence of a non-testifying declarant's instructions to others "to falsify [search warrant] applications and withhold information about seizures," because the declarant's statements "were not offered for the truth of the matter asserted but rather to show that the [declarant] gave such instructions").

To be sure, for a declarant's instructions to another to be admissible as non-hearsay, the fact that the instructions were given must satisfy Rule 401's relevance requirement.  *See* Fed. R. Evid. 401 (providing that evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the

action"); *see United States v. Colon-Diaz*, 521 F.3d 29, 34 (1st Cir. 2008).  But Rule 401 sets "a very low bar for relevance," *United States v. Rodriguez-Soler*, 773 F.3d 289, 293 (1st Cir. 2014), and a defendant's instructions to a third party that are in any way inconsistent with guilt easily clear it.  *See, e.g.*, *Waters*, 627 F.3d at 358 (holding that the defendant was entitled to introduce the fact that she instructed her cousin to "tell the truth" after learning that her cousin might be interviewed by the FBI about her, because the instruction was non-hearsay that had a tendency to prove the defendant's innocence).

The D.C. Circuit's unanimous decision in *Hayes*, 369 F.3d at 567-568, is instructive and on point.[7]  In that case, a cooperator placed a telephone call to the defendant, secretly tape recording it at the behest of federal investigators with whom he was cooperating.  *Id.*  After informing the defendant that investigators had visited the cooperator's home earlier that day, the cooperator asked the defendant, "[W]hat do you think we're going to do?"  *Id.*  The defendant responded, "Tell the truth. . . . That's all you've gotta do. . . . Tell the truth. . . . That's all you know. . . . Tell them what you know.  Let it go.  Tell them what you know and let it go.  Out of your hands now.  Tell the truth. . . . Well, tell the truth.  The truth works."  *Id.*  The defendant sought to admit the tape recording at trial, arguing that his instructions to the cooperator to "tell the truth" undermined the prosecution's theory that he was engaged in a conspiracy with the cooperator.  The district court refused to admit the tape, holding that it was "hearsay" and "not[ing] that the government would not have the opportunity to cross-examine [the defendant] about it because [he] would not take the stand."  *Id.*  On appeal, the D.C. Circuit held that the district court "abused its discretion."  *Id.* at 568.  The court of appeals held that the defendant's instructions to the cooperator to "tell the truth" were relevant for non-hearsay purposes, including to "show his

_____

[7] The panel in *Hayes* was comprised of then-Chief Judge Douglas Ginsburg, then-Judge John G. Roberts, and Judge Raymond Randolph.

state of mind," and were admissible as substantive evidence, without the defendant needing to take the stand in his own defense.  *Id.*

So too here.  First, as demonstrated above, any statements by Mr. Rowan and Mr. Gurry that can be characterized as instructions to the sales force either to do something or not to do something are non-hearsay statements.  *See supra*, at 4.  Second, the fact that Mr. Rowan instructed the sales representatives he managed not to dangle speaker programs as a financial enticement to potential prescribers has at least some "tendency" to make it "less likely" that Mr. Rowan was in a conspiracy with those same sales representatives to use speaker programs as bribes to doctors. Likewise, that Mr. Gurry instructed sales representatives not to engage in conduct that would violate the Anti-Kickback Statute and potentially constitute Medicare fraud has at least some "tendency" to make it "less likely" that Mr. Gurry was in a conspiracy with those same sales representatives to commit insurance fraud against Medicare and other healthcare insurers.  The government is free to introduce evidence and to argue that Mr. Rowan and Mr. Gurry did not actually intend for their compliance-minded instructions to be followed, or gave contrary instructions on other occasions, or later succumbed to a conspiracy that they had been resisting. But that simply goes to the weight, not the admissibility, of the exculpatory evidence that the tape recordings contain.

