UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| v. | ) | |
| RICHARD M. SIMON, et al., | ) | CRIMINAL NO. 1:16-CR-10343-ADB |
| Defendants. | ) | |

### Defendant Simon's Motion for Mistrial, to Strike Testimony, or for an Evidentiary Hearing

On March 14, 2019, Mr. Nathan Tyrone Rustin ("Rustin") provided clear and unequivocal exculpatory testimony on a central issue regarding the allegations against Defendant Richard M. Simon.  Specifically, Mr. Rustin, the Insys Specialty Sales Professional ("SSP") assigned to Dr. Judson Somerville, testified that he was unaware of any agreement with Dr. Somerville for him to prescribe Subsys or to increase the number of Subsys units in prescriptions in exchange for speaker payments.  [3/14/19 Tr. at 194:16-25, 200:9-24][1]

In an apparent effort to salvage their allegations regarding Dr. Somerville's prescriptions and speaker programs, the Government met with Mr. Rustin that very night, and then again the next morning.  [3/15/19 Tr. Tr. 33:5-10]  During these meetings, the Government discussed Mr. Rustin's March 14th testimony, including whether Dr. Somerville had entered into an agreement.

---

[1] On another issue of significant import, Mr. Rustin also testified that Dr. Somerville's speaker programs contained educational content.  [3/14/19 Tr. at 218:13-17] On March 15, 2019, he reversed that testimony.  [*See* 3/15/19 Tr. 30:6-8, 30:13-17]

1

[*See* 3/15/2019 Tr. 48:23-49:6]  On March 15, 2019, after twice meeting with Mr. Rustin, the Government resumed its direct examination and elicited testimony from Mr. Rustin that directly contradicted the exculpatory testimony he had provided on March 14.

Under these circumstances, the complete reversal of Mr. Rustin's exculpatory testimony gives rise to serious questions concerning the Government's interactions with him, including whether he was pressured, intimidated or coached into recanting his exculpatory testimony. Of course, undersigned counsel was not privy to the Government's meetings with Mr. Rustin and was not in a position to delve into the details in front of the jury moments after the startling turn of events.  Incredibly, Mr. Rustin attempted to explain his dramatic change in testimony as a misunderstanding of the word "agreement" and noted that he felt pressure.  [3/15/19 Tr. at 38:14-24, 45:8-46:22].

In view of the foregoing, and its implications on the integrity of the Government's prosecution of Defendant Simon, undersigned counsel moved for a mistrial on March 15.  In response, the Court denied the motion, but indicated it would consider a further written submission.  By this motion, Defendant Simon renews his motion for a mistrial.  Alternatively, Defendant Simon requests that Mr. Rustin's March 15 testimony be stricken.  Finally, in the event the Court denies these requests, Defendant Simon requests an evidentiary hearing outside the presence of the jury regarding the circumstances and details surrounding the Government's meetings with Mr. Rustin and the impact that those meetings had on his subsequent testimony.

### Argument

Granting "a mistrial is a last resort, only to be implemented if the taint [from improper testimony] is ineradicable, that is, only if the trial judge believes that the jury's exposure to the evidence is likely to prove beyond realistic hope of repair."  *U.S. v. Sepulveda*, 15 F.3d 1161,

WEIL:\96958805\4\74309.0003

1184 (1st Cir. 1993); *accord U.S. v. Magana*, 127 F. 3d 1, *6 (1st. Cir. 1997).  If a court does not

believe a mistrial is warranted, it nonetheless may impose other remedial measures, including

striking improper testimony and giving appropriate curative instructions.  *Sepulveda*, 15 F.3d at

1184; *U.S. v. Torres*, 162 F.3d 6, 10 (1st Cir. 1998) (upholding the trial court's decision to

provide limiting instructions to remedy introduction of tainted evidence).

      In *U.S. v. Magana*, prosecutors met with a sequestered witness twice during an overnight

recess between the witness's cross examination and redirect, in violation of local sequestration

practice.[2]  127 F. 3d at 3-4.  After providing the defense with an opportunity to conduct voir dire

of the witness on her meetings with the prosecutors, the court struck the redirect and re-cross

testimony the witness had provided after meeting with the prosecutors and instructed the jury to

disregard that day's testimony.  *Id*. at 6.  In upholding the trial court's decision, the First Circuit

reasoned that the stricken testimony did not significantly impair the value of the testimony

provided by the fact witness during the previous day at court, nor would it be difficult for the

jury to understand the earlier testimony of the fact witness without giving weight to the

following day's testimony.  *Id*.

      Here, Mr. Rustin provided two opposing versions of his testimony – one on March 14

and the other on March 15.  On March 14, Mr. Rustin testified, in relevant part, as follows:

> Q:    What do you mean?
>
> A:    It's very unusual to go into an agreement and have a plan with a physician.
>
> Q:    When you say "very unusual," have you ever done it?

---

[2] Defendant Simon acknowledges that the Government's meetings with Mr. Rustin during his continuing direct examination did not constitute a violation of the Court's sequestration order. The concerns raised by this motion relate to what occurred during the meetings, not the fact that the meetings occurred.

WEIL:\96958805\4\74309.0003

A:      No, I have not.

Q:      Are you aware it was done with regard to Judson Somerville?

A:      No, I'm not.

Q:      You're not?

A:      No.

