UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL NO. 16-10343-ADB |
| MICHAEL BABICH,<br>Defendant. | LEAVE TO FILE REPLY<br>GRANTED JANUARY 13, 2019 |

**UNITED STATES' REPLY IN SUPPORT OF**
**MOTION FOR ORDERS OF FORFEITURE**

The Defendant raises three arguments in defense of the requested forfeiture. To find for the Defendant, the Court must ignore the overwhelming evidence at trial, the Defendant's own admissions in his plea colloquy, the law, and reality. As explained below, the government proved the Defendant's proceeds to a preponderance of the evidence. No matter which forfeiture proceeds rule this Court elects to apply – gross or net – Babich cannot prove he personally suffered any direct costs and so, once the Court calculates the gross proceeds it can end its analysis. Finally, the proposed forfeiture does not violate the Eighth Amendment because it is squarely proportional to the Defendant's serious offense.

**I.      The Government's Proof of Babich's Proceeds**

As a threshold matter, the Defendant incorrectly suggests that the Court should not consider the trial evidence when evaluating the proof of his proceeds. *See* Doc. 1125 at 2-3. In determining the relevant facts, the Court is *not* limited to the confines of the Defendant's guilty plea. *See* Fed. R. Crim. P. 32.2(b)(1)(B) (Court may consider anything in the record and anything submitted by the parties)*; see also (United States v. Cox*, 851 F.3d 113, 128 (1st Cir. 2017) ("we join the other circuits that have concluded that a court may order forfeiture of the proceeds from uncharged conduct that was part of the same fraudulent scheme alleged in the counts of

1

conviction."). Also, according to the *Parties' Agreed Statement of Facts*, the Defendant agreed that the agreed-upon facts did not "constitute a complete account of Defendant Babich's relevant conduct…." See Doc. 668 at 1, n1.

Here, the government must prove that but-for the commission of the crime, the Defendant would not have obtained his proceeds. See Doc. 1052 at 2-3 (*United States' Motion for Orders of Forfeiture*) (explaining but-for analysis). In support of its broad application of the but-for test, the government cited a number of cases. See e.g. *United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010). The Defendant, does not appear to dispute that this Court is permitted to find that every dollar he obtained from Insys and from the sale of Insys stock is proceeds of his crime. Instead, the Defendant acknowledges the legal framework but argues that his case is distinguishable. See Doc. 1125 at 11-12 ("there has been no credible allegation that Insys was permeated with the type of fraud alleged in the *Warshak* case."). The Court has ample evidence in the record to support a finding that Insys was permeated with fraud. As just one example, even by his own admissions, Insys setup and used the IRC to make false representations to insurance companies to obtain authorization for payment for Subsys. See Doc. 668 at 3. Once the Court makes this finding, it only needs to then determine the amount of proceeds the Defendant obtained.[1]

---

[1] The government notes that it incorrectly represented the Insys Stock Option Exercises as $40,298,650.29. Rather, $37,768,992.04 represents the total taxable compensation or amount subject to alternative minimum tax ("AMT") based upon addition by Federal Bureau of Investigations Forensic Accountant Horan, of taxable compensation or, if the stock was not immediately sold, amount subject to AMT, as reported by Solium Capital business records. Solium Capital administered the stock options for Insys. The parties disagree on the proper measure of proceeds (whether taxable compensation used by the government, or net compensation after taxes and costs for sold shares used by Babich). Babich believes, based on Solium Capital business records, that the net compensation for sold shares is no more than $14,780,455 for sales within the alleged conspiracy (June 2012-December 2015).