**B.**  **The Tape Recordings Are Relevant for the Non-Hearsay Purpose of Showing What Mr. Rowan and Mr. Gurry *Did Not Say* During the Meetings and Phone Calls at Issue.**

The tape recordings are also relevant for what is absent from them—namely, any instructions from Mr. Rowan to misuse the speaker programs as bribes to potential prescribers, or any instructions from Mr. Gurry to engage conduct constituting insurance fraud, despite Mr. Furchak's and Ms. Guzman's efforts to goad them into saying something improper.  The hearsay rules clearly cannot bar Mr. Rowan or Mr. Gurry from playing the tape recordings in full as the

best evidence of what they *did not say* during the meetings and phone calls that were recorded. This is because evidence "regarding the absence of a statement is *not hearsay*." *Hoffman v. Neves*, No. 17-cv-13263, 2018 U.S. Dist. LEXIS 164752, at *6 (E.D. Mich. Sept. 26, 2018) (emphasis added); *Llamas v. Seibel*, No. 16-cv-05812, 2017 U.S. Dist. LEXIS 141100, at *23 (N.D. Cal. Aug. 31, 2017) (same).

Most, if not all, of the meetings and one-on-one phone calls that Mr. Furchak and Ms. Guzman secretly tape recorded are precisely the kind of "break out" sessions and "off line" conversations that health care fraud prosecutors routinely focus on during their investigations, because experience has shown that this is where wrongdoers tend to let their hair down.  To put a fine point on it, if Mr. Rowan and Mr. Gurry were participants in the conspiracy charged in the Second Superseding Indictment, a health care fraud prosecutor would have expected them to say *something* inculpatory regarding speaker programs and insurance reimbursement during the meetings and phone calls that Mr. Furchak and Ms. Guzman secretly tape recorded.  The tape recordings, however, are bereft of any statements by Mr. Rowan that sales representatives should seek to bribe doctors with speaker programs or statements by Mr. Gurry to engage in insurance fraud to make a sale.[8]  Under the circumstances in which the tape recordings were made, the *absence* of such incriminating statements from Mr. Rowan and Mr. Gurry has at least some "tendency" to make it "less likely" that they were participants in the RICO conspiracy charged in the Second Superseding Indictment.  *Pecher v. Weyerhaeuser Co.*, No. 14-cv-147, 2016 U.S. Dist. LEXIS 28925, at *12 (W.D. Wis. Mar. 7, 2016) ("The court agrees with defendant that an absence of evidence can be relevant.").

---

[8] At most, Mr. Rowan encouraged his sales representatives to ingratiate themselves with the doctors in their territory by providing gratuitous deliveries of food—conduct that perhaps would violate the voluntary PhRMA Code, but that is not an unlawful *qui pro quo* as defined by the law of this District and certainly not the racketeering conspiracy charged in the Second Superseding Indictment.

**C.     To the Extent Mr. Rowan Made Statements *Rejecting* Sales Representatives' Suggestions That Speaker Programs Should Be Dangled Out as Bribes, Mr. Rowan's Statements Are Admissible Under Rule 803(3).**

In addition to providing his sales representatives instructions that contradict the prosecution's RICO conspiracy theory, the tape recordings include Mr. Rowan *rejecting* and even chastising suggestions by some sales representatives that the prospect of consulting money could be used to entice doctors to write more prescriptions.  Simply put, whenever a sales representative seemed to be suggesting that the prospect of consultant money should be used to entice doctors to write more, Mr. Rowan flatly rejected the idea and called out the representative's impropriety.  Mr. Rowan's statements rejecting sales representatives' misguided suggestions that financial inducements be dangled out as enticements to potential prescribers are admissible under Rule 803(3), which allows for the admission of a "statement of the declarant's then-existing state of mind (such as motive, intent, or plan)," other than "a statement of memory or belief to prove the fact remembered or believed . . . ."

The Eighth Circuit's decision in *United States v. Partyka*, 561 F.2d 118 (8th Cir. 1977), is on point.  In *Partyka*, the defendant was charged with engaging in an illegal drug transaction with a government cooperator who had solicited the defendant.  *Id.* at 121.  The defendant's "version of the conversation was that he told [the cooperator] that he was unwilling to engage in the transaction and maintained his position in spite of importunities on the part of [the cooperator]." *Id.*  The defendant did not wish to take the stand in his own defense, but he still wished to introduce evidence of the conversation he had with the cooperator.  He therefore called his wife, who had overheard the entire conversation, as a witness.[9]  *Id.* at 124-125.  When defense counsel asked the

---

[9] There were no tape recordings of the conversation.  If there had been, obviously the wife's testimony about the content of the conversation would not have been needed, as the tape recording would be the best evidence.

defendant's wife "to relate what she had heard of the conversation," the government objected on hearsay grounds, and the district court sustained the objection.  *Id.* at 125.  On appeal, the Eighth Circuit held that the district court's preclusion of the evidence was error.  The court explained that the "statements made by the [defendant during the conversation with the cooperator] were not self-serving declarations about a past attitude or state of mind, but were manifestations of his present state of mind, his immediate reaction to the proposal of [the cooperator].  As such, we think that they were admissible."  *Id.* (citing Fed. R. Evid. 803(3)).