[3/14/19 Tr. at 194:16-25]  Later, he stated as follows:

Q:      Did you participate in any conversation with Judson Somerville or Rich Simon in which an agreement was reached?

A:      No.

[3/14/19 Tr. at 200:22-24]

After his testimony on March 14, Mr. Rustin met twice with the Government.  When the Government resumed its direct examination of Mr. Rustin, it elicited testimony that was directly at odds with the testimony above.  For example, he stated as follows:

Q:      So when you were asked yesterday, you didn't think that question about an agreement went to an agreement on the number of units, right? Because that's why you said that you weren't aware of any.

A:      The question that I was given yesterday, I thought it was directly asked if I had an agreement with Dr. Somerville, and so that is why I said no. You have to keep in mind that I'm getting rapid-fire questions. I'm sitting up here on a stand. I'm under a lot of duress. I'm under a lot of stress. I'm doing the best to answer the questions. But once it was clarified, again we're talking about three different agreements here. One for me specifically, one for Rich and the team that I worked on, and one for Rich and Dr. Somerville. So I was confused.

[3/15/19 Tr. at 46:8-22]

In view of the foregoing, it seems incontrovertible that something happened in one or both of the meetings between the Government and Mr. Rustin that caused him to recant what had been clear and unequivocal exculpatory testimony on March 14.  It is likewise incontrovertible that the changed testimony goes to the heart of the Government's allegations against Defendant

4

Simon.  Indeed, aside from Alec Burlakoff, a deeply flawed witness, Mr. Rustin is the only witness to provide testimony linking Defendant Simon to an alleged effort to provide speaker fees to a doctor for an improper purpose.  Of course, the defense vigorously disputes Mr. Rustin's characterization of the events in question and believes that he provided truthful testimony on March 14, before his two meetings with the Government.

Defendant Simon further believes that Mr. Rustin's testimony on March 15, after meeting twice with the Government, and without any advance disclosure that he had changed his story, taints the case against Defendant Simon in a way that cannot be remedied.  In that regard, because the defense had no advance notice that Mr. Rustin would change his testimony on a critical issue, it had no meaningful opportunity to explore the circumstances that led to the change.[3]  As a result, Mr. Simon was deprived of his right to confront this witness, such that Mr. Rustin's testimony is beyond realistic hope of repair.   Therefore, a mistrial is warranted.

Assuming the Court again denies the motion for a mistrial, Defendant Simon requests that Mr. Rustin's testimony on March 15, after his two meetings with the Government, be stricken and that the Court instruct the jury not to consider it.  As was the case with the offending testimony in *Magana*, Mr. Rustin's March 15, 2019 testimony is clearly separated from his testimony on March 14.  *Magana*, 127 F. 3d at 6-7.  Moreover, the jury in this case presumably could follow the instruction "to consider only the previous day's testimony by the witness," which would remedy Mr. Rustin's tainted testimony.  *Id*. at 6.

---

[3] This raises yet another serious question: if the Government knew after its meeting with Mr. Rustin on March 14 that he had provided false testimony earlier in the day, why did they withhold that information from the defense?  Indeed, such information, in and of itself, is central to Mr. Rustin's credibility as a witness and should have been disclosed to the defense immediately.

WEIL:\96958805\4\74309.0003

Finally, if the Court elects not to strike Mr. Rustin's March 15 testimony at this juncture, Defendant Simon requests an evidentiary hearing outside the presence of the jury to inquire into the circumstances of the two meetings with Mr. Rustin.  In *Magana*, when questions about whether the witness's testimony had been improperly influenced arose, the court allowed defense counsel to conduct voir dire of the witness.  *Id*. at 4.  In this case, Defendant Simon submits that the dramatic and significant nature of the change in Mr. Rustin's testimony, from exculpatory to inculpatory, warrants a more fulsome response by the Court.  That response should be an evidentiary hearing to determine whether the Government improperly influenced Mr. Rustin to change his testimony.

## Conclusion

Based on the foregoing, Defendant Simon respectfully requests that the Court grant this renewed motion for a mistrial or, in the alternative, strike the March 15, 2019 testimony of Mr. Rustin.  In the event the Court does not grant such relief, Defendant Simon requests that the Court hold an evidentiary hearing regarding the circumstances of the two meetings the Government held with Mr. Rustin which appear to have resulted in his recanting his prior exculpatory testimony.

Dated: March 18, 2019

Respectfully Submitted,

/s/ Patrick J. O'Toole Jr.
Steven A. Tyrrell (admitted *pro hac vice*)
Steven.Tyrrell@weil.com
Patrick J. O'Toole, Jr. (BBO# 559267)
Patrick.Otoole@weil.com
Weil, Gotshal & Manges LLP
2001 M Street, NW
Washington, D.C. 20036
Telephone: (617) 772-8365
***Attorneys for Richard Simon***

## LOCAL RULE 7.1 CERTIFICATION

Pursuant to Local Rule 7.1, I hereby certify that counsel for Defendants has previously sought to confer with counsel for the government on these issues but the parties have been unable to agree.

/s/ Patrick J. O'Toole, Jr.

## CERTIFICATE OF SERVICE

I, Patrick J. O'Toole, Jr., hereby certify that a true and correct copy of this document will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on March 18, 2019.

/s/ Patrick J. O'Toole, Jr.

WEIL:\96958805\4\74309.0003