Instead of relying upon the but-for test, the Defendant introduces a requirement to the money judgment process that the government "trace the assets it seeks to forfeit." *See* Doc. 1125 at 14 (Defendant's opposition). This is incorrect. When the government seeks an Order of Forfeiture (Money Judgment) equal to the proceeds a defendant obtained, as opposed to forfeiture of specific funds or a specific asset, tracing is not necessary and, instead, the Court must calculate the amount using the but-for test. *See United States v. Hoffman-Vaile*, 568 F.3d 1335, 1344 (11th Cir. 2009) (applying but-for test to determine gross proceeds for money judgment) (remanded due to incorrect mathematical calculation); *United States v. Ponzo*, 853 F.3d 558, 589-90 (1st Cir. 2017) (criminal forfeiture order may take several forms, including an *in personam* judgment against defendant for amount of money defendant obtained as proceeds of offense); see also *United States v. Vico*, 2016 WL 233407 (S.D. Fla. Jan. 20, 2016). Federal Rule of Criminal Procedure 32.2 plainly contemplates the distinction between forfeiture of a specific asset and entry of a money judgment:

> If the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense. **If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay.**

Fed. R. Crim. P. 32.2(b)(1)(A) (emphasis added). In his attempt to distance himself from the but-for test, the Defendant cites *United States v. $448,342.85*, a decision written by Judge Easterbook in 1992, to suggest that the Court there rejected the argument that an entire criminal enterprise may be tainted with fraud. 969 F.2d 474 (7th Cir. 1992). Notwithstanding that the *$448,342.85* case is inapplicable because it is a specific assets case (not a money judgment case), what that case *actually* says is that the government may not use a money laundering concept permitting forfeiture of the corpus "involved in" a money laundering offense when seeking to forfeit proceeds under a different statute. *See Id*. at 476-77 (rejecting use of "involved in" when examining forfeiture of

specific assets as proceeds). The Defendant also cites *United States v. Smith* to support his argument that tracing is required; yet the *Smith* appeal focused on forfeiture of two specific assets – cashier's checks, and not on calculation of a money judgment. 749 F.3d at 488 (6th Cir. 2014) (upholding forfeiture of two seized cashier's checks because the issuing company was a "vehicle to commit fraud" and the specific checks were drawn from the issuing company's account.).

The Defendant also attempts to diminish the proceeds of his fraud scheme by requiring the government prove lack of medical necessity for individual prescriptions, yet the Court has already explicitly rejected this argument. *See* Doc. 1028 at 28-29 (*Memorandum and Order on Defendants' Motions for Judgment of Acquittal and for New Trial*) (rejecting argument that government must prove "off-label prescriptions for which the IRC sought reimbursement were medically illegitimate prescriptions."). The IRC existed to defraud insurance companies – no matter the prescriber. Without the IRC, this crime would not have happened and Insys would not have been the success it was. But-for the crime, Babich would not have obtained his salary, bonus, car allowance, or proceeds from the receipt of stock options and liquidation of Insys stock.

## II.    Forfeiture of Babich's Gross Proceeds

### a. Step One – Calculation of Gross Proceeds Using the But-For Test

The calculation of proceeds begins the same whether the Court applies the gross proceeds rule of 18 U.S.C. § 981(a)(2)(A) or the net proceeds rule of 18 U.S.C. § 981(a)(2)(B). *See United States v. Percoco*, 2019 WL 1593882 (S.D.N.Y. April 15, 2019) (same starting point for either method). The government bears the burden of proving to a preponderance of the evidence the proceeds the Defendant would not have obtained but-for the crime. In a gross proceeds analysis, once the gross proceeds are calculated the exercise is complete. In a net proceeds analysis, however, once the Court calculates the gross proceeds, the Defendant then bears the burden of

proving to a preponderance of the evidence his direct costs. *See* 18 U.S.C. § 981(a)(2)(B). Direct costs are those costs directly borne by the Defendant himself – not those borne by his employer. *See e.g. United States v. Gorski*, 880 F.3d at 43 (1st Cir. 2018) (defendant's labor not a direct cost because cost was borne by employer); *see also United States v. Contorinis, 692 F.3d 136, at 145 n.3* (2nd Cir. 2012) (all costs were borne by employer, anything defendant made was a proceed).