> **D.      Any Statements Reflecting Mr. Rowan's Then-Existing State of Mind Are Admissible Under Rule 803(3) to Prove His Then-Existing State of Mind.**

On the tape recordings, Mr. Rowan is heard making numerous statements that reflect his then-existing state of mind on subjects pertinent to the charges against him.  For example, Mr. Rowan refers to speaker programs as "a way for an MD, PA, or a health care provider in general to get the message out there, to spread the word about Subsys."  He also states that speaker programs "can do what we need to do if we are focusing on the right physicians doing the right talks with the right audience."  These statements are admissible to prove that, at the time he made the statements, Mr. Rowan in fact believed these things about speaker programs (*i.e.*, believed that a legitimately executed speaker program could be a powerful tool to market Subsys to the program's attendees).  Mr. Rowan's then-existing beliefs are relevant, because they have at least some "tendency" to make it "less likely" that Mr. Rowan had previously used or in the future would use speaker programs not as a legitimate marketing tool, but as a pretext for bribing doctors.

The Second Circuit's decision in *United States v. DiMaria*, 727 F.2d 265 (2d Cir. 1984), is instructive.  In that case, the defendant was charged with possession of stolen cigarettes.  *Id.* at 267.  His defense at trial was that he believed he was in possession of *bootlegged* cigarettes, not stolen ones.  *Id.* at 270.  When FBI agents approached the defendant to arrest him, he said: "I

thought you guys were just investigating white collar crime; what are you doing here?  I only came here to get some cigarettes real cheap."  *Id.*  At trial, the defense argued that "'real cheap' cigarettes meant bootleg cigarettes," and that the defendant's statement therefore "tended to disprove" that the defendant believed he was in possession of *stolen* cigarettes.  *Id.*  The district judge, however, refused to allow the statement to be admitted under Rule 803(3).  On appeal, the Second Circuit held that the district court had erred.  The court of appeals explained that the defendant's statement "was not offered to prove that the cigarettes were not stolen cigarettes but only to show that [the defendant] did not think they were. . . . It was a statement of what he was thinking in the present."  *Id.* at 271.  The court rejected out of hand the government's argument that the defendant's statement, made to known government agents, was "'an absolutely classic false exculpatory statement.'"  *Id.*  "False it may well have been," the court explained, "but it fell within Rule 803(3), as it clearly did if the words of that Rule are read to mean what they say, [and] its truth or falsity was for the jury to determine."  *Id.* (holding that "the self-serving nature of such a declaration [goes] only to its weight").

In debating the issue before Your Honor on Monday, Mr. Lazarus argued that "[f]or state of mind, it would be the impact of a statement on the listener, not the speaker.  So the fact that the defendant is saying these things to other people, his state of mind is not the purpose of [Rule 803(3)'s] hearsay exception."  Tr. 4:25 – 5:3.  Mr. Lazarus's argument contradicts Rule 803(3)'s plain language, which provides that a declarant's out-of-court statement is admissible to prove "the *declarant's* then-existing state of mind . . . ."  Mr. Rowan, of course, is the declarant of the statements at issue.

Perhaps recognizing Mr. Lazarus's mistake, Mr. Wyshak then tried out a different argument for why Rule 803(3) does not apply.  Mr. Wyshak asserted that "the state of mind exception to the hearsay rule really revolves around the defendant's commission of a future act."