The government correctly holds the Defendant accountable for gross proceeds of his crime – not net. The Court must determine the crux of the Defendant's crime. *See e.g. United States v. George*, 886 F.3d 31, 40 (1st Cir. 2018) (applying gross proceeds rule because crime was not "provision of bus services in an illegal manner but, rather, the misappropriation of government resources..."). Here, the fraud scheme to which this Defendant pleaded guilty, was the use of bribes to obtain prescriptions for Subsys and the use of the IRC to lie to insurers to deceive them into authorizing payment for that opioid medication. The Defendant's crime was one of insurance fraud, an unlawful activity, and not one of providing services such as manufacturing an opioid. Rather, insurance fraud is an "unlawful activity" and subject to the gross proceeds rule. *See* 18 U.S.C. § 981(a)(2)(A) (gross proceeds rule). The First Circuit recently opined, without deciding, that mail and wire fraud might fall into the gross proceeds rule. *See United States v. Carpenter*, 941 F.3d 1, n4 (1st Cir. 2019). Here, to rule otherwise, the Court must find that insurance fraud can somehow be done lawfully, which it cannot. *See e.g. George*, 886 F.3d at 40. Insurance fraud is not "lawful goods or lawful services that are sold or provided in an illegal manner." *See* 18 U.S.C. § 981(a)(2)(B). The First Circuit has seemingly endorsed a broad application of the gross proceeds rule. In *George*, after examining the application of the gross, not net, proceeds rule to an embezzlement scheme, the Court added:

5

> We add a coda. The Supreme Court has observed that forfeitures help to ensure that crime does not pay: they at once punish wrongdoing, deter future illegality, and lessen the economic power of criminal enterprises. Our application of section 981(a)(1)(A) fits hand-in-glove with this pithy observation.

*George*, 886 F.3d at 42 (internal quotations and citations omitted). An application of the gross proceeds rule would fit as cleanly into this analysis as the application in *George*.

### b. Step Two – If Applying Net Proceeds Rule Defendant Then Proves Direct Costs

To apply the net proceeds rule the Court must find that the Defendant was in the business of providing lawful goods or services to the insurance companies – and of course he was not. The lawful goods or services provision applies most often in buying and selling securities, investment fraud, insider trading, or other similar service-based crimes. *See e.g. United States v. Contorinis*, 692 F.3d 136, 145 n.3 (2d Cir. 2012) (insider trading); *Carpenter*, 941 F.3d 1 (1st Cir. 2019) (intermediary fund investment fraud but leaving open idea that gross proceeds applies to mail and wire fraud); and *United States v. Mahaffy*, 693 F.3d 113, 137–38 (2d Cir. 2012) (sale of securities).

Even if the Court were to apply the net proceeds rule, which it should not, the Defendant has not met his burden to prove his direct costs. *See* 18 U.S.C. § 981(a)(2)(B) (the burden is on the Defendant). First, the net proceeds rule provides:

> "proceeds" means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services. **The claimant shall have the burden of proof with respect to the issue of direct costs.** The direct costs shall not include any part of the overhead expenses of the entity providing the goods or services, or any part of the income taxes paid by the entity.

*Id.* (emphasis added). The Defendant contends that the government must prove the net proceeds but he ignores the plain language of the statute directing the Defendant, not the government, prove direct costs to reduce the gross forfeiture amount. *See e.g. Carpenter*, 941 F.3d at 10 (defendant bears burden to prove direct costs); *see also United States v. Mandell*, 752 F.3d 544, 553–54 (2d Cir. 2014) (same). Of significance, tax payments are not a direct cost. *See* 18 U.S.C.

§ 981(a)(2)(B) (income tax not a direct cost); *see also Gorski*, 880 F.3d at 42-43 (not plain how income taxes are a direct cost and not plain how compensation paid by employer are direct cost to defendant).  Even under a net proceeds analysis, Babich cannot prove any direct costs because any such costs were borne by Insys and not by Babich.  Should the Court elect to apply the net proceeds rule, Babich has failed to prove entitlement to any deductions.