Tr. 6:5-7.  But that is wrong as well.  As an initial matter, a reasonable jury certainly could infer, from Mr. Rowan's then-existing belief that a legitimately executed speaker program was a powerful marketing tool, that Mr. Rowan did not thereafter engage or instruct others to engage in sham speaker programs.  Thus, Mr. Wyshak's argument fails on its own terms.  Furthermore, it is black letter law that Rule 803(3) covers more than statements relative to future acts.  *See Chu v. Legion of Christ, Inc.*, 2 F. Supp. 3d 160, 178 n.16 (D.R.I. 2014) ("The Legion asseverates that Fed. R. Evid. 803(3) may only be used to prove that the declarant acted after the statement consistently with the stated intent.  This argument tips the Rule on its head—the thrust of [the Rule] is that hearsay may be admissible to prove intent, not to prove an action consistent with that intent.").  To the extent Mr. Wyshak is concerned that Defendants intend to admit "a statement of memory or believe to prove the fact remembered or believed," which Rule 803(3) on its face prohibits, Defendants can assure the Court that they have no such intention.

## II.     Rule 104 Provides Mr. Rowan With Substantial Flexibility as to How to Prove the Tapes' Authenticity.

With the hearsay issue resolved, the only remaining issue is how Defendants may authenticate the tape recordings.  For an "item of evidence" to be admissible, the "proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  "The requirement of showing authenticity . . . falls in the category of relevancy dependent upon fulfillment of a condition of fact and is governed by the procedure set forth in Rule 104(b)."  Fed. R. Evid. 901, Advisory Committee Notes.  In determining authenticity under Rule 104, "the court is not bound by evidence rules, except those on privilege."  Fed. R. Evid. 104(a).  With respect to tape recordings, the First Circuit has held that Rule 901(a) "simply require[s] proof that the tape recording accurately reflects the conversation in question."  *United States v. Doyon*, 194 F.3d 207, 212 (1st Cir. 1999).

At the outset, we wish to note that, so far as we are aware, the government has no basis to dispute the tape recordings' authenticity (*i.e.*, has no basis to claim that the tape recordings are doctored or manipulated somehow).  Mr. Furchak and Ms. Guzman supplied these tape recordings to the Department of Justice as part of their statutorily-required False Claims Act initial disclosures.  *See* 31 U.S.C. § 3730(b)(2).  Mr. Furchak and Ms. Guzman were represented (and continue to be represented) by *qui tam* lawyers who have immense experience and impeccable reputations.  If Mr. Furchak and Ms. Guzman had manipulated, doctored, or altered the tape recordings in some way, they and their lawyers would have been exposing themselves to federal felony charges and disbarment by submitting them to the Department of Justice.  Moreover, given that Mr. Furchak and Ms. Guzman were acting *adversely* to Insys Therapeutics, it defies logic to suggest that they would have altered the tape recordings in a way *favorable* to Mr. Rowan or Mr. Gurry.  Finally, the Department of Justice has had these tapes in its possession for *years*.  If the Department of Justice believed there might be an issue with the tapes' integrity, presumably there would be some record of that in the Department of Justice's files.  Defendants submit that these circumstances alone are a sufficient basis for the Court to find, pursuant to Federal Rule of Evidence 104(a), that the tape recordings are authentic.

In any event, the requisite proof of the tapes' authenticity can be supplied in a number of other ways.  Defendants could subpoena Mr. Furchak and Ms. Guzman to testify live in a Rule 104(a) hearing about their making of the tapes.  *See United States v. Alsop*, 12 F. App'x 253, 257 (6th Cir. 2001) ("The tapes were properly authenticated by witnesses and the police officers who made them.").  Or, in lieu of live testimony, they could submit affidavits from Mr. Furchak and Ms. Guzman.  *See, e.g.*, *United States v. Horn*, 185 F. Supp. 2d 530, 534 (D. Md. 2002) ("During Rule 104(a) hearings the rules of evidence, except those dealing with privileges, are inapplicable, permitting the Court greater latitude to consider affidavits such as those filed by Horn and the