### III.     The Eighth Amendment Challenge Fails

The parties agree that the Eighth Amendment's prohibition of excessive fines applies to forfeiture and that the excessive fines test prohibits forfeiture that is "grossly disproportional to the gravity of the offense."  *See United States v. Bajakajian*, 524 U.S. 321, 323 (1998).  The Defendant bears the burden to prove to a preponderance of the evidence that the forfeiture is grossly disproportionate.  *See von Hofe v. United States*, 492 F.3d 175, 183 (2d Cir. 2007); *see also United States v. Fogg*, 666 F.3d 13, 18–19 (1st Cir. 2011); *United States v. Aguasvivas-Castillo*, 668 F.3d 7, 16 (1st Cir. 2012); *United States v. Castello*, 611 F.3d 116, 120 (2d Cir. 2010).  Forfeiture of traceable proceeds of a crime, such as those at issue here, are not often found to violate the Eighth Amendment because to find otherwise, the Court must decide that a Defendant may keep some of the traceable fruits of his or her crime.  Typical Eighth Amendment forfeiture violations are found not in traceable proceeds cases, but rather in cases involving property 'involved in' crimes, such as the corpus of a failure to report crime, or the corpus involved in a money laundering scheme.  The Defendant cannot meet his burden here to show repayment of his traceable proceeds would be unconstitutional.

Bajakajian was convicted of failure to report exported currency and the government sought forfeiture of the entire amount of non-reported currency as property involved in the offense (not proceeds).  *Id*.  The District Court denied the government's request for all the money involved,

an amount approximately 70 times the available maximum fine, and instead, ordered forfeiture of just $15,000, which is the amount the Court deemed comparable to a fine it might otherwise order. *Id*.  The Supreme Court affirmed and observed that Bajakajian's offense was solely a reporting offense, that the money involved in the crime was not proceeds of any other offense, and that the harm caused was minimal.[2]  The Court provided a three-prong test for determining whether a forfeiture order is permitted under the Eighth Amendment.  *Id*.; *see also United States v. Aguasvivas-Castillo*, 668 F.3d 7, 17 (1st Cir. 2012) (applying 3 *Bajakajian* factors); *see also Carpenter,* 2019 WL 5287926 at *7-8.   The three factors are:

>  (1) whether the defendant fits into the class of persons at whom the statute was aimed;
>
>  (2) the other penalties authorized by Congress or the Sentencing Commission; and
>
>  (3) the harm caused.

*Id*.   Congress is "entitled to deference" when fixing the penalty for an offense.   *See United States v. Jose*, 499 F.3d 105, 110–11 (1st Cir. 2007).   The remedy for an Eighth Amendment violation is to reduce the forfeiture only as much as necessary to avoid the violation.   *See e.g. United States v. Castello*, 611 F.3d 116, 121 (2d Cir. 2010).

---

[2] Congress disagreed with the Court's view of the seriousness of the crime and directly responded to the *Bajakajian* holding by enacting a new criminal statute – bulk cash smuggling.  The committee report stated:

> The Committee believes ... that bulk cash smuggling is an inherently more serious offense than simply failing to file a Customs report.   Because the constitutionality of a forfeiture is dependent on the "gravity of the offense" under *Bajakajian*, **it is anticipated that the full forfeiture of smuggled money will withstand constitutional scrutiny in most cases**.

H.R.Rep. No. 107–250(I), at 53 (2001)(emphasis added).   So too, Congress could not have been more clear that they consider RICO an incredibly serious offense.

*First*.  The first factor is whether defendant fits into the class of persons at whom the statute was aimed.  This factor weighs in favor of the forfeiture.  The Defendant's own admitted statement of facts establishes his culpability in a lengthy fraud scheme.  *See* Doc. 668.  As this Court observed on January 13, 2020, "what we're left with is a pretty garden variety insurance fraud with the bribery, the bribes and the fraud."  *See* Transcript of Forfeiture and Restitution Hearing, January 13, 2020, at 41.  The statute criminalizing fraud and conspiring to commit fraud are plainly aimed at a class of people, which might commit fraud.  Babich is admittedly one of those people

*Second*.  The second factor also favors the forfeiture.  When considering the second factor, the *authorized* penalties, the court gives "great weight to [the] statutory judgment by Congress" and looks at the authorized maximum fine.  *Carpenter*, 2019 WL 5287926 at *8.  The maximum penalty, and not the guideline range, is the appropriate benchmark because the "statutory scheme is a better guide to whether the forfeiture order is excessive."  *See e.g. Carpenter*, 941 F.3d at 11.  Much like racketeering forfeiture, Congress was explicit in its intent that criminal forfeiture be liberally construed to effectuate its remedial purposes."  *See* 21 U.S.C. § 853(o), applicable here by operation of 28 U.S.C. § 2461(c) (incorporating the provisions of 21 U.S.C. § 853 to any forfeiture authorized by law).