Government."); *Cuddy v. Wal-Mart Super Ctr., Inc.*, 993 F. Supp. 962 (W.D. Va. 1998) ("[T]he tape recording is authenticated by Mrs. Cuddy's affidavit in which she avers that it contains conversations between herself and Houser.").  Or they could call an expert witness to testify that the tape recordings, which are digital files, are forensically sound.  *Cf. United States v. Rengifo*, 789 F.2d 975, 978 (1st Cir. 1986) ("This circuit does not require that the witness authenticating tape recorded conversations be someone who either participated in or personally overheard the subject matter of the recording in evidence."); *United States v. Patrick*, 6 F. Supp. 2d 51, 55 (D. Mass. 1998) (Keeton, J.) ("[T]ape authentication is a subject of scientific knowledge.").  And if for some strange reason Mr. Rowan's or Mr. Gurry's testimony were necessary to establish the tapes' authenticity, they would be permitted to offer that testimony outside the presence of the jury subject to Rule 104(c)'s and Rule 104(d)'s protections.  *See* Fed. R. Evid. 104(c) (providing that, in a criminal case, a defendant's testimony during a Rule 104(a) hearing must take place outside the presence of the jury); Fed. R. Evid. 104(d) (providing that by "testifying on a preliminary question, a defendant in a criminal case does not become subject to cross-examination on other issues in the case").

It is important to note that Rule 104 does not require the tape recordings to be authenticated prior to their admission.  To the contrary, Rule 104(b) expressly provides that "[t]he court may admit the proposed evidence on the condition that the proof [of authenticity] be introduced later." Fed. R. Evid. 104(b).  So long as the Court is satisfied that Defendants *will be able* to prove the tapes' authenticity, the Court should permit Defendants to admit the tapes into evidence through any appropriate witness, even if the Rule 104(a) hearing is scheduled for a later time.

**CONCLUSION**

For the foregoing reasons, the Court should permit Defendants to admit into evidence, either as non-hearsay or pursuant to Rule 803(3)'s hearsay exception, the tape recordings made by Raymond Furchak and Maria Guzman.  Defendants are agreeable to whatever limiting instruction the Court deems appropriate to ensure that the jury understands the limited purpose for which the tape recorded statements are being introduced.

Dated:  February 6, 2019                                Respectfully submitted,

/s/ Tracy A. Miner                                      /s/ Steven A. Tyrrell
Tracy A. Miner (BBO# 547137)                            Steven A. Tyrrell (admitted *pro hac vice*)
tminer@demeollp.com                                     steven.tyrrell@weil.com
Megan Siddall (BBO# 568979)                             Patrick J. O'Toole, Jr. (BBO# 559267)
msiddall@demeollp.com                                   Patrick.otoole@weil.com
Demeo LLP                                               Weil, Gotshal & Manges LLP
200 State Street                                        2001 M Street, NW
Boston, MA 02109                                        Washington, D.C. 20036
Telephone: (617) 263-2600                               Telephone: (202) 682-7213

***Attorneys for Michael Gurry***                       ***Attorneys for Richard Simon***

/s/ Peter C. Horstmann                                  /s/ Michael Kendall
Peter C. Horstmann (BBO# 556377)                        Michael Kendall (BBO# 544866)
pete@horstmannlaw.com                                   michael.kendall@whitecase.com
Law Offices Peter Charles Horstmann                     Alexandra Gliga (BBO# 694959)
450 Lexington Street, Suite 101                         alexandra.gliga@whitecase.com
Newton, MA 02466                                        White & Case, LLP
                                                        75 State Street
***Attorney for Sunrise Lee***                          Boston, MA 02109
                                                        Telephone: (617) 939-9310
/s/ Aaron M. Katz
Beth A. Wilkinson (admitted *pro hac vice*)             ***Attorney for Joseph Rowan***
bwilkinson@wilkinsonwalsh.com
Alexandra M. Walsh (admitted *pro hac vice*)
awalsh@wilkinsonwalsh.com
Kosta S. Stojilkovic (admitted *pro hac vice*)
kstojilkovic@wilkinsonwalsh.com
2001 M Street NW
Washington, D.C. 20036
Telephone: (202) 847-4000

Brien T. O'Connor (BBO# 546767)
brien.o'connor@ropesgray.com
Aaron M. Katz (BBO# 662457)
aaron.katz@ropesgray.com
Ropes & Gray LLP
800 Boylston Street
Boston, MA 02199
Telephone: (617) 951-7000

***Attorneys for Dr. John Kapoor***

## <u>CERTIFICATE OF SERVICE</u>

I, Aaron M. Katz, hereby certify that a true and correct copy of this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on February 6, 2019.

/s/ Aaron M. Katz