Although Babich disputes the figure, the loss is between $9,500,000 and $25,000,000.[3]  *See* Doc. 1065 at 14.  The maximum fine authorized by the legislature is "not more than the greater of twice the gross gain or twice the gross loss."  *See* 18 U.S.C. § 3571(d).  At his change of plea hearing, the Court advised the Defendant, *inter alia*, he faced a "maximum financial penalty

---

[3] The loss is likely in excess of $300 million.  However, even under the government's conservative loss calculation, Babich's forfeiture is constitutional.

9

of $250,000 or two times the pecuniary loss or gain." *See* January 9, 2019 Rule 11 Transcript, 16-17. Given the maximum possible fine, Congress authorized a potential maximum fine of between $19 and $50 million (twice the range of loss). Thus, any order of forfeiture below $19 to $50 million, including the requested forfeiture, would readily satisfy this factor. Unlike the proposed forfeiture here, the vacated forfeiture order in *Bajakajian*, for example, was more than 70 times the guideline. *See Heldeman*, 402 F.3d at 223 (distinguishing *Bajakajian* and observing Heldeman's forfeiture was only 15% of the maximum fine).

**Third**. The third factor, the harm caused, easily favors the forfeiture. This Court has recognized that Defendants' "fixation on increasing the number and dosage of Subsys prescriptions combined with prescribers' interest in increased speaker payments, ultimately harmed an untold number of patients." *See* ECF No. 1028 at 21. In addition to the untold number of patients harmed, the Defendant also directly harmed government and commercial insurers through the use of the Insys Reimbursement Center and its daily fraudulent activities. The Defendants' nationwide and long-lasting racketeering scheme caused a significant amount of pecuniary, physical, and emotional harm.

**Levesque**. The First Circuit has interpreted *Bajakajian* to require a fourth step, an inquiry into whether the forfeiture would deprive the defendant of his livelihood. *See United States v. Levesque*, 546 F.3d 78, 83 (1st Cir. 2008) (fourth step should be considered). However, this affirmative defense to forfeiture is rarely applied and, unlike the facts of this case, applies only in extreme cases. *United States v. Aguasvivas-Castillo*, 668 F.3d 7, 16 (1st Cir. 2012). Inability to pay at sentencing "is not at all sufficient to render a forfeiture unconstitutional, nor is it even the correct inquiry." *Id*. at 85. Because money judgments may be enforced in the future, and not at sentencing, they simply do not deprive the Defendant his livelihood. *Id*. A defendant could

easily come into money later. *Id*. In addition, significantly, the Attorney General has the discretion in the future to "remit a forfeiture on the grounds of hardship to the defendant." *Id*. In *United States v. Fogg*, the defendant appealed the forfeiture order and argued the inability to pay/*Levesque* factor. 666 F.3d 13 (1st Cir. 2011). Citing *Levesque*, the First Circuit noted that because a money judgment may be collected later, inability to pay at sentencing is not the appropriate question. *Id*. Here, the fourth factor does not prohibit the forfeiture because the Defendant may already have sufficient assets to cover the judgment, may come into money in the future, the government may choose to remit the forfeiture, and because the government has not yet sought to forfeit any of the Defendant's assets.

WHEREFORE, the Court should enter the requested Order of Forfeiture.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:  */s/ David G. Lazarus*
DAVID G. LAZARUS
K. NATHANIEL YEAGER
FRED M. WYSHAK, JR.
Assistant United States Attorneys
One Courthouse Way, Ste. 9200
Boston, MA 02210
(617) 748-3100
david.lazarus2@usdoj.gov

Dated: January 15, 2020